# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No. 24-11605 (JKS) |
| Debtors. | (Joint Administration Requested) |
| | **Re: Docket No. _____** |

**ORDER (I)(A) APPROVING CERTAIN BIDDING
PROCEDURES AND THE FORM AND MANNER OF
NOTICE THEREOF, (B) APPROVING THE DEBTORS' ENTRY INTO
THE STALKING HORSE APA, (C) APPROVING THE FORM AND MANNER
OF NOTICE OF THE SALE HEARING; AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for, *inter alia*, the entry of an order (this "Order")[2]: (i) scheduling a hearing (the "Sale Hearing") on approval of the proposed sale (the "Sale") of all or substantially all of the Debtors' assets (the "Assets") free and clear of all Liens other than Assumed Liabilities to [Honing US Holdings, LLC] and the assumption and assignment of certain executory contracts and unexpired leases (each, a "Purchased Contract" and collectively, the "Purchased Contracts"); (ii) authorizing and approving certain bidding procedures for the Sale (collectively, the "Bidding Procedures," a copy of which is attached as **Exhibit 1** to this Order),[3] and the form and manner of notice thereof, including the Sale Notice; (iii) authorizing

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Hardinge Ventures LLC (0586); Ohio Tool Works, LLC (7569); Kellenberger Swiss Grinding Machines, LLC (N/A); Hardinge Inc. (0200); Hardinge Technology Systems, Inc. (6427); Forkardt Inc. (4671); and Hardinge Grinding Group Inc. (6173). The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

[2]   Capitalized terms used but not defined herein shall have the meanings given them in the Bidding Procedures, or to the extent not defined therein, the Motion or the Stalking Horse APA.

[3]   Capitalized terms used but not defined in this Order have the meanings ascribed to them in the Bidding Procedures. If they are not defined in this Order or in the Bidding Procedures, then they shall have the meanings ascribed to them in the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use of Cash Collateral Pursuant to*

the Debtors' entry into the asset purchase agreement attached to the Motion as <u>Exhibit B</u> (the "<u>Stalking Horse APA</u>") with the Stalking Horse Purchaser; (iv) scheduling an auction for the Assets (the "<u>Auction</u>"); and (v) granting related relief; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as set forth herein; and it appearing that the Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion; and the Bidding Procedures Hearing (as defined herein) having been held; and the Court having found and determined that the relief set forth herein is in the best interests of the Debtors, their estates and creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and the evidence adduced at the Bidding Procedures Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[4]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*.

---

*Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. [●] (the "<u>Interim DIP Order</u>" and the final order, the "<u>Final DIP Order</u>" and together, the "<u>DIP Orders</u>"). All references to the Bidding Procedures herein are qualified in their entirety by the Bidding Procedures themselves.

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and Rule 2002-1 and 6004-1 of the Local Rules.

D.      In the Motion and at the hearing on the relief set forth herein (the ''Bidding Procedures Hearing''), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required except as otherwise provided for herein.  A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the Bidding Procedures) has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.      The Sale Notice, in substantially the form attached to this Order as **Exhibit 2**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.      The Debtors have articulated good and sufficient business reasons for the Court to approve the Bidding Procedures.  The Bidding Procedures are: (i) fair, reasonable, and appropriate; and (ii) designed to maximize recovery with respect to the Sale.  The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' Assets. The process for selecting the Stalking Horse Purchaser was fair and appropriate under the

circumstances and in the best interests of the Debtors' estates. The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

G.      The Stalking Horse APA represents the highest or otherwise best offer the Debtors have received to date to purchase the Assets designated for purchase thereunder.  The Stalking Horse APA provides the Debtors with the opportunity to sell such Assets in a manner designed to preserve and maximize their value and provides a floor for a further marketing and auction process. Without the Stalking Horse APA, the Debtors are at significant risk of realizing a lower price for their Assets.  The Stalking Horse Purchaser shall act as a "stalking horse bidder" pursuant to the Stalking Horse APA and shall be subject to higher or otherwise better offers in accordance with the Stalking Horse APA and the Bidding Procedures.  Pursuit of the Stalking Horse Purchaser as a "stalking horse bidder" and the Stalking Horse APA as a "stalking horse purchase agreement" is in the best interests of the Debtors and the Debtors' estates and their creditors, and it reflects a sound exercise of the Debtors' business judgment.

H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      Those portions of the Motion seeking approval of (a) the Debtors' entry into the Stalking Horse APA (subject to higher or otherwise better offers in accordance with this Order), (b) the Bidding Procedures substantially in the form attached to this Order as **Exhibit 1**, (c) the date and time of the Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the notice of the Sale and the Sale Hearing, substantially in the form attached to this Order as **Exhibit 2** (the "Sale Notice"), the notice of the Successful Bidder in the form attached to this Order as **Exhibit 3** (the "Notice of Successful

Bidder"), and the notice of the Debtors' potential assumption and assignment of the Purchased Contracts, substantially in the form attached to this Order as **Exhibit 4** (the "Assumption Notice"), (subclauses (a) - (d) above, collectively, the "Bidding and Auction Process"), are hereby GRANTED to the extent set forth herein.

2.      Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order.

4.      The Debtors shall have the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to an Acceptable Bidder.  The Debtors and their estates shall be authorized to provide due diligence information to Acceptable Bidders.

5.      For all purposes under the Bidding Procedures: (a) the Stalking Horse Purchaser shall be considered a Qualified Bidder, and the Stalking Horse APA shall be considered a Qualified Bid; (b) the Stalking Horse Purchaser is, and will be deemed to be, a Qualified Bidder for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser; and (c) in

determining whether the Acceptable Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

6.     The Bidding Procedures shall apply to the Acceptable Bidders, the Qualified Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

7.     The Debtors' decision to assume and assign the Purchased Contracts to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder, is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Purchased Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with these chapter 11 cases (the "Chapter 11 Cases").

8.     Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized to sell or transfer the Weisser Receivable.

9.     The Assumption Notice is:  (a) reasonably calculated to (i) provide sufficient, effective notice to all counterparties and any other affected parties of the Debtors' intent to assume and assign to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder, some or all of the Purchased Contracts, and (ii) afford the counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

10.     The inclusion of a contract, lease or other agreement on the Sale Notice or Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors

and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights of the Debtors and their estates with respect thereto shall be reserved.

11.     The Sale Notice, the Assumption Notice, any Supplemental Assumption Notice, the Bidding Procedures, the Auction, and the Sale Hearing, and the objection periods associated with each of the foregoing are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, the Auction, the Sale, the Sale Hearing, and the assumption and assignment to the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder, of the Purchased Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006, and such notice and objection periods are hereby approved.

12.     The Sale Notice is approved.  Within three (3) business days of the entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall the Sale Notice on the following parties or their respective counsel, if known: (a) the U.S. Trustee; (b) counterparties to the executory contracts and unexpired leases of nonresidential property (the "Contract Counterparties"), if known; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) the Internal Revenue Service; (e) all applicable state and local taxing authorities; (f) all the Debtors' other creditors; (g) each governmental agency that is an interested party with respect to the proposed Sale Transaction; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

13.     The Assumption Notice is approved.  Within three (3) business days of the entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall serve the Assumption Notice by regular mail on counterparties to Purchased Contracts to provide notice of the potential assumption and assignment of their Purchased Contracts by the Successful Bidder.

14.     The Debtors shall post the Sale Notice, the Assumption Notice, any Supplemental Assumption Notice, and this Order on the website of the Debtors' claims and noticing agent. Within seven (7) business days of the entry of this Order or as soon as reasonably practicable thereafter, the Debtors shall cause the Sale Notice to be published once in the national edition of *USA Today* or other nationally circulated newspaper, with any modifications necessary for ease of publication.  Publication of the Sale Notice as described in this Order conforms to the requirements of Bankruptcy Rules 2002(l) and 9008 and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

15.     Any objections to the Sale or the relief requested in connection with the Sale, including any objection to the sale of any Purchased Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (each, a "Sale Objection"), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Clerk"), and proof of service of such Sale Objection upon the Objection Notice Parties (as defined in the Sale Notice) shall be filed

with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties.  Sale Objections must be filed with the Clerk **on or before 4:00 p.m. (E.T.) on September 9, 2024** (the "Sale Objection Deadline").

16.    If a Sale Objection is not filed and served on or before the applicable Sale Objection Deadline in accordance with the requirements in the foregoing paragraphs, the objecting party may be barred from objecting to the Sale and being heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

17.    Failure to file a Sale Objection on or before the applicable Sale Objection Deadline (a) may forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by the Stalking Horse APA or any alternative asset purchase agreement (an "Alternative APA") with a Successful Bidder other than the Stalking Horse Purchaser, and (b) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

18.    As part of its bid, each Qualified Bidder must provide the Debtors, the other Bidding Procedures Notice Parties, and the Consultation Parties information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code (the "Adequate Assurance Information"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts and leases that are assumed and assigned to such Qualifying Bidder; and (b) a contact person for the proposed assignee that the applicable counterparty may directly contact in connection with the adequate assurance of future performance.  In the event that a Qualifying Bidder (other than the Stalking Horse Purchaser) is a

newly formed acquisition entity or the like, the financial and other information supporting the Qualified Bidder's financial wherewithal shall include financial and other information supporting the financial wherewithal of the Qualified Bidder's parent company or sponsor.  Adequate Assurance Information shall be made available to contract counterparties within 48 hours of the Bid Deadline upon written request to the Debtors' counsel (email being sufficient).

19.    Any party in receipt of Adequate Assurance Information under this Order shall review the Adequate Assurance Information received on a confidential basis and shall not disclose the Adequate Assurance Information except as expressly provided in this Order and the Bidding Procedures.  Such counterparty may not use or disclose, except to representatives, attorneys, advisors and financing sources (collectively, "Representatives"), any confidential Adequate Assurance Information for any purpose other than: (a) evaluating whether adequate assurance of future performance as required under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code has been provided; and (b) in support of any objection (the "Assignment Objection") (subject to the limitations on disclosure set forth herein) by such counterparty relating to adequate assurance of future performance.  Any Assignment Objection that includes confidential, non-public Adequate Assurance Information must be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtors and the applicable assignee(s).  The party filing an Assignment Objection under seal shall follow the procedures for the same set forth in Local Rule 9018-1(d).  The unredacted versions of such Assignment Objections shall be served upon the Debtors, the other Bidding Procedures Notice Parties, the Consultation Parties and the U.S. Trustee; *provided further* that all rights of all parties in interest in the Chapter 11 Cases are reserved to oppose the filing under seal of any such information and to seek any other relief from this Court with respect to such matter.  Any

Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order. Assignment Objections, (a) in the event the Stalking Horse Purchaser is the Successful Bidder, must be filed with the Clerk by the Sale Objection Deadline and, (b) in the event the Successful Bidder is not the Stalking Horse Purchaser, need not be written and filed and may be raised at the Sale Hearing.

20.     The Stalking Horse Purchaser shall be deemed to be a Qualified Bidder and the Stalking Horse APA is deemed to be a Qualified Bid. The Stalking Horse Purchaser is credit bidding pursuant to 11 U.S.C. § 363(k), and thus is not required to make a Deposit with the Debtors. The Stalking Horse Purchaser shall have the unqualified right at any time to credit bid on a dollar-for-dollar basis up to the full amount of the Prepetition First Lien Obligations and the DIP Obligations. Notwithstanding the foregoing, nothing in this Order shall abridge the Challenge Period (as defined in the Final DIP Order).

21.     If no timely Qualified Bids other than the Stalking Horse APA are submitted on or before the Bid Deadline, then on or before **September10, 2024 at 11:00 a.m. (E.T.)** the Debtors shall file a notice on the docket of the Chapter 11 Cases indicating that an Auction will not be held and shall request at the Sale Hearing that this Court approve the Stalking Horse APA and the transactions contemplated thereunder. If the Debtors timely receive one or more Qualified Bids other than the Stalking Horse APA, then the Debtors shall conduct the Auction on **September 10, 2024 at 10:00 a.m. (E.T.)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants (as defined herein). Only the Debtors, the Qualified Bidders (including the Stalking Horse Purchaser), the Consultation Parties, the U.S. Trustee, and any creditors of the Debtors, together with the professional advisors to each of the

foregoing parties, may attend the Auction (collectively, the "Auction Participants"); *provided* that any such creditors provide Debtors' counsel with written notice of their intent to attend the Auction no later than 5:00 p.m. (E.T.) two (2) days prior to the Auction.

22.     The Debtors shall have until the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection or Assignment Objection.

23.     The Sale Hearing shall be held in this Court on **September 12, 2024 at 2:30 p.m. (E.T.)**, unless otherwise determined by this Court.  The Sale Hearing may be adjourned by the Debtors, in consultation with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then in consultation with the DIP Agent, and the Successful Bidder, from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of the Chapter 11 Cases.

24.     All persons and entities that participate in the Auction or bid for any Asset during the sale process shall be deemed to have knowingly and voluntarily (a) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (b) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; and (c) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

25.     In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, the Stalking Horse APA, or an Alternative APA, on the other hand, this Order and the Bidding Procedures shall control and govern.  If there is a conflict between this Order and the Bidding Procedures, this Order shall control and govern.  If there is a conflict between this Order or the Bidding Procedures, on the one hand, and any notice served in connection with the Motion or this Order, on the other hand, this Order and the Bidding Procedures shall control and govern.

26.     Prior to mailing the Assumption Notice, any Supplemental Assumption Notice, and the Sale Notice, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deem necessary or appropriate.

27.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

28.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

29.     The Debtors are authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

30.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

# EXHIBIT 1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Hardinge Inc., *et al.*,[1] | ) | Case No. 24-11605 (JKS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

## BIDDING PROCEDURES

On July 29, 2024 (the "Petition Date"), the above captioned debtors and debtors in possession (collectively, the "Debtors") commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On July 29, 2024, the Debtors filed the *Debtors Motion Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code for Entry of an Order (I) Approving the Bidding Procedures, Including the Debtors' Entry into the Stalking Horse APA, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) Approving the Debtors' (A) Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; and Granting Related Relief* [Docket No. [•]] (the "Combined Sale/Bidding Procedures Motion")[2] seeking approval of, among other things, the procedures to be employed by the Debtors in connection with the proposed sale of all or substantially all of the Debtors' assets, including any and all rights, claims, and causes of action, and all of the issued and outstanding equity interests of certain non-debtor foreign entities (collectively, the "Assets"), through a section 363 sale process (any such purchase, a "Transaction").

On [•], the Court entered an order Docket No. [•] (the "Bidding Procedures Order"), among other things, granting certain relief requested in the Combined Sale/Bidding Procedures Motion, including authorizing the Debtors to solicit bids and approving the procedures contemplated herein (the "Bidding Procedures"). The Bidding Procedures set forth the process by

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Hardinge Ventures LLC (0586); Ohio Tool Works, LLC (7569); Kellenberger Swiss Grinding Machines, LLC (N/A); Hardinge Inc. (0200); Hardinge Technology Systems, Inc. (6427); Forkardt Inc. (4671); and Hardinge Grinding Group Inc. (6173).  The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Combined Sale/Bidding Procedures Motion or the Stalking Horse APA (as defined herein) as applicable.

which the Debtors are authorized to solicit bids and conduct an auction (the "Auction") to determine the Successful Bidder (as defined below) for the Assets (the "Sale").

To facilitate the Sale, an affiliate of Centre Lane Partners, LLC (the "Stalking Horse Purchaser") and the Debtors have executed that certain *Asset Purchase Agreement*, dated [•] (as amended, supplemented or otherwise modified by the parties thereto from time to time, and including the disclosure schedules and exhibits attached thereto, the "Stalking Horse APA"), pursuant to which the Stalking Horse Purchaser has agreed to purchase the Assets set forth in the Stalking Horse APA, free and clear of all Liens, Claims (each as defined in the Stalking Horse APA), and interests pursuant to section 363(f) of the Bankruptcy Code other than the Assumed Liabilities (as defined in the Stalking Horse APA), and subject to the terms and conditions set forth therein. The Debtors are conducting an ongoing marketing process intended to obtain the highest or otherwise best bid for the Assets. The bid contained in the Stalking Horse APA is subject to higher and better offers submitted in accordance with the terms of the Bidding Procedures and, as such, the Stalking Horse APA has been approved by the Court as the "stalking-horse" bid for the Assets set forth therein (the "Stalking Horse Bid").

**Any party interested in bidding on the assets should contact:**

(a)     Houlihan Lokey, Adam l. Dunayer (adunayer@hl.com) and Jim Georgeadis (jgeorgeadis@hl.com), proposed investment banker for the Debtors; and

(b)     Gregg M. Galardi, esq. (212-596-9139; gregg.galardi@ropesgray.com) and Lindsay Barca (212-596-9092; lindsay.barca@ropesgray.com) of Ropes & Gray LLP, and Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com), proposed co-counsel for the Debtors.

**Summary of Key Dates Established by Bidding Procedures**

| Event | Due Date |
|---|---|
| Entry of the Bidding Procedures Order | August 26, 2024 |
| Deadline for Acceptable Bidders to Submit Bids | September 9, 2024 |
| Auction | September 10, 2024 |
| Deadline to Object to Ability of the Winning Bidder to Provide Adequate Assurance / Conduct of Auction | September 11, 2024 |
| Sale Transaction Objection Deadline | September 11, 2024 |
| Hearing to Consider the Sale | September 12, 2024 |
| Entry of the Sale Order | September 13, 2024 |
| Closing of Sale | September 17, 2024 |

**Marketing Process**

## I.    Contact Parties.

As part of the marketing process, the Debtors have and continue to assemble materials in order to streamline potential purchasers' diligence requests, and develop a list of parties who may be interested in, and who the Debtors reasonably believe have the financial resources to consummate, a Transaction (each, a "Contact Party", and collectively, the "Contact Parties"). Parties interested in becoming Contact Parties should contact: proposed investment banker to the Debtors, Houlihan Lokey, 2601 Olive St, Suite 2500, Dallas, Texas 75201, Attn: Adam L. Dunayer (adunayer@HL.com), Jim Georgeadis (JGeorgeadis@HL.com), and HL team (HLProjectHOning@HL.com).

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder materials consisting of: (a) a copy of the Bidding Procedures, the Bidding Procedures Order, and the Combined Sale/Bidding Procedures Motion; (b) a form confidentiality agreement (a "Confidentiality Agreement"); and (c) such other materials as appropriate under the circumstances.

## II.    Participation Requirements.

To receive due diligence information and to receive additional non-public information regarding the Debtors, a potential bidder must deliver to each of: (i) (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, Attn: Gregg M. Galardi, esq. (gregg.galardi@ropesgray.com) and Lindsay Barca (lindsay.barca@ropesgray.com) and (b) proposed co-counsel to the Debtors, Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com) and (ii) proposed investment banker to the Debtors, Houlihan Lokey, 2601 Olive St, Suite 2500, Dallas, Texas 75201, Attn: Adam L. Dunayer (adunayer@HL.com), Jim Georgeadis (JGeorgeadis@HL.com) and HL team (HLProjectHOning@HL.com) (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents") unless otherwise waived by the Debtors in their discretion:

a.    documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

b.    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed, which Confidentiality Agreement shall, among other terms, contain customary provisions regarding: (i) the nondisclosure of confidential information, (ii) prohibitions on contacting third parties in connection with a Transaction, (iii) covenant to not solicit employees of the Debtors, and (iv) the survival of certain provisions of the Confidentiality Agreement;

c.    evidence by the potential bidder of its sufficient financial capacity to close a proposed transaction, which may include financial statements of, or verified

3

financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors, with the assistance of the Debtors' Advisors;

d.      a statement and other factual support that the potential bidder has a *bona fide* interest in consummating a sale transaction, to the reasonable satisfaction of the Debtors after consultation with the Consultation Parties (as defined below);

e.      written disclosure of any connections or agreements with the Debtors, the Stalking Horse Purchaser, any other known potential bidder, or Qualified Bidder (as defined below), "insiders" of the Debtors (as that term is contemplated by section 101(31) of the Bankruptcy Code), or any manager or direct or indirect equity security holder of the Debtors; and

f.      documentation identifying the potential bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated transaction.

Only those potential bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors (each, an "Acceptable Bidder") may submit Bids. For the avoidance of doubt, and notwithstanding the foregoing, the Stalking Horse Purchaser is an Acceptable Bidder.

Beginning on or as soon as is reasonably practicable after the Debtors determine that a potential bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with reasonable access to due diligence information, to the extent reasonably requested by such Acceptable Bidder. All due diligence requests must be directed to: the proposed investment banker to the Debtors, Houlihan Lokey, 2601 Olive St, Suite 2500, Dallas, Texas 75201, Attn: Adam L. Dunayer (adunayer@HL.com), Jim Georgeadis (JGeorgeadis@HL.com) and HL team (HLProjectHOning@HL.com).

To the extent reasonably practicable, the Debtors will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion. The due diligence period will end on the Bid Deadline (as defined below) and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever related to the Assets (i) to any person or entity who (a) is not an Acceptable Bidder; (b) does not comply with the participation requirements set forth above; or (c) in the case of competitively sensitive information, is a competitor of the Debtors (except pursuant to "clean team" or other information sharing procedures reasonably satisfactory to the Debtors in the Debtors' discretion) and (ii) to the extent not permitted by law.

The Debtors and the Debtors' Advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors

146202742_9
4866-7887-8932, v. 1

may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction. No potential bidder, Acceptable Bidder, or Qualified Bidder (as defined below) shall communicate with any of the Debtors' employees, landlords, vendors, or other potential bidder, Acceptable Bidder, or Qualified Bidder with respect to any bid or potential Transaction absent the prior written consent of the Debtors; *provided* that, if such consent is given, a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or the Debtors' Advisors regarding such Acceptable Bidder and its contemplated Transaction.

### Expense Reimbursement Amount

On [•], the Debtors entered into the Stalking Horse APA with the Stalking Horse Purchaser. As set forth more fully in the Stalking Horse APA, the Purchase Price to be paid by the Stalking Horse Purchaser is (i) a credit bid in the amount of $100,000,000 consisting of the Pre-petition Credit Bid Amount plus the full amount of the DIP Obligations as of the Closing Date, (ii) cash in an aggregate amount equal to the Cash Shortfall, (iii) cash in an aggregate amount equal to the Wind-Down Funds, (iv) the aggregate amount of Excluded Cash, and (v) the assumption by Purchaser of the Assumed Liabilities (including payment of the Cure Costs) (as defined in the Stalking Horse APA) (collectively (i), (ii), (iii), (iv), and (v) the "Purchase Price"). The Stalking Horse APA also includes various customary representations, warranties, and covenants by and from the Debtors and the Stalking Horse Purchaser, and certain conditions to closing and rights of termination related to the Sale and the Chapter 11 Cases generally.

To provide the Stalking Horse Purchaser with an incentive to participate in a competitive process and to compensate the Stalking Horse Purchaser for (i) performing substantial due diligence and incurring the expenses related thereto and (ii) entering into the Stalking Horse APA with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed, and the Court has approved in the Bidding Procedures Order, that the Stalking Horse Purchaser is entitled from the proceeds of a transaction consummated pursuant to a Successful Bid (as defined below) with the Successful Bidder subject to the terms of the Stalking Horse APA and pursuant to the terms thereof, to the Expense Reimbursement (as defined in the Stalking Horse APA). As set forth below, payment of the Expense Reimbursement (to the extent payable under the Stalking Horse APA and Bidding Procedures Order) shall be a component of any Qualified Bid submitted by a Qualified Bidder (other than the Stalking Horse Purchaser). The Expense Reimbursement shall be payable as provided for pursuant to the terms

of the Bidding Procedures Order, the Sale Order (as defined in the Bidding Procedures Order)], the Stalking Horse APA, and the DIP Order.[3]

## **Auction Process**

### I.     **Bid Deadline.**

An Acceptable Bidder, other than the Stalking Horse Purchaser, that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be **actually received** on or before September 9, 2024 (the "Bid Deadline"):

  a.     Proposed co-counsel to the Debtors, Ropes & Gray, 1211 Avenue of the Americas, New York, NY 10036 (Attn:  Gregg M. Galardi (gregg.galardi@ropesgray.com) and Lindsay Barca (lindsay.barca@ropesgray.com);

  b.     Proposed co-counsel to the Debtors, Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark  L.  Desgrosseilliers;  email:  weber@chipmanbrown.com  and desgross@chipmanbrown.com); and

  c.     Proposed investment banker to the Debtors, Houlihan Lokey, [2601 Olive St, Suite 2500, Dallas, Texas 75201, Attn: Adam L. Dunayer (adunayer@HL.com), Jim Georgeadis (JGeorgeadis@HL.com) and HL team (HLProjectHOning@HL.com)].

A Bid must be received no later than the Bid Deadline, unless otherwise extended by the Debtors in their sole discretion; *provided that* such modification shall be subject to the Milestones (as defined in the DIP Order) and after consultation with the Consultation Parties. To the extent that the Bid Deadline is extended for all parties, the Debtors shall file a notice on the docket of the Chapter 11 Cases indicating the same.  Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction.

### II.     **Bid Requirements.**

Each Bid submitted by an Acceptable Bidder must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements," unless otherwise modified by the Debtors (except for the requirement set forth in II(c) below), in their discretion:

---

[3]    For purposes of these Bidding Procedures, "DIP Order" means that certain Exhibit A to the *Debtors Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 16] [Docket No. 16], together with any other orders approving the DIP Credit Facility on an interim or final basis.

6

a.  <u>Marked Agreement</u>. A Bid must be in writing and include an executed asset purchase agreement (a "<u>Competing APA</u>"), together with all exhibits and schedules (the "<u>Transaction Documents</u>"), pursuant to which the Acceptable Bidder proposes to effectuate the contemplated transaction, which Competing APA must be similar in form and substance to the Stalking Horse APA and be marked to reflect the differences between the Stalking Horse APA and the Acceptable Bidder's Competing APA, including, without limitation, specification of the proposed purchase price, any assumed liabilities, and any changes to any exhibits or schedules to the Competing APA. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Transaction Documents. The Transaction Documents must include a commitment to close the Transaction by no later than the Closing Date provided in the Stalking Horse APA. A Bid may propose a contemplated transaction involving all or substantially all of the Assets or any subset of Assets. The Debtors will evaluate all Bids, in their sole discretion, subject to prior consultation with the Consultation Parties, to determine whether such Bid or combination of Bids maximizes the value of the Debtors' estates as a whole in light of any factors regarding such bid which the Debtors, in their discretion, determine are appropriate to be considered in evaluating Bids.

b.  <u>Purpose</u>. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Assets and state which Assets with reasonable specificity. Each Bid must clearly identify the following: (i) contracts to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; (ii) the liabilities, if any, to be assumed; (iii) leases of equipment or stores to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; and (iv) which employees or groups thereof will be offered employment.

c.  <u>Purchase Price</u>. The consideration proposed by a Bid may include cash or other consideration acceptable to the Debtors in an amount of no less than the sum of (i) the Purchase Price <u>plus</u> (ii) the Expense Reimbursement <u>plus</u> (iii) $250,000]; *provided that* the Bid must include sufficient cash to pay (A) all DIP Obligations or Pre-petition Obligations that have been credit bid by the Stalking Horse Purchaser (the "<u>Credit Bid Amount</u>"), (B) a minimum of $500,000 to be used to wind-down the Debtors' estates, and (C) Houlihan Lokey Capital, Inc.'s Sale Transaction Fee (as defined in Houlihan Lokey Capital, Inc.'s engagement agreement dated as of May 24, 2024) in addition to the Expense Reimbursement.

d.  <u>Forms of Consideration</u>. Each Bid must (a) indicate (x) whether it is an all-cash offer (including confirmation that the cash component of the Bid is based in U.S. Dollars) or consists of certain non-cash components, such as a credit bid or the assumption of liabilities; and (y) the liabilities to be assumed, if applicable; and (b) provide sufficient cash consideration specifically designated for the payment of the Credit Bid Amount, the Expense Reimbursement, a minimum of $500,000 to be used to fund the wind-down of the Debtor's estates, and Houlihan Lokey Capital, Inc.'s Sale Transaction Fee (as defined in Houlihan Lokey Capital, Inc.'s

engagement agreement dated as of May 24, 2024). The Debtors may request that any Bid include the allocation of the Purchase Price among the Assets to be acquired. In addition, any Bid shall identify separately any cash and non-cash components, which non-cash components shall be limited only to credit-bids in accordance with section 363(k) of the Bankruptcy Code and assumed liabilities.

e.  Deposit. Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration (with the deposit amount for the non-cash consideration determined by the Debtors in their discretion) of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"); *provided that* that the Debtors reserve the right to increase the amount of the Deposit in their discretion, including, without limitation, the right to request an additional Deposit in the event an Acceptable Bidder increases the amount of its Bid. For the avoidance of doubt, the Stalking Horse Purchaser shall not be required to provide a Deposit.

f.  Irrevocable. All Bids must be irrevocable until the Debtors' selection of the Successful Bid and Backup Bid (each as defined below); *provided, however*, that the Successful Bid shall be irrevocable until the closing of the Approved Transaction (as defined below) and the Backup Bid must be irrevocable in accordance with Section VI below, as applicable.

g.  Committed Financing. To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction that demonstrates that the Acceptable Bidder has received sufficient debt or equity funding commitments to satisfy the Acceptable Bidder's purchase price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

h.  Unconditional Offer / Contingencies. A statement that the Bid is formal, binding, and unconditional and is not subject to any further due diligence or contingencies related to financing, internal approval, due diligence, or otherwise, and is irrevocable until the Debtors notify the Acceptable Bidder that such Bid is not a Successful Bid or a Backup Bid.

i.  Non-Reliance. A Bid must include a written acknowledgement and representation of the Acceptable Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and assumed liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation or inspection of any documents or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction.

8

j.    <u>Identity</u>.  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder, sponsor, parent company or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the Debtors' Advisors should contact regarding such Bid.  Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

k.    <u>Adequate Assurance</u>.  Each Bid must contain evidence acceptable to the Debtors in their discretion that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under sections 365(b)(1) and 365(b)(3) of the Bankruptcy Code.  Such evidence may include audited and unaudited financial statements, tax returns, bank account statements, a description of the proposed business to be conducted at the premises or any other documentation that the Debtors further request.

l.    <u>Authorization</u>.  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the closing of the Transaction contemplated in such Bid (including the submission, execution, and delivery of the Competing APA).

m.    <u>No Fees Payable to Bidder</u>.  Except with respect to the Expense Reimbursement payable to the Stalking Horse Purchaser in accordance with the Stalking Horse APA, a Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue any break-up fee, termination fee, expense reimbursement or similar type of payment, or substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

By submitting its Bid, each Acceptable Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen any round of bidding or the Auction after conclusion of any round of bidding or the Auction.  **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets as reflected in such Bid.**

Notwithstanding anything herein to the contrary and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse APA submitted by the Stalking Horse Purchaser is a Qualified Bid without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser.

9

### III.    Designation of Qualified Bidders.

A Bid will be considered a "Qualified Bid," and each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified Bidder," if the Debtors determine, in their discretion, subject to prior consultation with the Consultation Parties, that such Bid:

    a.    satisfies the Bid Requirements set forth above; and

    b.    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors.

The Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties (as defined below) with a copy of each Bid that has been submitted to the Debtors (whether or not such bid has been determined by the Debtors to be a Qualified Bid).

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is the later of (i) three (3) Business Days after the Bid Deadline and (ii) the date on which the Debtors make a final determination that such Bid is not a Qualified Bid or, in each case, as soon as is reasonably practicable thereafter. The Debtors reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid and to determine at any time prior to the start of the Auction that such Bid, as modified, is a Qualified Bid.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the Acceptable Bidder's purchase price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein; *provided*, *further*, that the Stalking Horse Bid may be modified or amended pursuant to its terms. Any improved Qualified Bid must continue to comply in all respects with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right, (a) to work with potential bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. No bidders, Acceptable Bidders or Qualified Bidders may aggregate any Bids without the Debtors' prior consent, subject to prior consultation with the Consultation Parties.

Notwithstanding anything herein to the contrary and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse Purchaser is a Qualified Bidder without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser.

10

IV.    **Right to Credit Bid.**

As set forth in the DIP Order, the DIP Lenders or the Prepetition Lenders are permitted to credit bid any of the outstanding DIP Obligations or Pre-petition Obligations, respectively, in accordance with section 363(k) of the Bankruptcy Code in any sale of the Assets, and may assign such right to credit bid in whole or in part to any of their affiliates (including, but not limited to, the Stalking Horse Purchaser). The Stalking Horse Purchaser (as an affiliate of the DIP Lenders and the Prepetition Lenders) shall have the unqualified right to credit bid on a dollar-for-dollar basis up to the full amount of the DIP Obligations and the Pre-petition Obligations pursuant to section 363(k) of the Bankruptcy Code; *provided*, that the Stalking Horse Purchaser's ability to credit bid shall be subject to the Committee's rights to challenge the validity of the liens underlying the Pre-petition Obligations.

V.    **Auction.**

If no Qualified Bid (other than the Stalking Horse Bid) is received by the Bid Deadline, the Stalking Horse Purchaser shall be deemed the Successful Bidder without the need or requirement to hold or open the Auction.

If the Debtors receive more than one Qualified Bid for the Assets (other than the Stalking Horse Bid), the Debtors will conduct the Auction to determine both the Successful Bidder and the Backup Bidder with respect to such Assets. The Auction shall take place on September 10, 2024, at the offices of Ropes & Gray, LLP, 1211 Avenue of the Americas, New York, NY 10036, or such later date and time as selected by the Debtors (following consultation with the Consultation Parties); *provided that* such modification shall be subject to the Milestones.

No later than the day before the Auction, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, or, if multiple bids are received in respect of non-overlapping Assets, the highest or best Qualified Bid(s) received in relation to each group of Assets, in each case as determined in the Debtors' business judgment (each such bid, a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and the Consultation Parties. The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) shall take into account any factors the Debtors, in consultation of the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, which may include, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Bid; (e) the tax consequences of such Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted pursuant to the following procedures:

11

a.    <u>The Debtors Shall Conduct the Auction</u>

The Debtors and the Debtors' Advisors shall direct and preside over the Auction.

The Auction shall be conducted in an open cry format (and not by way of sealed bids).  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s).  All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders and the Consultation Parties.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, the Successful Bid(s), and any Backup Bid(s).

Only (i) Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Purchaser) and (ii) the Consultation Parties, and each of their respective legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person (live or on videoconference) and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Purchaser) shall be entitled to make any subsequent bids at the Auction; *provided, however*, that any creditor who wishes to physically attend the Auction (other than (i) the parties set forth in the Bidding Procedures (including the Qualified Bidders), and (ii) such other parties the Debtors deem appropriate), shall provide at least two (2) days' notice of such attendance prior to the Auction by sending an email to counsel to the Debtors.

b.    <u>Terms of Overbids</u>

"<u>Overbid</u>" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid.  Each Overbid must comply with the following conditions:

(i)    <u>Minimum Overbid Increment</u>.  Any Overbid to the initial Baseline Bid at the start of the Auction shall be in increments of no less than a value equal to $250,000 unless otherwise determined by the Debtors in an exercise of their business judgment; *provided, however*, that to the extent that the Baseline Bid constitutes the Stalking Horse Bid, the bidding for such Assets at the first round of bidding will start at an amount equal to the sum of: (i) the value of the Baseline Bid, (ii) the amount of the Breakup Fee and Expense Reimbursement, and (iii) $250,000.

(ii)    <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

(iii)    <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the

12

terms of these Bidding Procedures.

(iv)    <u>No Round-Skipping</u>.  Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for the Assets including, without limitation, submitting further Bids.

(v)    <u>Announcing Highest Bid.</u>  With respect to the Auction, the Debtors shall, subsequent to each Overbid Round Deadline, announce whether the Debtors in consultation with the Consultation Parties have identified (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid in respect of the Assets that are the subject of the Auction or (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.    <u>Consideration of Overbids</u>

For the purpose of evaluating the value of the consideration provided by any Bid subsequent to the Baseline Bid, the Debtors will at each round of bidding, give effect to the Breakup Fee and Expense Reimbursement payable to the Stalking Horse Purchaser under the Stalking Horse APA.

The Debtors reserve the right, in their business judgment, to adjourn the Auction one or more times, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal approvals and resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount; *provided that* such adjournment shall be subject to the Milestones.

d.    <u>Closing the Auction</u>

The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their discretion following consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid for the Assets.  Such Qualified Bid shall be declared the "<u>Successful Bid</u>," and such Qualified Bidder, the "<u>Successful Bidder</u>," at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of such Successful Bid is conditioned upon approval by the Court of such Successful Bid.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Successful Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

e.    <u>No Collusion; Good Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion, within the meaning of section 363(n) of the Bankruptcy Code with respect to any bids submitted or not submitted in connection with the Sale, and (ii) its Qualified Bid is a good faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Successful Bidder.

**VI.    Backup Bidder.**

a.    Notwithstanding anything in these Bidding Procedures to the contrary, if the Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the conclusion of the Auction for the Assets or any sub-group thereof, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") in accordance with the terms and conditions set forth herein.  Each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors, subject to the terms of such Backup Bidder's Competing APA.

b.    The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder related thereto.  Such Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the earlier of (i) the closing of the Approved Transaction and (ii) 30 days from entry of the Sale Order; *provided*, that if the Stalking Horse Purchaser is selected as the Backup Bidder, such date shall not be later than the date set forth in Section 9.2(d)(i) of the Stalking Horse APA.  Each Backup Bidder's Deposit shall be held in escrow until the earlier of (i) three (3) Business Days after the closing of the Approved Transaction and (ii) 30 days from entry of the Sale Order, subject to the terms of such Backup Bidder's Competing APA.

146202742_9
4866-7887-8932, v. 1

c. If a Successful Bidder fails to consummate the Approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder (which may be the Stalking Horse Purchaser) with respect to the Assets or sub-group of the Debtors' Assets or business as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

d. Notwithstanding any of the foregoing, in the event that the Successful Bidder (other than the Stalking Horse Purchaser) fails to consummate the Transaction on or before September 17, 2024 (or such date as may be extended by the Debtors with the consent of the DIP Agent (as defined in the DIP Order) and in consultation with the Consultation Parties), the Backup Bid will be deemed to be the Successful Bid, the Backup Bidder will be deemed to be the Successful Bidder, and the Debtors shall be authorized to consummate the Transaction with the Backup Bidder subject to the terms of the Backup Bid without the need for further order of the Court and without the need for further notice to any interested parties.

## VII.   Notice and Consultation Parties.

Information that is provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties: (a) proposed co-counsel to the Debtors, (i) Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn:   Gregg M. Galardi (gregg.galardi@ropesgray.com) and Lindsay Barca (lindsay.barca@ropesgray.com) and (ii) Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com); (b) counsel to the DIP Secured Parties, the Prepetition Lenders, and the Stalking Horse Purchaser, (i) Jones Day, 250 Vesey Street, New York, NY 10281, Attn: Thomas M. Wearsch (twearsch@jonesday.com) and Genna L. Ghaul (gghaul@jonesday.com) and (ii) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: Mark D. Collins (collins@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) counsel to the Prepetition Agent, Chapman and Cutler LLP, 320 S. Canal Street, Chicago, IL 60606 (Attn: David T. Audley, email: audley@chapman.com); and (d) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn:  Linda J. Casey or by email at linda.casey@usdoj.gov).

The term "Consultation Parties" as used in these Bidding Procedures shall mean (a) any official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") and, (b) in the event that the Stalking Horse Purchaser terminates its credit bid, the DIP Agent.

## VIII.   Consent to Jurisdiction.

Any Acceptable Bidders and Qualified Bidders shall: (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Court over, any disputes relating to, actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the

contemplated transaction documents; (ii) bring any such action or proceeding in the Court; and (ii) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

## IX.    Sale Hearing.

A hearing to consider approval of the sale (the "Sale Hearing"), pursuant to which the Debtors and the Successful Bidder will consummate the Transaction (the "Approved Transaction"), will be held no later than September 12, 2024.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing; *provided* that such later date is consistent with the Milestones, or the Debtors have obtained the necessary consents under the DIP Order.  No further notice of any such continuance will be required to be provided to any party.**

## X.    Objection Deadlines

Any objections to the Sale or the relief requested in connection with the Sale including objections related to the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (a "Sale Objection") must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"); (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before September 11, 2024 (the "Sale Transaction Objection Deadline"),with proof of service of such Sale Objection upon the Notice Parties being filed with the Court as and when required by the Local Rules; and (e) be served upon the Notice Parties; *provided, however*, that the Sale Transaction Objection Deadline solely for Sale Objections related to the adequate assurance of future performance of a purchaser that is not the Stalking Horse Purchaser or the conduct of the Auction shall be September 11, 2024.

## XI.    Return of Deposits.

The Deposit of the Successful Bidder shall be applied to the purchase price of the Approved Transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to each Successful Bidder and each Backup Bidder) on the date that is three (3) business days after the Auction, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If the Successful Bidder (or, if the Sale is to be closed with the Backup Bidder, then the Backup Bidder) other than the Stalking Horse Purchaser fails to consummate the Sale because of

a breach or failure to perform on the part of such bidder, then, subject to the terms of the Competing APA, the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Backup Bidder, then the Backup Bidder).

To the extent the Debtors do not consummate the proposed transaction with the Backup Bidder due to the closing of the transaction with the Successful Bidder, the Backup Bidder's deposit shall be refunded within three (3) business days of the closing of the Approved Transaction.

## XII.    Sale Is As Is/Where is

Except as may be set forth in the Stalking Horse APA or Competing APA, the Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of such sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

## XIII.    Reservation of Rights.

The Debtors reserve their rights, subject to prior consultation with the Consultation Parties and subject to the DIP Order and the DIP Credit Agreement (as defined therein), to modify these Bidding Procedures in their business judgment in any manner that will best promote the goals of these Bidding Procedures or impose at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid).  Notwithstanding the foregoing, the Debtors shall not be permitted to modify these Bidding Procedures in any way that permits Qualified Bids that propose consideration that does not include cash sufficient and specifically designated to pay (i) the Expense Reimbursement, (ii) the Credit Bid Amount, (iii) a minimum of $500,000 to be used  to wind-down the Debtors' estates, and (iv) Houlihan Lokey Capital, Inc.'s Sale Transaction Fee (as defined in Houlihan Lokey Capital, Inc.'s engagement agreement dated as of May 24, 2024).

*          *          *

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No. 24-11605 (JKS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. _____ |

**NOTICE OF PROPOSED SALE OF**
**ASSETS, STALKING HORSE APA, BIDDING**
**PROCEDURES, AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that the above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on July 29, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to sell (the "Sale") all or substantially all of their assets (the "Assets"), free and clear of all Liens other than Assumed Liabilities (each as defined in the Stalking Horse APA, as defined below).[2] In connection with the Sale, the Debtors have entered into an asset purchase agreement dated as of [●], 2024 (the "Stalking Horse APA") with [Honing US Holdings, LLS], subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures (as defined below).

***Summary of Key Dates Established by Bidding Procedures***

| **Date** | **Event or Deadline** | |
|---|---|---|
| Bidding Procedures Objection Deadline | August 16, 2024 at 4:00 p.m., prevailing Eastern Time | Deadline by which objections to the Bidding Procedures must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Objection Deadline"). |
| Bidding Procedures Approval | August 26, 2024 | Date for the approval of the Bidding Procedures |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Hardinge Inc. (0200); Ohio Tool Works, LLC (7569); Hardinge Technology Systems, Inc. (6427); Hardinge Grinding Group Inc. (6173); Forkardt Inc. (4671); Hardinge Ventures LLC (0586); and Kellenberger Swiss Grinding Machines, LLC (N/A). The Debtors' service address is One Hardinge Drive, Elmira, NY 14902 1507.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order and Bidding Procedures (each as defined below).

| Date | Event or Deadline | |
|------|-------------------|---|
| Deadline to Serve the Sale Notice and Publish the Publication Notice | [August 30], 2024 (or as soon as reasonably practicable thereafter) | Deadline by which the Debtors shall serve the Sale Notice by first-class mail upon the parties specified in this Motion and publish the Publication Note in [*Wilmington News Journal*] and [*USA Today* (national edition)]. |
| Bid Deadline | September 9, 2024, at 4:00 p.m., prevailing Eastern Time | Deadline for when the Debtors must ***actually receive*** binding bids from parties. |
| Auction (if Necessary) | September 10, 2024 | Date for when an Auction for the Assets will be conducted, if necessary. The Auction will be conducted at the office of Ropes & Gray LLP, 1211 6th Avenue, New York New York 10036 or via remote video at the Debtors' election. |
| Deadline to file Successful Bidder Notice | As soon as reasonably practicable after the close of the Auction | Deadline by which the Debtors will file with the Court the Successful Bidder Notice. |
| Sale Transaction Objection Deadline | September 11, 2024, at 4:00 p.m., prevailing Eastern Time | Deadline by which general objections to the sale must be filed with the Court and served so as to be actually received by the appropriate notice parties (the "Sale Transaction Objection Deadline"). |
| Sale Order Hearing | September 12, 2024 | Date for the hearing to consider the approval of the Sale Order |
| Sale Order Approval | September 13, 2024 | Date for the approval of the Sale Order |
| Sale and, in the event of a sale of all or substantially all of the Debtors' Assets, Confirmation Hearing | September 17, 2024 (subject to Court availability) | Date for a hearing (the "Sale Hearing") at which the Court will consider approving the sale of the Assets to one or more prospective purchasers, pursuant to a sale order or a chapter 11 plan. |

PLEASE TAKE FURTHER NOTICE that by order, dated [●], 2024 [Docket No. [●]] (the "Bidding Procedures Order"), the Bankruptcy Court approved certain relief requested in the related motion [Docket No. [●]] (the "Bidding Procedures Motion"), and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidders.  Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures and the Stalking Horse APA are available for download at https://cases.ra.kroll.com/Hardinge/ (the "Case Website") or from the Debtors' claims and noticing agent, Kroll Restructuring Administration LLC, via telephone at 833-307-3792 (US & Canada toll free) and +1 646-809-1790 (International) or via email to HardingeTeam@ra.kroll.com.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale.  **Any interested bidder should contact the Debtors' proposed investment banking advisor, Houlihan Lokey, Adam l. Dunayer (adunayer@hl.com) and Jim Georgeadis (jgeorgeadis@hl.com).**

PLEASE TAKE FURTHER NOTICE that the deadline to submit a bid for any Assets is **September 9, 2024, at 4:00 p.m. (E.T.)**.

PLEASE TAKE FURTHER NOTICE that an auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on **September 10, 2024 at 10:00 a.m. (E.T.)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants.

PLEASE TAKE FURTHER NOTICE that unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on **September 12, 2024 at 2:30 p.m. (E.T.)**, subject to the Bankruptcy Court's availability.

PLEASE TAKE FURTHER NOTICE that any objections to the Sale or the relief requested in connection with the Sale, including any objection to the sale of any Purchased Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of future performance by the Stalking Horse Purchaser but not including objections related to cure amounts for the Purchased Contracts or general objections to the assumption and assignment of the Purchased Contracts (each, a "Sale Objection"), must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 (the "Clerk"), and proof of service of such Sale Objection upon the Objection Notice Parties (as defined below) shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties.  Sale Objections must be filed with the Clerk **on or before 4:00 p.m. (E.T.) on September 11, 2024** (the "Sale Objection Deadline").

PLEASE TAKE FURTHER NOTICE that any Assignment Objections, (a) in the event the Stalking Horse Purchaser is the Successful Bidder, must be filed with the Clerk by the Sale Objection Deadline and, (b) in the event the Successful Bidder is not the Stalking Horse Purchaser, need not be written and filed and may be raised at the Sale Hearing.

The "Objection Notice Parties" are as follows: (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi and Lindsay C. Barca, email: gregg.galardi@ropesgray.com and lindsay.barca@ropesgray.com); and Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com); (b) the U.S. Trustee, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Linda Casey, email: linda.casey@usdoj.com); (c) counsel to [●] (Attn: [●], email: [●]); and (d) counsel for any statutory committee appointed in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

4891-3798-6260, v. 1

Dated: [●], 2024
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Draft*
Robert A. Weber (I.D. No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Email: weber@chipmanbrown.com
      desgross@chipmanbrown.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (No. 2991)
Lindsay C. Barca (*pro hac vice* pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail: gregg.galardi@ropesgray.com
      lindsay.barca@ropesgray.com

*Proposed Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT 3**

**Notice of Successful Bidder**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No. 24-11605 (JKS) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. \_\_\_\_** |

**NOTICE OF SUCCESSFUL BIDDER AND**
**BACK-UP BIDDER FOR CERTAIN OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2024, United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, and (B) Approving the Debtors' Entry into the Stalking Horse APA; and (II) Granting Related Relief* [Docket No. ●] (the "Order"),[2] by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale or sales of substantially all of the Debtors' assets (the "Assets") through one or more sale transactions.

On **September 10, 2024 at 10:00 a.m. (E.T.),** pursuant to the Order, the Debtors commenced the Auction with respect to certain Assets either in-person or by videoconference or such other form of remote communication established by the Debtors.

At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, selected the following Successful Bidder and Back-Up Bidder with respect to the Assets subject to the applicable Auction.

| Asset(s) | Successful Bidder | Back-Up Bidder | Key Terms |
|---|---|---|---|
|  |  |  |  |

The Sale Hearing to consider approval of the sale of the above-listed Assets to the Successful Bidder at the Auction referenced above will be held before the Honorable J. Kate

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Hardinge Inc. (0200); Ohio Tool Works, LLC (7569); Hardinge Technology Systems, Inc. (6427); Hardinge Grinding Group Inc. (6173); Forkardt Inc. (4671); Hardinge Ventures LLC (0586); and Kellenberger Swiss Grinding Machines, LLC (N/A).  The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Order or the Bidding Procedures, attached to the Order as Exhibit 1 thereto, as applicable.

Stickles, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on **September 12, 2024, at [2:30] p.m. (E.T.)**.

At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid and designation of the Back-Up Bid (if any) for the applicable Assets. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale for the applicable Assets, and there will be no further bidding at the Sale Hearing. If a Successful Bidder cannot or refuses to consummate the applicable sale transaction following entry of the applicable Sale Order because of the breach or failure on the part of the Successful Bidder, the Back-Up Bidder (if any) shall be deemed the new Successful Bidder and the Debtors shall be authorized, but not required, to close the applicable sale transaction with such Back-Up Bidder on the terms and provisions of such applicable Back-Up Bid without further order of the Court upon filing a notice with the Court providing at least five (5) days for parties to object to the sale to the Back-Up Bidder.

This notice is subject to the terms and conditions of the Order, and the Debtors encourage parties in interest to review such documents, including the Bidding Procedures, attached as Exhibit 1 to the Order, in their entirety. Parties interested in receiving additional or other information regarding the proposed Sale, proposed sale transaction, or other disposition of the applicable Assets may make contact Kroll Restructuring Administration LLC ("Kroll"), via telephone at 833-307-3792 (US & Canada toll free) and +1 646-809-1790 (International) or via email at HardingeTeam@ra.kroll.com.

Copies of the Motion, the Order, the Bidding Procedures, this notice, and any other related documents are available: (a) upon request to Kroll, via telephone at 833-307-3792 (US & Canada toll free) and +1 646-809-1790 (International) or via email at HardingeTeam@ra.kroll.com; (b) by visiting the Debtors' restructuring website at https://cases.ra.kroll.com/Hardinge/; or (c) for a fee via PACER by visiting https://pacer.uscourts.gov.

4881-3325-4100, v. 1

## **EXHIBIT 4**

**Assumption Notice**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No. 24-11605 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. _____** |

**NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT WITH RESPECT**
**TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

**PLEASE TAKE NOTICE THAT:**

The above-captioned debtors and debtors-in-possession (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), on April 1, 2024, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors are seeking to assume and assign certain of their executory contracts and unexpired leases in connection with the sale (the "Sale") of all or substantially all of their assets (the "Assets"), free and clear of all Liens other than Assumed Liabilities (each as defined in the Stalking Horse APA, as defined below)[2] pursuant to the order, dated [●], 2024 [Docket No. [●]] (the "Bidding Procedures Order") and certain "Bidding Procedures" that govern the sale of the Assets to the highest or otherwise best bidders. In connection with the Sale, the Debtors have entered into an asset purchase agreement dated as of [●], 2024 (the "Stalking Horse APA") with [Honing US Holdings, LLC], subject to the Debtors' acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

**You are receiving this notice because you or one of your affiliates may be a party to an unexpired lease or an executory contract that *may* be assumed and assigned (collectively, the "Purchased Contracts") in connection with such Sale. A list of the Purchased Contracts is attached hereto as Exhibit A.**

**To the extent that a Counterparty to a Contract objects to adequate assurance of performance by the Stalking Horse Purchaser, the Counterparty must file and serve an objection (a "Sale Objection"). Any Sale Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 September 11, 2024 at 4:00 p.m. (ET)**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Hardinge Inc. (0200); Ohio Tool Works, LLC (7569); Hardinge Technology Systems, Inc. (6427); Hardinge Grinding Group Inc. (6173); Forkardt Inc. (4671); Hardinge Ventures LLC (0586); and Kellenberger Swiss Grinding Machines, LLC (N/A). The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

(the "<u>Sale Transaction Objection Deadline</u>"), and proof of service of such Sale Transaction Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; (iv) be served upon the Objection Notice Parties; and (v) state with specificity the grounds for such objection.

**\*\*Any objections to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Purchaser shall be filed not later than September 11, 2024 at 4:00 p.m. (ET).\*\***

The "<u>Objection Notice Parties</u>" are as follows: (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi and Lindsay C. Barca, email: gregg.galardi@ropesgray.com and lindsay.barca@ropesgray.com); and Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com); (b) the U.S. Trustee, 844 N. King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Linda Casey, email: linda.casey@usdoj.com); (c) [●] (Attn: [●], email: [●]); and (d) counsel for any statutory committee appointed in these chapter 11 cases.

**If no timely objection is received as to adequate assurance of future performance with respect to a Contract, the non-Debtor party to such Contract shall be deemed to have consented to the Court determining that adequate assurance of future performance has been sufficiently demonstrated and shall be forever barred and estopped from asserting or claiming that the requirement of adequate assurance of future performance is not satisfied or demonstrated.**

Subject to the terms of the Bidding Procedures Order, an auction (the "<u>Auction</u>") for the Assets, including the Contracts, will be conducted on **September 10, 2024 at 10:00 a.m. (ET)**, at the offices of Ropes & Gray LLP, 1211 6th Avenue, New York, NY 10036, or virtually via telephone and/or video conference pursuant to information to be timely provided by the Debtors to the Auction Participants. After the Auction, the Debtors will file and serve a notice that identifies the Successful Bidder for the Assets, including any Contracts.

The Debtors will seek to assume and assign the Contracts that have been selected by the Successful Bidder (which, for the avoidance of doubt, may be the Stalking Horse Purchaser) (collectively, the "<u>Selected Purchased Contracts</u>") at a hearing before the Honorable J. Kate Stickles, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, (a "<u>Sale Hearing</u>") on September 12, 2023 at [2:30pm] (ET), subject to the Bankruptcy Court's availability, or such other date as determined by the Debtors, in consultation with the Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then in consultation with the Successful Bidder, in accordance with the terms of the Bidding Procedures Order.

Dated:  [●], 2024
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/  Draft*
Robert A. Weber (I.D. No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0192
Email: weber@chipmanbrown.com
      desgross@chipmanbrown.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (No. 2991)
Lindsay C. Barca (*pro hac vice* pending)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
E-mail: gregg.galardi@ropesgray.com
      lindsay.barca@ropesgray.com
*Proposed Counsel to the Debtors and Debtors in Possession*

4889-3895-3684, v. 1

**EXHIBIT A TO ASSUMPTION NOTICE**