# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Hardinge Inc., *et al.*,[1] | ) | Case No. 24-24-11605 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**INTERIM ORDER *(*I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtors to Use Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 16] (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of (i) an interim order (this "Interim Order") and (ii) a final order (the "Final Order") approving the Motion; and the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Hardinge Inc. (0200); Ohio Tool Works, LLC (7569); Hardinge Technology Systems, Inc. (6427); Hardinge Grinding Group Inc. (6173); Forkardt Inc. (4671); Hardinge Ventures LLC (0586); and Kellenberger Swiss Grinding Machines, LLC (N/A).  The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the DIP Documents (defined below), as applicable.

Debtors having requested on the record at the interim hearing on the Motion (the "Interim Hearing") that the Court enter this Interim Order, *inter alia*:

(a)    authorizing Hardinge Inc. ("Hardinge" or "Borrower") and its affiliated Debtors to obtain secured postpetition financing on a superpriority basis (the "DIP Facility", and the loans provided to Hardinge thereunder, the "DIP Loans") pursuant to the terms and conditions of that certain Superpriority Secured Debtor-in-Possession Credit Agreement filed as Exhibit B to the Motion (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Agreement"), by and among (i) the Borrower, (ii) the other Debtors, (iii) Centre Lane Solutions Partners, LP, as administrative agent (the "DIP Agent"), and (iv) the lenders from time to time party thereto (each, a "DIP Lender" and, collectively, the "DIP Lenders") and, collectively with the DIP Agent, the "DIP Secured Parties");

(b)    authorizing the Debtors to execute the DIP Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Secured Parties (as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Agreement, the "DIP Documents");

(c)    authorizing the Debtors to consummate the transactions contemplated by the DIP Documents;

(d)    granting to the DIP Secured Parties the DIP Liens (as defined below) on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Documents, as applicable, and this Interim Order and any Final Order, as applicable (collectively, and including all "Obligations" as defined in the DIP

Agreement, the "DIP Obligations"), subject only to the Carve-Out (as defined in paragraph 17 below);

(e)      granting allowed superpriority administrative expense claims to the DIP Secured Parties in connection with the DIP Facility;

(f)      authorizing the Debtors to use Prepetition Collateral and Cash Collateral (each as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(g)      authorizing the Debtors to grant adequate protection to the Prepetition Lenders (as defined below);

(h)      scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of the Final Order; and

(i)      granting such other and further relief as this Court deems necessary and just ((a) through (i) collectively, the "Requested Relief"); and the Interim Hearing having been held on July [•], 2024; and upon all of the pleadings filed with the Court, the First Day Declaration,[3]  the Dunayer Declaration,[4] and the evidence proffered or adduced and representations of counsel at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

---

[3]    *Declaration of Adrian Frankum, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18].

[4]    *Declaration of Adam Dunayer in Support Debtors' Motion to Obtain Postpetition Debtor in Possession Financing and the Debtors' Bidding Procedures Motion* [Docket No. 17].

**IT IS HEREBY FOUND AND DETERMINED THAT**:[5]

A.      <u>Petition Date</u>.  On July 29, 2024 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "<u>Creditors' Committee</u>") has been appointed in any of these Chapter 11 Cases.

B.      <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.      <u>Notice</u>.  Notice of the Motion, the relief requested therein and the Interim Hearing (the "<u>Notice</u>") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001 and in accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") on (i) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP Agent, DIP Lenders and Prepetition Lenders, (iii) counsel to the Prepetition Agent, (iv) all known holders of liens upon the Debtors' assets, (v) the Internal Revenue Service, (vi) the United States Trustee for the District of

---

[5]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

Delaware (the "U.S. Trustee"), and (vii) any parties entitled to notice pursuant to Local Rule 9013-1(m).

D.      Debtors' Acknowledgements and Stipulations.[6]

(i)      In requesting the Postpetition Financing Arrangement, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the Postpetition Financing Arrangement, the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates:

(a)      the DIP Lenders are not control persons or insiders (as defined in section 101(31) of the Bankruptcy Code) of any Debtor;

(b)      until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors agree that they will not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Secured Parties by offering subsequent lenders or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral (as defined below) pursuant to section 364(d) of the Bankruptcy Code or otherwise, except with respect to the Carve-Out (as defined below); and

(c)      until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors agree that they will not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses of the kind specified in, or arising or ordered under sections 105, 326,

---

[6] The provisions of this Recital D constitute stipulations of the Debtors and are not findings or conclusions of the Court.

328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out.

(ii)     In requesting the Postpetition Financing Arrangement, the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the challenge rights set forth in paragraph 19 herein, as follows:

(a)     the Borrower and the other Debtors as guarantors (in such capacity, the "Debtor Guarantors" and collectively with the Borrower, the "Prepetition Obligors") are parties to the Loan and Security Agreement, dated as of September 27, 2022 (as the same has been amended, restated, supplemented or modified from time to time, including pursuant to the Second Amendment (as defined below) the "Prepetition Credit Agreement") with BMO Harris Bank N.A., as administrative agent (the "Prepetition Agent") and certain financial institutions parties as lenders (the "Prepetition Financial Institutional Lenders").[7]  On July 22, 2024 all of the Loans and Commitments (each as defined in the Prepetition Credit Agreement) of the Prepetition Financial Institutional Lenders were assigned to Centre Lane Partners V, L.P. (together with the Prepetition Financial Institution Lenders, the "Prepetition Lenders" and together with the Prepetition Agent, the "Prepetition Secured Parties").  In connection with this transfer an amendment to

---

[7]     Other than with respect to paragraph **D(ii)** of this Interim Order, references to the Prepetition Lenders or the Prepetition Secured Parties in this Interim DIP Order exclude the Prepetition Financial Institution Lenders.

the Prepetition Credit Agreement was executed on July 23, 2024 (the "Second Amendment") that provided incremental liquidity to the Debtors;

(b)     to secure the "Obligations" (as defined in the Prepetition Credit Agreement, the "Prepetition Obligations"), the Prepetition Obligors granted to the Prepetition Agent, for the benefit of the Prepetition Lenders, first priority liens upon and security interests in (the "Prepetition Liens") substantially all of the Prepetition Obligors' property and assets, pursuant to all security agreements (including all documents and instruments used to perfect the Prepetition Liens), collateral agreements, pledge agreements, control agreements, guarantees, instruments and other documents (together with the Prepetition Credit Agreement, and all other agreements, documents, notes, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, each as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Loan Documents"), and, in all instances, the proceeds and products thereof (as set forth more fully in the Prepetition Loan Documents, collectively, the "Prepetition Collateral");

(c)     the Prepetition Secured Parties duly perfected the Prepetition Liens securing the Prepetition Obligations by, among other things, filing financing statements and, where necessary, by possession of relevant instruments, certificates, cash or other property, and all such instruments and actions were validly executed or performed, as the case may be, by, or with the consent of, the Debtors;

(d)      as of the Petition Date:  (A) the current outstanding principal balance of the Prepetition Obligations (exclusive of interest, fees, reimbursable expenses and other charges) is not less than $106,660,241.92; (B) the Prepetition Loan Documents are valid and enforceable by the Prepetition Secured Parties (excluding, for the avoidance of doubt, the Prepetition Financial Institution Lenders) against the Borrower and the Debtor Guarantors; (C) all of the Prepetition Obligations are absolutely and unconditionally owed by the Prepetition Obligors to the Prepetition Lenders (excluding, for the avoidance of doubt, the Prepetition Financial Institution Lenders); (D) the Prepetition Obligations constitute legal, valid and binding obligations of the Prepetition Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code to the extent applicable); (E) no recoupments, offsets, challenges, objections, defenses, reductions, impairments, claims, counterclaims, or cross claims of any kind or nature to any of the Prepetition Secured Parties, Prepetition Liens, Prepetition Collateral, or Prepetition Secured Obligations by any person or entity exist; and (F) no portion of the Prepetition Obligations or any payments or other transfers made to the Prepetition Agent or any other Prepetition Lender or applied to the Prepetition Obligations prior to the Petition Date is subject to avoidance, disallowance, disgorgement, subordination (whether equitable, contractual, or otherwise), recharacterization, recovery, attack, recoupment, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation;

(e)    the Prepetition Liens constitute valid, binding, continuing, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens with priority over any and all other liens on and security interests in the Prepetition Collateral (except as otherwise provided in the Prepetition Loan Documents) and are not subject to any challenge or defense, including without limitation, respectively, avoidance, disallowance, disgorgement, subordination (whether equitable, contractual, or otherwise), recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim, or Claim (as defined in the Bankruptcy Code), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(f)    the Debtors and their estates have no valid claims, objections, challenges, causes of actions, including without limitation, claims or causes of action pursuant to sections 501(d), 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or applicable non-bankruptcy law against the Prepetition Secured Parties or against any of their respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors or employees arising out of, based upon or related to the Prepetition Liens, Prepetition Collateral, Prepetition Secured Obligations or Prepetition Loan Documents and the Debtors irrevocably waive, discharge and release all rights to challenge or contest the Prepetition Liens of the Prepetition Secured Parties on the Prepetition Collateral or the validity or amount of the Prepetition Liens, Prepetition Collateral, Prepetition Secured Obligations, or the Prepetition Loan Documents;

(g)     any payments made on account of the Prepetition Obligations before the Petition Date were (A) made pursuant to the provisions of the Prepetition Loan Documents, (B) payments out of the Prepetition Collateral or (C) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

(h)     all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below);

(i)     none of the Prepetition Lenders is a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor; and

(j)     the Prepetition Lenders (excluding the Prepetition Financial Institution Lenders) are entitled to, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "Diminution"), caused by or arising as a result of (A) the incurrence and payment of the DIP Obligations, (B) the use of Prepetition Collateral (including Cash Collateral), (C) the granting of the DIP Liens and the DIP Superpriority Claim, (D) the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out, and (E) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Secured Parties or the Prepetition Lenders have a lien, security interest or any other interest (including, without limitation, any adequate protection liens or security interests), whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, in or on which the DIP Secured Parties or the Prepetition Lenders have a lien or a replacement lien, whether as part of the DIP Collateral or the Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Secured Parties or the Prepetition Lenders hold a lien or replacement lien, whether as part of the DIP Collateral or Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale, transfer or other disposition of DIP Collateral or Prepetition Collateral.

F.    Adequate Protection.  The Prepetition Lenders are entitled, pursuant to sections 361, 363(e) and 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any Diminution resulting from (i) the incurrence of the DIP Obligations, (ii) the use of Prepetition

Collateral (including Cash Collateral), (iii) the granting of the DIP Liens and the DIP Superpriority Claim, (iv) the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out, and (v) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. For the avoidance of doubt, any adequate protection provided in this Interim Order to the Prepetition Lenders excludes the Prepetition Financial Institution Lenders.

      G.    <u>Purpose and Necessity of Financing</u>. The Debtors require the Postpetition Financing Arrangement to (i) permit the continuation of their businesses and maximize and preserve their going concern value, (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Documents and the Approved Budget (as defined below), (iii) provide adequate protection to the Prepetition Lenders, (iv) pay fees and expenses related to the DIP Documents and these Chapter 11 Cases, and (v) for such other purpose as set forth in, or otherwise permitted by, the DIP Documents (including the Approved Budget). If the Debtors do not obtain authorization to use the Prepetition Collateral (including Cash Collateral) and borrow under the DIP Agreement, they will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable only as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Documents. A loan facility in the amount provided by the DIP Documents is not available to the Debtors without granting the superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that

the Postpetition Financing Arrangement, including without limitation, the DIP Facility, is the best financing available to them at this time.

H.    <u>Good and Sufficient Cause Shown</u>.  Good and sufficient cause has been shown for entry of this Interim Order.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Documents and use of the Prepetition Collateral (including the Cash Collateral) is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Documents and this Interim Order will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses pending the sale of substantially all of their assets.  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates.

I.    <u>Sections 506(c) and 552(b) Waivers</u>.  In light of (i) the DIP Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the DIP Obligations, the Carve-Out and the DIP Liens, and to permit the use of the Prepetition Collateral (including Cash Collateral), subject to entry of the Final Order, each of the DIP Secured Parties and the Prepetition Lenders are entitled to a waiver of the provisions of section 506(c), and the Prepetition Lenders are entitled to a waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code.

J.    <u>Good Faith</u>.  Based on the Dunayer Declaration, the terms of the DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order, including, without limitation, the interest rates and fees applicable are more favorable to

the Debtors than those available from alternative sources, if any.  Based upon the record before

the Court, including the Dunayer Declaration, the DIP Documents and the use of the Prepetition

Collateral (including the Cash Collateral) pursuant to this Interim Order have been negotiated in

good faith and at arm's-length among the Debtors, the DIP Secured Parties and the Prepetition

Lenders.  Any DIP Loans and other financial accommodations made to the Debtors by the DIP

Secured Parties pursuant to the DIP Documents and this Interim Order shall be deemed to have

been extended by the DIP Secured Parties in good faith, as that term is used in section 364(e) of

the Bankruptcy Code, and each of the DIP Secured Parties shall be entitled to all protections and

benefits afforded thereby.

K.      Fair Consideration and Reasonably Equivalent Value.  Based on the Dunayer

Declaration, all of the Debtors have received and will receive fair and reasonable consideration by

virtue of their obtaining access to the DIP Loans, the use of the Prepetition Collateral (including

the Cash Collateral) pursuant to this Interim Order and all other financial accommodations

provided under the DIP Documents and this Interim Order.  Based on the Dunayer Declaration,

the terms of the DIP Documents and this Interim Order are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties and are supported by

reasonably equivalent value and fair consideration.

L.      Immediate Entry of Interim Order.  The Debtors have requested immediate entry

of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b).  The

permission granted herein to enter into the DIP Documents, to obtain funds thereunder and to use

the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order is

necessary to avoid immediate and irreparable harm to the Debtors.  Based on the Dunayer

Declaration, this Court concludes that entry of this Interim Order will, among other things, allow

for access to the financing necessary for the continued flow of supplies and services to the Debtors and payment of employees necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Disposition</u>.  The relief requested by the Debtors in the Motion and otherwise on the record at the Interim Hearing is granted on the terms solely as set forth in this Interim Order.  Any objection to the interim relief sought by the Debtors that has not previously been withdrawn or resolved is hereby overruled on its merits.

2.      <u>Authorization For DIP Financing</u>.  The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately during the period prior to entry of the Final Order, subject to the terms of this Interim Order, the Approved Budget and the DIP Documents, in an aggregate principal amount not to exceed $14,000,000 (the "<u>Interim Amount</u>") unless and until the DIP Secured Parties agree on further funding for the USACH/Kellenberger Term Loan Commitment (as defined in the DIP Documents), in which case the aggregate principal amount is not to exceed $24,200,00 ("<u>Interim Borrowings</u>"), with the maximum principal amount that may be borrowed following entry of the Final Order not to exceed $27,350,000[8] (the "<u>Maximum Commitment</u>").  Available financing and advances under the DIP Agreement shall, on an interim basis, be made to fund, in accordance with the DIP Documents and the Approved Budget, working capital and general corporate requirements of the Debtors, adequate protection to the Prepetition

---

[8]    Which amount does not include any amounts on account of the DIP Fees which are to be paid in kind upon funding of the Interim Amount.  Inclusive of the amounts paid in kind on account of the DIP Fees, the Maximum Commitment is $29,486,764.

Lenders, bankruptcy-related costs and expenses (including interest, fees, and expenses in accordance with this Interim Order and the DIP Documents), and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the Approved Budget and the DIP Documents.

       3.     <u>Authorization for Use of Cash Collateral</u>.  The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget and the DIP Documents, without further approval by the Court.

       4.     <u>Approved Budget</u>.

       (a)     The Debtors have delivered to the DIP Agent a detailed budget that sets forth projected cash receipts and cash disbursements on a weekly basis for the time period from and including the Petition Date through September 15, 2024 that has been approved by the Required DIP Lenders (defined below), and a copy of which is attached hereto as <u>Exhibit A</u> (as updated, amended, supplemented or otherwise modified in accordance herewith, the "<u>Approved Budget</u>").  The Debtors shall provide to the DIP Secured Parties financial reporting in accordance with the terms of the DIP Documents.  Funds borrowed under the DIP Agreement and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the DIP Documents, including the Approved Budget, and this Interim Order.  Except to the extent provided in paragraph 17 of this Interim Order to fund the Carve-Out and paragraph 21(f) with respect to Authorized Amounts (as defined below), the consent of the Required DIP Lenders to the Approved Budget shall not be construed as a commitment of the DIP Lenders to provide DIP Loans or of the DIP Secured Parties or Prepetition Lenders to permit the use of Cash Collateral (subject to the Carve-Out) after the occurrence of a Termination Event (as defined below) under this Interim

Order, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(b)    The Approved Budget and Approved Variance Report (as defined below) shall, including any and all updates, amendments, supplements and modifications, at all times be in form and substance reasonably acceptable to the Required DIP Lenders and approved in writing by the DIP Agent (email being sufficient) prior to the implementation thereof.  Notwithstanding anything herein to the contrary, any such updates, amendments, supplements or modifications to the Approved Budget must be consented to in writing (email being sufficient) by the DIP Lenders holding more than fifty percent (50%) of the DIP Loan Commitments (the "Required DIP Lenders") prior to the implementation thereof, and, subject to paragraph 11, shall not require further notice, hearing, or Court order.  Any updates, amendments, supplements or modifications to the Approved Budget that are approved by the Required DIP Lenders shall be provided to the U.S. Trustee and counsel for any Creditors' Committee.

(c)    The DIP Secured Parties (i) may assume the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance, and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget other than to permit the Debtors' use of Cash Collateral as expressly provided herein prior to the occurrence of a Termination Event (and subsequent to a Termination Event to the extent provided in paragraph 17 of this Interim Order to fund the Carve-Out and paragraph 21(f) with respect to Authorized Amounts).  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Documents, as the same may be amended from time to time with the consent of the DIP Lenders or Required DIP Lenders (as applicable in accordance with the DIP Documents).  Subject to the

terms and conditions of this Interim Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget line item restrictions on loan availability set forth in the DIP Documents, and all DIP Loans shall be entitled to the benefits and protections of this Interim Order.  For the avoidance of doubt, no DIP Lender shall be obligated to extend credit outside the terms of the DIP Documents.

    (d)  As more fully described in the DIP Credit Agreement, on or before 12:00 p.m. Eastern time each Wednesday (each, a "Testing Date"), commencing after the first full calendar week following the Petition Date and each calendar week thereafter, the Debtors shall deliver to the DIP Agent a variance report in form and substance reasonably acceptable to the Required DIP Lenders (an "Approved Variance Report") that shows (A) comparisons of actual results for each line item against such line item in the Approved Budget for the prior periods ended and (B) indicates whether there are any adverse variances that exceed the Permitted Variance.  The term "Testing Period" means, with respect to each Variance Report required to be delivered under the DIP Credit Agreement, the period from the Saturday immediately prior to the Petition Date and ending on the Friday prior to the applicable Testing Date.  As used herein, "Permitted Variance" means (a) a negative variance of up to 10% for aggregate cumulative actual cash receipts for such Testing Period compared to the projected aggregate cumulative cash receipts for the Debtors for such Testing Period as set forth in the Approved Budget and (b) a positive variance of up to 10% for aggregate cumulative actual cash disbursements on a line by line basis (including professional fees) of the Debtors for such Testing Period compared to the projected aggregate cash disbursements on a line by line basis (including professional fees) for such Testing Period as set forth in the Approved Budget.  The Approved Variance Report shall also provide a reasonable detailed narrative explanation for any variance that exceeds the Permitted Variances.  The DIP

Agent shall promptly deliver to the DIP Lenders a copy of each Approved Variance Report upon such agent's receipt.

5.     <u>Authority to Execute and Deliver Necessary Documents</u>.    Subject to paragraph 11, each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Documents, in each case including any amendments, supplements and modifications thereto in accordance with the terms thereof and this Interim Order.    Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any other UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents, instruments, or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Documents, each as may be reasonably requested by the DIP Agent.

6.     <u>Authority to Perform Obligations and Acts</u>.    Each of the Debtors is further authorized to (i) perform all of its obligations and acts contemplated by the DIP Documents and such other agreements as may be required by the DIP Documents to give effect to the terms of the financing provided for therein and in this Interim Order, including pursuant to the terms of the DIP Documents to cause non-Debtor subsidiaries to become Guarantors of the DIP Obligations, and (ii) perform all acts required under the DIP Documents and this Interim Order.

7.     <u>Valid and Binding Obligations</u>.    All obligations under the DIP Documents and this Interim Order shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance,

reduction, set-off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

8.      <u>Termination of DIP Documents</u>.  Notwithstanding anything in this Interim Order to the contrary, the DIP Lenders' commitments under the DIP Documents will terminate and the DIP Obligations will become due and payable, and the Debtors' authority to use Cash Collateral in accordance with this Interim Order will terminate, on the date that is the earliest to occur of (in each case, the "<u>Maturity Date</u>"):  (i) the date that is ninety (90) days following the Petition Date; (ii) the date that is thirty (30) days following the entry of this Interim Order if the Court has not entered the Final Order on or prior to such date; (iii) termination of the Stalking Horse APA for any reason without the prior written consent of the Required DIP Lenders other than a termination of the Stalking Horse APA as a result of a default by the Stalking Horse Purchaser or a termination for the Debtors to pursue approval of an Alternative Transaction that results in the payment in full of the DIP Obligations at or prior to the maturity thereof as of the closing of such Alternative Transaction; (iv) the substantial consummation (as defined in section 1101 of the Bankruptcy Code and which for purposes hereof shall be no later than the "effective date" thereof) of a plan of reorganization or liquidation filed in the Chapter 11 Cases that is confirmed pursuant to an order entered by the Court; (v) date of acceleration of the DIP Obligations and the termination of the DIP Commitments upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement); (vi) the filing of a motion by the Loan Parties seeking dismissal of any of the Chapter 11 Cases (without the prior consent of the Required DIP Lenders), the dismissal of any of the Chapter 11 Cases, or the filing of a motion by the Loan Parties seeking to convert any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (vii)

entry of an order by the Court approving (A) a motion seeking conversion or dismissal of any or all of the Chapter 11 Cases or (B) a motion seeking the appointment or election of a trustee, a responsible officer or examiner with enlarged powers relating to the operation of the Debtors' business; (viii) the date the Court orders the conversion of the bankruptcy case of any of the Debtors to a chapter 7 liquidation; and (ix) the dismissal of the bankruptcy case of any Debtor.

9.    Termination of Authority to Use Cash Collateral.  Subject to paragraph 21(f), the Debtors' ability to use Cash Collateral prior to the Maturity Date will immediately terminate (except to the extent provided in paragraph 17 of this Interim Order to fund the Carve-Out and paragraph 21(f) with respect to Authorized Amounts) following the occurrence of any event described below (each a "Termination Event"):

(a)    any Debtor fails to comply in any material respect with any of the terms or conditions of this Interim Order, and such failure is not cured during any applicable Remedies Notice Period;

(b)    any Debtor seeks any modification or extension of this Interim Order, without consent of the Required DIP Lenders;

(c)    an application (other than the application for financing provided by a third party which seeks authority to pay all of the DIP Obligations and the Prepetition Obligations in full upon entry of the order approving such financing) is filed by any Debtor for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in any of the Chapter 11 Cases, which is *pari passu* with or senior to the DIP Obligations or DIP Liens, excluding liens expressly permitted to be senior to the DIP Liens under this Interim Order or pursuant

to any other financing agreement made with the prior written consent of the Required DIP Lenders;

(d)      the commencement or support of any action by any Debtor or any party exercising the authority of any Debtor against any of the DIP Lenders, or its agents and employees, to subordinate or avoid any liens made in connection with the DIP Documents or to avoid any obligations incurred in connection with the DIP Documents;

(e)      any Order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any assets of the Debtors with an aggregate value of more than $150,000;

(f)      (i) any Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (ii) any material provision of this Interim Order shall for any reason, or any other order of this Court approving the Debtors' use of Cash Collateral, without the prior written consent of the Required DIP Lenders, cease to be valid and binding;

(g)      any Debtor withdraws or modifies the motion to approve the sale of all or substantially all of the Debtors' assets without the consent of the Required DIP Lenders;

(h)      the Debtors fail to meet any Milestone (as defined below), unless extended or waived by Required DIP Lenders; or

(i)      the occurrence of the Maturity Date.

10.     <u>Authorization and Direction for Payment of DIP Financing Fees and Expenses</u>.  Subject to the provisions of this paragraph 10, all fees paid or payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Documents and the DIP Agent's and DIP Lenders' reasonable attorneys' fees ("<u>Professionals</u>")), by the Debtors to the DIP Secured Parties are hereby approved, to the extent provided in the DIP Agreement.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Documents and this Interim Order, without any requirement that the Debtors, the DIP Agent, the DIP Lenders or their respective attorneys file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses.  To the extent provided in the DIP Agreement, the Debtors shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of the DIP Secured Parties (including all reasonable fees, expenses and disbursements of outside counsel, including local counsel, and Professionals) in connection with the Chapter 11 Cases and any Successor Case(s) (as defined below), including, without limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the DIP Facility, (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Documents, this Interim Order, and any Final Order, (c) the administration of the Chapter 11 Cases and any Successor Case(s), and (d) the enforcement or protection of the DIP Secured Parties' rights and remedies under the DIP Documents, this Interim Order, and any Final Order.  Notwithstanding anything to the contrary herein, the payment of all such fees, costs and expenses of the DIP Secured Parties, whether incurred before or after the Petition Date, including, without limitation, all fees referred to in the DIP Documents and all

reasonable attorneys' fees and expenses, shall (i) be deemed non-refundable and irrevocable, and (ii) the Debtors shall not be deemed to have breached the terms of the Approved Budget to the extent the actual amount of such fees, costs and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.  None of the DIP Secured Parties' attorneys' fees or disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the U.S. Trustee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Any such fees, costs and expenses shall be paid by the Debtors within ten (10) days after delivery of an invoice (redacted for privilege) to the Debtors and without the need for application to or order of the Court.  A copy of such invoice shall be provided by the DIP Agent to the U.S. Trustee, counsel for the Prepetition Agent and counsel for any Creditors' Committee on the same business day as the Debtors' receipt of such invoice. Notwithstanding the foregoing, if (x) the Debtors, U.S. Trustee or any Creditors' Committee object to an invoice submitted by the DIP Secured Parties and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following receipt of such invoice, the Debtors, the U.S. Trustee or such Creditors' Committee, as the case may be, shall file with the Court and serve on the DIP Agent and DIP Secured Parties submitting the fee request a fee objection (a "DIP Secured Party Fee Objection").  The Debtors shall promptly pay or the DIP Lenders are hereby authorized to make an advance under the DIP Agreement to timely pay, any submitted invoice after the expiration of the ten (10) day period if no DIP Secured Party Fee Objection is filed with the Court and served on the DIP Agent and the DIP Lenders in such ten (10) day period.  If a DIP Secured Party Fee Objection is timely filed and served, the Debtors shall promptly pay or the DIP Secured Parties are hereby authorized to make an advance under the DIP Agreement to timely pay, the undisputed amount of the invoices, and the Court shall have

jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the DIP Secured Party Fee Objection.

11.     <u>Amendments, Consents, Waivers, and Modifications</u>.  The Debtors, with the express written consent of the Required DIP Lenders in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers, or modifications to the DIP Documents without the need for further notice and hearing or any order of this Court, so long as such amendments, consents, waivers, or modifications are non-material or not adverse to the Debtors' estates or their creditors (other than the Required DIP Lenders).  A copy of any such amendment, consent, waiver or modification shall be provided by the Debtors to the DIP Lenders, U.S. Trustee and counsel for any Creditors' Committee.  Any material or adverse changes to the DIP Documents, as well as any increases in the amount of the DIP Loans (except as provided in paragraphs 2 and 4(c) of this Interim Order), will require the consents of the Required DIP Lenders in addition to any express written consents required by the DIP Documents and Court approval and increases in the amount of the DIP Loans shall require the consent of all DIP Lenders whose commitments are being increased.

12.     <u>DIP Secured Parties' Lien Priority</u>.

(a)     To secure the DIP Obligations, the DIP Secured Parties are hereby granted pursuant to and in accordance with Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "<u>DIP Liens</u>") in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest

in and to all cash, accounts, accounts receivable, goods, inventory, property, plant and equipment, commercial tort claims, intellectual property, contract rights, tax refunds, prepaid expenses, deposits, general intangibles, real estate, leaseholds, all proceeds or property recovered in connection with actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (provided that the lien on Avoidance Actions and proceeds of Avoidance Actions shall be limited to the proceeds and property recovered in connection therewith and shall only attach hereunder to the extent approved in the Final Order), all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Documents or not) and any and all proceeds and property recovered therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that constitute Prepetition Collateral, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"); provided, however, that (x) "DIP Collateral" shall not include the Debtors' nonresidential real property leases (the "Real Property Leases") and the DIP Liens shall not attach to the Real Property Leases, except as may be permitted by such leases and (y) "DIP Collateral" shall include the proceeds of the Real Property Leases and the DIP Liens shall attach to such proceeds.

(b)     The DIP Liens shall be effective immediately upon the entry of this Interim Order and it shall be an Event of Default if the Debtors at any time seek to make such liens subject or subordinated to, or *pari passu* with, any other lien, security interest or claim existing as of the

Petition Date or created thereafter, including under Sections 363 or 364(d) of the Bankruptcy Code
or otherwise, other than the Carve-Out.

(c)     The DIP Liens shall be and hereby are deemed fully perfected liens and
security interests, effective and perfected upon the date of this Interim Order, without the necessity
of execution by the Debtors of mortgages, security agreements, pledge agreements, financing
agreements, financing statements, account control agreements or any other agreements, filings or
instruments, such that no additional actions need be taken by the DIP Agent, the DIP Lenders or
any other party (including, without limitation, any depository bank or securities intermediary) to
perfect such interests.

(d)     At all times prior to indefeasible payment in cash in full of the DIP
Obligations, the priority of the DIP Liens will:

(i)     Pursuant to Section 364(c)(2) of the Bankruptcy Code, be perfected
first priority liens on all DIP Collateral which, as of the Petition Date, was unencumbered
or subject to invalid, unperfected or avoidable liens;

(ii)     Pursuant to Section 364(c)(3) of the Bankruptcy Code, be perfected
junior liens on all DIP Collateral that was, as of the Petition Date, subject to valid, perfected
(before the Petition Date or in accordance with Section 546(b) of the Bankruptcy Code),
unavoidable liens in existence at the time of the commencement of the Chapter 11 Cases
(other than the liens securing the Prepetition Obligations, which liens are "primed" by the
DIP Liens pursuant to the liens described in subsection (iii) below) with a priority
immediately junior to any such liens ("Senior Third-Party Liens");[9]

---

[9] For the avoidance of doubt, nothing herein shall constitute a finding or ruling by this Court that any asserted Senior
Third-Party Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice
the rights of any party-in-interest, including, but not limited to, the Debtors, the Prepetition Lenders, the DIP Secured

(iii)     Pursuant to Section 364(d)(1) of the Bankruptcy Code, be perfected first priority, senior priming liens on all DIP Collateral that is subject to (a) the existing liens that secure the obligations of the applicable Debtors under or in connection with the Prepetition Credit Agreement and (b) subject to entry of the Final Order, existing liens junior in priority to the liens granted in favor of the Prepetition Lenders (collectively, the "Junior Lienholders" and collectively with the Prepetition Lenders, the "Primed Parties"), all of which existing liens (the "Primed Liens") shall be primed by and made subject and subordinate to the perfected first-priority senior liens granted to the DIP Secured Parties hereunder, which senior priming liens in favor of the DIP Secured Parties shall also prime any liens granted after the commencement of the Chapter 11 Cases to provide adequate protection in respect of any of the Primed Liens; and

(iv)     Pursuant to the terms of this Interim Order, be subject to the Carve-Out.

13.     DIP Secured Parties' Superpriority Claim.  The DIP Secured Parties are hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation but to the extent provided in the Bankruptcy Code, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326,

---

Parties or any Creditors' Committee, to challenge the validity, priority, enforceability, seniority, non-avoidability, perfection or extent of any alleged Senior Third-Party Liens.

146391911_5
4860-7107-4000, v. 3

328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c),

546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, which

allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and

postpetition property of the Debtors and all proceeds thereof including, without limitation, (upon

the entry of the Final Order) any proceeds or property recovered in connection with the pursuit of

Avoidance Actions.  The DIP Superpriority Claim shall be subject and subordinate in priority of

payment only to the Carve-Out.

14.    Survival of DIP Liens, DIP Superpriority Claim, Adequate Protection

Liens, and Adequate Protection Superpriority Claim.  The DIP Liens, DIP Superpriority Claim,

Adequate Protection Liens, and Adequate Protection Superpriority Claim and other rights and

remedies granted under this Interim Order to the DIP Agent, the DIP Lenders, the Prepetition

Agent, and the Prepetition Lenders shall continue in these Chapter 11 Cases and any Successor

Case(s), and shall be valid and enforceable against any trustee appointed in any or all of the

Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases,

or in any Successor Case(s), and such liens and security interests shall maintain their first priority

as provided in this Interim Order until all the DIP Obligations and the Prepetition Obligations have

been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in

accordance with the DIP Documents and this Interim Order.

15.    Adequate Protection for Prepetition Lenders.  As adequate protection in

respect of, and as consideration for any Diminution resulting from any of the incurrence and

payment of the DIP Obligations, the use of Cash Collateral, the use of other Prepetition Collateral,

the granting of the DIP Liens and the DIP Superpriority Claim, the subordination of the Prepetition

Obligations to the DIP Obligations and the Carve-Out and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code, the Prepetition Lenders are hereby granted (in each case subject only to the DIP Liens, the DIP Superpriority Claim, and the Carve-Out) the following adequate protection:

(a)     Adequate Protection Liens.   To secure the Adequate Protection Superpriority Claim (as defined below), the Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, is hereby granted (effective and perfected by operation of law immediately upon entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "Adequate Protection Liens") in and on all of the DIP Collateral, with a priority subject and subordinate only to (i) the DIP Liens, the DIP Superpriority Claim, (ii) the Senior Third-Party Liens, and (iii) the Carve-Out.  The Adequate Protection Liens shall be *pari passu* with the Prepetition Liens.

(b)     Adequate Protection Superpriority Claim.   As further adequate protection, the Prepetition Agent, for itself and for the benefit of the Prepetition Lenders, is hereby granted a superpriority claim to the extent of any Diminution, which claim shall, to the extent provided by the Bankruptcy Code, have priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim"), provided however, such Adequate

Protection Superpriority Claim shall (i) be subordinate and subject only to the DIP Superpriority Claim and the Carve-Out, and (ii) shall be entitled to all protections and benefits of Section 507(b) of the Bankruptcy Code.  For the avoidance of doubt, the Adequate Protection Superpriority Claim shall not be payable from, pending entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions.

(c)    Prepetition Lenders' Fees and Expenses.  The Debtors shall pay the reasonable fees, charges, expenses (including attorneys' fees and other professional expenses) of the Prepetition Agent in connection with the Chapter 11 Cases and any Successor Case(s), including, without limitation, in connection with (i) the preparation and negotiation of the DIP Facility, DIP Loan Documents, this Interim Order and any Final Order, (ii) any amendment or waiver of any provision of this Interim Order and any Final Order, (iii) the administration of the Chapter 11 Cases and any Successor Case(s), and (iv) the enforcement or protection of the Prepetition Lenders' rights and remedies under the Prepetition Credit Agreement, this Interim Order, and any Final Order.  The Debtors' obligations to make such payments shall include, in each instance, any of such fees, charges, expenses and other amounts which were incurred or accrued but unpaid as of the date hereof, including amounts incurred prior to the Petition Date, all of which shall be paid by the Debtors promptly upon entry of this Interim Order as adequate protection and as a condition to the effectiveness of the DIP Facility (the "Initial Reimbursement").  All such fees, costs and expenses shall be paid by the Debtors within ten (10) days after delivery of an invoice (redacted for privilege) to the Debtors and without the need for further application to or order of the Court.  None of such fees, costs, and expenses shall

be required to be recorded or maintained in any particular format and no recipient of any such payment shall be required to file any interim or final fee application with the Court. A copy of such invoice shall be provided by the Prepetition Lender to the U.S. Trustee, counsel for the DIP Agent and counsel for any Creditors' Committee at the same time as delivery to the Debtors. Notwithstanding the foregoing, if (x) the Debtors, the U.S. Trustee or any Creditors' Committee object to an invoice submitted by the Prepetition Lenders and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following the Debtors' receipt of such invoice, the Debtors, the U.S. Trustee or such Creditors' Committee, as the case may be, shall file with the Court and serve on the Prepetition Lenders a fee objection (a "Prepetition Lenders Fee Objection"). The Debtors shall promptly pay or the DIP Lenders are hereby authorized to make an advance under the DIP Agreement to timely pay, any submitted invoice after the expiration of the ten (10) day period if no Prepetition Lenders Fee Objection has been filed with the Court and served on the DIP Agent in such ten (10) day period. If a Prepetition Lenders Fee Objection is timely filed and served, the Debtors shall promptly pay or the DIP Secured Parties are hereby authorized to make an advance under the DIP Agreement to timely pay, the undisputed amount of the invoice, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the Prepetition Lenders Fee Objection. In all events, the payments pursuant to this subsection (c) shall be subject to the rights reserved to third parties under paragraph 19.

(d)     506(c) and 552(b) Waivers. Subject to the entry of the Final Order, the Prepetition Lenders' consent to use of Cash Collateral and Prepetition Collateral under this Interim Order and the Debtors' right to use Cash Collateral and Prepetition Collateral:

(i) is in lieu of any section 506(c) claim, payment or priority for the costs or expenses of the administration of any of these Chapter 11 Cases; and (ii) is granted as consideration for (among other things) the waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code, which exceptions are hereby waived.

   16. <u>Access; Reporting; Credit Bid Rights</u>.

   (a) <u>Access to Debtor's Chief Restructuring Officer and Investment Banker</u>.  The Debtors shall cause their chief restructuring officer (the "<u>CRO</u>") and investment bankers (the "<u>Investment Bankers</u>") to meet with the DIP Agent and the DIP Lenders and their representatives as reasonably requested and to cause the Investment Bankers and the CRO to be available to meet with the DIP Agent and the DIP Lenders by phone every two-weeks during the Chapter 11 Cases.

   (b) <u>Reporting</u>.  As and when required under the terms of the DIP Agreement, the Debtors shall provide to the DIP Secured Parties all of the financial information, operational information and related reports, documents and analysis required under the terms of the DIP Agreement.

   (c) <u>Credit Bidding Rights</u>.  Subject to paragraph 19 of this Interim Order with respect to any credit bid of the Prepetition Obligations, the Debtors, the DIP Lenders and the Prepetition Lenders, as applicable, agree that in any sale of the DIP Collateral or Prepetition Collateral, the DIP Lenders or the Prepetition Lenders, respectively, shall have the right to credit bid the Prepetition Obligations and the DIP Obligations, subject to Section 363(k) of the Bankruptcy Code, including the rights of any party in interest (other than the Debtors) arising under Section 363(k) of the Bankruptcy Code.  The Debtors agree that any motion filed by the Debtors seeking approval of bid procedures will contain a

request for approval of the right of the DIP Lenders or the Prepetition Lenders to credit bid the DIP Obligations or the Prepetition Obligations, as applicable. The foregoing agreement shall operate as a finding that the DIP Lenders (or the DIP Agent, on the DIP Lenders' behalf) and, subject to paragraph 19 of this Interim Order, the Prepetition Lenders (or the Prepetition Agent, on the Prepetition Lenders' behalf) shall have the right to credit bid the full amount of the DIP Obligations or the Prepetition Obligations, as applicable, then outstanding subject to Section 363(k) of the Bankruptcy Code (as set forth above) and the right of the DIP Lenders or the Prepetition Lenders to credit bid in accordance with this subsection (c) shall not be modified or altered by any event, without the prior written consent of each affected DIP Lender or Prepetition Lender, subject to the rights of any party in interest (other than the Debtors) arising under Section 363(k) of the Bankruptcy Code. Each DIP Lender or Prepetition Lender is also authorized to assign its right to credit bid in whole or in part to affiliates of such DIP Lender or Prepetition Lender, to be exercised by such affiliate(s) at any auction in connection with the sale of any of the Debtors' assets.

17. <u>Carve-Out</u>.

(a) The DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, the Adequate Protection Superpriority Claim, and the Prepetition Liens shall be subject and subordinate to the following: (i) all fees required to be paid to (A) the clerk of the Bankruptcy Court and (B) the Office of the United States Trustee under section 1930(a) of Title 28 of the United States Code, plus interest required to be paid on any past due amount at the statutory rate (collectively, the "<u>UST Carve-Out</u>"); (ii) all reasonable fees and expenses, up to $50,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>");

(iii) to the extent allowed at any time, all unpaid fees and expenses (the "Allowed Professional Fees") of persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or by any Creditors' Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") that are incurred or earned at any time before or on the first Business Day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed prior to or after delivery of a Carve-Out Trigger Notice (the "Professional Fee Carve-Out") but, in each case, to the extent set forth in the Approved Budget; and (iv) Allowed Professional Fees in an aggregate amount not to exceed $500,000, incurred after the first Business Day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time (the "Post-Trigger Carve-Out" and with the UST Carve-Out, the Chapter 7 Carve-Out and the Professional Fee Carve-Out, the "Carve-Out").  "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to lead restructuring counsel to the Debtors, the U.S. Trustee, and counsel to any Creditors' Committee, stating that (a) the Post-Trigger Carve-Out has been invoked, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Agreement; (b) the DIP Loans have been accelerated and (c) the DIP Lenders do not intend to fund further advances under the DIP Loans, or consent to further use of Cash Collateral.  For the avoidance of doubt, the Carve-Out shall not include fees of any investment banker earned in conjunction with consummation of a sale transaction or transactions as set forth in their respective engagement letters with the applicable Debtors, unless such amounts are included in the Approved Budget.  Further, to the extent fees of any investment banker earned in conjunction consummation of a transaction or transactions as set forth in their respective engagement letters with the applicable Debtors are included in the

Approved Budget, such amounts may be paid out of the collateral of the Prepetition Lenders and the DIP Lenders only to the extent such fees were (a) actually earned pursuant to the terms of the respective engagement letters with the Debtors in effect as of the date of the DIP Loan Documents (or as amended with the consent of the Required DIP Lenders), (b) approved by the Bankruptcy Court, and (c) earned in connection with transactions consented to by the Required DIP Lenders.

(b)    Professional Fee Escrow.

(i)    Prior to delivery of a Carve-Out Trigger Notice by the DIP Agent, the Debtors shall be authorized and directed to establish and maintain an escrow, to be held solely for the benefit of the Professional Persons, and, fund such escrow on a weekly basis in the amounts set forth in the Approved Budget for fees and expenses of the Professional Persons (the "Professional Fee Escrow").  If any excess amounts remain in the Professional Fee Escrow after payment of Allowed Professional Fees in accordance with the Carve-Out (but subject to the Approved Budget), such amounts shall be returned to the DIP Lender; *provided* that to the extent that the DIP Obligations have been indefeasibly paid in full at the time such amounts are to be returned, such amounts shall be paid to the Prepetition Agent in satisfaction of the Prepetition Obligations.

(ii)    Following the delivery of the Carve-Out Trigger Notice, the Debtors are hereby authorized to use Cash Collateral on hand as of such date in accordance with the Approved Budget, and any available Cash Collateral thereafter held by any Debtor, to fund the Carve-Out.

(iii)    Following delivery of a Carve-Out Trigger Notice, the DIP Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out has been fully funded.

(iv)    The Carve-Out shall be effective upon entry of this Interim Order and shall not be rendered ineffective as a result of the occurrence, or non-occurrence, of any event or circumstance thereafter.  In no event shall any Approved Budget or the Carve-Out be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(v)    Nothing herein, including the inclusion of line items in the Approved Budget, shall be construed as consent to the allowance of any particular professional fees or expense of the Debtors, of any Creditors' Committee, or of any other person or shall affect the right of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

18.    <u>Release</u>.  The stipulations set forth in Paragraph D of this Interim Order shall be deemed effective upon entry of the Interim Order, subject only to the rights expressly set forth in paragraph 19 below.

(a)    The Debtors forever and irrevocably release, discharge, and acquit each of the DIP Secured Parties, their affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members,

partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (in each case, solely in their capacities as such) (collectively, the "DIP Lender Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code, *provided* that nothing in this Interim Order shall constitute or permit a release of any claims or causes of action arising from an act or omission that is determine to have constituted willful misconduct, gross negligence, or actual fraud.

(b)     Subject to entry of the Final Order and the rights expressly set forth in paragraph 19 below, the Debtors forever and irrevocably release, discharge, and acquit each of the Prepetition Lenders and their respective affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (in each case, solely in their capacities as such) (collectively, the "Prepetition Lender Releasees" and collectively with the DIP Lender Releasees, the "Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code, *provided* that nothing in this Interim Order shall constitute or permit a release of any claims or causes of action arising from an act or omission that is determined to have constituted willful misconduct, gross negligence, or actual fraud.

19.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.  The stipulations in respect of the Prepetition Lenders set forth in Paragraph (D)(ii) of this Interim Order shall be binding upon the Debtors upon entry of this Interim Order and the releases

of the Prepetition Lenders and related parties set forth in Paragraph 18(b) shall be binding upon the Debtors upon entry of the Final Order.  In addition, such releases and stipulations shall be binding upon each other party in interest, including the Creditors' Committee, if any, unless a party in interest, including any Creditors' Committee, having standing, *first*, by the earlier of (i) seventy-five (75) calendar days following the date of entry of this Interim Order and (ii) subject to entry of the Final Order, the date of entry of the Sale Order (such time period shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly and timely file a Challenge and only for the matters specifically set forth in such Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) challenging or otherwise objecting to the releases of the Prepetition Lenders and related parties set forth in Paragraph 18(b) above and the stipulations in respect of the Prepetition Lenders set forth in Paragraph (D)(ii) of this Interim Order or (B) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Releasee and the Debtors ((A) and (B) being, collectively, the "Challenges" and, each individually, a "Challenge"), and, *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.  Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (ii) the releases of the Prepetition Lenders and related parties

set forth in Paragraph 18(b) above and the stipulations in respect of the Prepetition Lenders set forth in Paragraph (D)(ii) of this Interim Order shall be binding on all parties in interest (other than the Debtors, to which they are already binding), including any Creditors' Committee, (iii) the claims of the Prepetition Secured Parties shall constitute allowed claims for all purposes in the Chapter 11 Cases and any Successor Case(s), (iv) the Prepetition Liens shall be deemed legal, valid, binding, perfected and otherwise unavoidable, (v) the Prepetition Liens and Prepetition Obligations shall not be subject to subordination, counterclaims, set-off, defense, avoidance or any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (vi) as a result of the foregoing, the repayment of any Prepetition Obligations in accordance with the terms of this Interim Order and the Prepetition Loan Documents shall constitute an indefeasible payment and shall be final and binding for all purposes.  If any such Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in Paragraph (D)(ii) shall nonetheless remain binding and preclusive on the Debtors and their estates and respective creditors, the Creditors' Committee (if any) and all other parties in interest in these Chapter 11 Cases, except to the extent that such findings or admissions were expressly and successfully disputed in such Challenge. Nothing in this Interim Order confers on any Person, including, but not limited to any Creditors' Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, claims and defenses with respect to the Prepetition Obligations.  Notwithstanding the foregoing, the timely filing of a motion seeking standing to file a Challenge consistent with applicable law and rules of procedure before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual basis of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such

standing motion, and solely with respect to the Challenge(s) asserted in the draft complaint, until entry of an order granting the motion for standing to prosecute such claim described in the draft complaint and permitted by the Court; *provided that*, if standing is denied by the Court, the Challenge Period Termination Date shall be deemed to have occurred with respect to such Challenge(s).  Notwithstanding the foregoing, if a trustee is appointed or elected in these Chapter 11 Cases or any Successor Case(s) prior to the expiration of the Challenge Deadline, such trustee shall have the longer of the remaining <u>Challenge Period</u> or 10 days from the date of appointment to assert a Challenge.  The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies.  For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases or any Successor Case(s), until the expiration of the period provided herein for asserting a Challenge, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.  The Court may fashion an appropriate remedy in the event of a successful Challenge.

20.    <u>Restrictions on Use of Funds</u>. Notwithstanding anything in this Interim Order or the DIP Documents to the contrary, without the express written consent of the DIP Agent and the Prepetition Agent, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any

creditor or party in interest, any Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Case(s), or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code or otherwise, other than from the DIP Secured Parties, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations, or (b) investigate (except as set forth in this paragraph below), assert, join, commence, support or prosecute any Challenge or other action or claim, counter-claim, proceeding, application, motion, objection, defense, or other adversary proceeding or contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of the DIP Secured Parties or any other Releasee with respect to any transaction, occurrence, omission, or action including, without limitation, (i) any actions under chapter 5 of the Bankruptcy Code, (ii) any action relating to any act, omission or aspect of the relationship between or among any of the Releasees, on the one hand, and any of the Debtors, on the other, (iii) any action with respect to the validity and extent of the DIP Obligations, the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claim, or the Adequate Protection Liens, or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) any DIP Secured Party in respect of the enforcement of the DIP Liens, (c) subject to authority provided to the Debtors pursuant to the DIP Documents, pay any claim (as defined in the Bankruptcy Code) of a prepetition creditor (as defined in the Bankruptcy Code) if the Debtors have received a written objection to such payment from the DIP Agent, or (d) use or seek to use Cash Collateral or sell or

otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Documents, without the express written consent of the applicable DIP Secured Parties. Notwithstanding the foregoing, up to $25,000 in the aggregate of the DIP Facility, DIP Collateral, Cash Collateral and Carve-Out may be used by a Creditors' Committee during the Challenge Period to investigate, but not pursue, the validity and enforceability of Liens and obligations, under the Prepetition Loan Documents.

21.    <u>Remedies and Stay Modification.</u>  The provisions of this paragraph 21 are each subject to the Carve-Out.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable), whether or not an Event of Default (as defined in the DIP Agreement) under the DIP Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred: (i) the right to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Documents or written instructions of the DIP Agent, and to apply any amounts so deposited and other amounts paid to or received by the DIP Secured Parties under the DIP Documents in accordance with any requirements of the DIP Documents; (ii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral; (iii) the right to charge and collect any interest, fees, costs and other

expenses accruing at any time under the DIP Documents as provided therein; and (iv) the right to give the Debtors any notice provided for in any of the DIP Documents or this Interim Order.

(b)     Subject to Paragraph 21(d) below, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Secured Parties, upon the occurrence and during the continuance of an Event of Default under the DIP Agreement or the Debtors' violation of any provision of this Interim Order, and without any interference from the Debtors or any other party in interest, to (i) (A) cease making DIP Loans or suspend or terminate the commitments under the DIP Documents, and (B) declare all DIP Obligations immediately due and payable, and (ii) subject to five (5) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (C) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Secured Parties); or (D) exercise any other default-related rights and remedies under the DIP Documents or this Interim Order or applicable law. The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Documents.

(c)     Notwithstanding anything herein to the contrary, immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Lenders may charge interest at the default rate set forth in the

DIP Documents, regardless of any notice thereof and without being subject to the Remedies Notice Period.

(d)     The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, or the U.S. Trustee have not obtained an order from this Court prior to the expiration of the Remedies Notice Period preventing the DIP Secured Parties or the Prepetition Secured Parties, as applicable, from exercising remedies.

(e)     If the DIP Secured Parties are entitled, and have elected in accordance with the provisions hereof, to enforce their liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Secured Parties in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the DIP Collateral and the Debtors' premises to representatives or agents of the DIP Secured Parties (including any collateral liquidator or consultant), (B) providing the DIP Secured Parties and their representatives or agents, at all reasonable times, access to the Debtors' books and records and any information or documents requested by the DIP Secured Parties or their representatives or agents, (C) performing all other obligations set forth in the DIP Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Secured Parties' enforcement of rights.

(f)     Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of this Interim Order, or any other Termination Event, and including during the pendency of any applicable Remedies Notice Period, the DIP Secured Parties shall have no further obligation to provide financing under the DIP Documents.

Upon (i) initiation of a Remedies Notice Period or (ii) the occurrence of a Maturity Date, the DIP Secured Parties and the Prepetition Lenders shall have no further obligation to permit the continued use of Cash Collateral except (x) to the extent necessary to pay (1) any ordinary course payroll obligations scheduled to be paid in the five business days after the initiation of Remedies Notice Period, and (2) sales taxes and other trust fund taxes strictly in accordance with the Approved Budget without regard to Permitted Variances (the foregoing (x)(1) and (x)(2) being "Authorized Amounts"); and (y) to the extent provided in paragraph 17 of this Interim Order to fund the Carve-Out.  Once the Debtors' right to use Cash Collateral is no longer permitted by this Interim Order, the Debtors shall be prohibited from using any Cash Collateral under this Interim Order (except to the extent provided in paragraph 17 of this Interim Order to fund the Carve-Out and this paragraph 21(f) with respect to Authorized Amounts), until such time (if any) as the Prepetition Lenders and the DIP Secured Parties have consented to further use of Cash Collateral.

(g)    Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of this Interim Order, or any other Termination Event, the DIP Secured Parties may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Documents, provided that sufficient funds are (or have been) set aside to fund the Carve-Out and payment of all accrued but unpaid expenses set forth in the Approved Budget through the date of the commencement of the Remedies Notice Period.

(h)    This Court shall retain jurisdiction to hear and resolve any disputes and enter any orders pursuant to the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

22.    <u>Limitation on Surcharge</u>.  Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Secured Parties, the Prepetition Secured Parties, the DIP Collateral, or the Prepetition Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent and the Prepetition Agent.  No action, inaction or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Secured Parties, the DIP Collateral, the Prepetition Secured Parties or the Prepetition Collateral.

23.    <u>No Marshaling</u>.  Subject to entry of the Final Order, the DIP Secured Parties (and after payment in full of the DIP Obligations, the Prepetition Secured Parties) shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, from and after the entry of the Final Order, no party (other than the DIP Secured Parties and after payment in full of the DIP Obligations, the Prepetition Lenders) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or the Prepetition Collateral (as applicable) after an Event of Default under the DIP Documents.

24.    <u>Additional Perfection Measures</u>.

(a)    If the DIP Agent, in its sole discretion, requests that the Debtors execute additional DIP Loan documentation or chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien

or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP

Agent is hereby authorized, but not directed to, take such action or to request that Debtors take

such action on its behalf (and Debtors are hereby authorized to take such action) and:

> (i)     any such documents or instruments shall be deemed to have been
> recorded and filed as of the time and on the date of entry of this Interim Order; and

> (ii)    no defect in any such act shall affect or impair the validity,
> perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any mortgages, financing

statements, notices of lien or similar instruments, each of the DIP Agent and the Prepetition Agent

may, in its respective sole discretion, choose to file a true and complete copy of this Interim Order

in any place at which any such instruments would or could be filed, together with a description of

the DIP Collateral, and such filing by the DIP Agent or Prepetition Agent shall have the same

effect, unless prohibited by applicable non-bankruptcy law, as if such mortgages, deeds of trust,

financing statements, notices of lien or similar instruments had been filed or recorded at the time

and on the date of entry of this Interim Order.

25.     <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim

Order and the DIP Documents, unless otherwise ordered by the Court, after (a) an Event of Default

and (b) the receipt by the Debtors of written notice that the DIP Lenders will no longer fund the

Debtors through the proceeds of the DIP Loans or by consenting to the Debtors' use of Cash

Collateral, the Debtors are hereby authorized to remit to the DIP Agent, subject to the payment of

the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP

Collateral until the DIP Obligations are paid in full, and the automatic stay provisions of section

362 of the Bankruptcy Code are hereby modified to permit the DIP Lenders to retain and apply all

collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP
Documents.  In furtherance of the foregoing, (a) all cash, securities, investment property and other
items of any Debtor deposited with any bank or other financial institution shall be subject to a
perfected, first priority security interest in favor of the DIP Secured Parties, (b) upon the
occurrence and during the continuance of a Termination Event and the expiration of the Remedies
Notice Period, each bank or other financial institution with an account of any Debtor is hereby
authorized, but not directed, to (i) comply at all times with any instructions originated by the DIP
Agent (or its nominee) to such bank or financial institution directing the disposition of cash,
securities, investment property and other items from time to time credited to such account, without
further consent of any Debtor, including, without limitation, any instruction to send to the DIP
Agent (or its nominee) by wire transfer (to such account as the DIP Agent (or its nominee) shall
specify, or in such other manner as the DIP Agent (or its nominee) shall direct) all such cash,
securities, investment property and other items held by it, and (ii) waive any right of set off,
banker's lien or other similar lien, security interest or encumbrance that is or may be invoked
against the DIP Agent (or its nominee) and (c) any deposit account or securities account control
agreement executed and delivered by any bank or other financial institution or any Debtor and the
Prepetition Agent prior to the Petition Date in connection with the Prepetition Loan Documents
shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any
and all cash, securities, investment property and other items of any Debtor deposited therein to
secure the DIP Obligations (provided that primary control rights shall vest in the DIP Agent), and
all rights thereunder in favor of the Prepetition Agent shall inure also to the benefit of, and shall
be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been paid in

full in cash, at which time all rights shall automatically revert to the Prepetition Agent, solely to the extent such deposit account or securities account control agreement relates to Cash Collateral.

26. <u>Access to DIP Collateral</u>. Subject to entry of the Final Order, notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Secured Parties contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject the terms of the DIP Documents, upon reasonable advance written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property of any Debtor that an Event of Default under the DIP Documents, a violation by any of the Debtors of any provision of this Interim Order, or any other Termination Event has occurred and is continuing, the DIP Agent (or its nominee) (a) may, unless otherwise provided in any separate agreement by and between the applicable landlord, lienholder or licensor and the DIP Agent (or its nominee) (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (b) shall be entitled to exercise all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (a) or (b) of this paragraph, without interference from such lienholders, landlords, licensors or third parties thereunder, subject to such lienholders, landlords or licensors rights under applicable law; *provided, however*, that, with respect to any leased premises, the DIP Agent (or its nominee) shall pay only base rent payable during the period of such occupancy or use by the DIP Agent (or its nominee), as the case may be, calculated on *a per diem* basis, during the five (5) business day

period the applicable landlord, lienholder, licensor or other third party may seek expedited relief from the rights set forth in this paragraph and the burden is on such party to obtain relief within such period.  Nothing herein shall require the Debtors or the DIP Agent to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent in this paragraph.

27.    <u>Lenders Not Responsible Persons</u>.  Subject to paragraph 19 with respect to the Prepetition Secured Parties, in (a) making the decision to make the DIP Loans and consent to the use of Cash Collateral, (b) administering the DIP Facility and the DIP Loans in accordance with this Interim Order and the DIP Documents, (c) extending other financial accommodations to the Debtors in accordance with this Interim Order and the DIP Documents, and (d) making the decision to collect the indebtedness and obligations of the Debtors as and when permitted by this Interim Order and the DIP Documents, neither the DIP Agent, nor the DIP Secured Parties nor any Prepetition Secured Party shall, solely by reason thereof, be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the *United States Comprehensive Environmental Response, Compensation and Liability Act*, 42 U.S.C. 9601, *et seq.*, and the *Resource Conservation and Recovery Act*, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

28.    <u>Successors and Assigns</u>.  The DIP Documents and the provisions of this Interim Order shall be binding upon the Debtors and the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders and each of their respective successors and assigns, and

shall inure to the benefit of the Debtors, the DIP Agent, the DIP other Secured Parties, the

Prepetition Agent, and the Prepetition Lenders and each of their respective successors and assigns

including, without limitation, any trustee, examiner with expanded powers, responsible officer,

estate administrator or representative, or similar person appointed or elected in a case for any

Debtor under any chapter of the Bankruptcy Code, including any Successor Case.  The terms and

provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity

holders, and all other parties in interest, including, but not limited to a trustee appointed or elected

under chapter 7 or chapter 11 of the Bankruptcy Code.

   29. <u>Binding Nature of Agreement</u>.  Each of the DIP Documents to which any

of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of

the Debtors party thereto, enforceable in accordance with their terms.  Unless otherwise consented

to in writing by the Required DIP Lenders and the Required Prepetition Lenders (as applicable),

the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent, the other DIP

Secured Parties, the Prepetition Agent, and the Prepetition Lenders provided for in this Interim

Order, the DIP Documents, or otherwise, shall not be modified, altered or impaired in any manner

by the dismissal or conversion of these Chapter 11 Cases or any Successor Case.

   30. <u>Subsequent Reversal or Modification</u>.  If any or all of the provisions of this

Interim Order are hereafter reversed, modified, vacated or stayed, the DIP Secured Parties and the

Prepetition Secured Parties are entitled to all of the protections and benefits afforded by section

364(e) of the Bankruptcy Code.

   31. <u>Collateral Rights</u>.  Subject to any order of the Bankruptcy Court entered

without the objection of the DIP Agent authorizing the Debtors to make payments to prepetition

creditors, and subject to entry of the Final Order, if any party who holds a lien or security interest

in DIP Collateral or Prepetition Collateral that is junior or otherwise subordinate to the DIP Liens, the Adequate Protection Liens, or the Prepetition Liens in such DIP Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Obligations under the DIP Documents and termination of the commitments thereunder in accordance with the DIP Documents and, as applicable (b) the Prepetition Obligations under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral, as applicable, in trust for the DIP Secured Parties or Prepetition Lenders, as applicable, and shall immediately turn over such proceeds to the DIP Agent or Prepetition Agent, as applicable, for application to repay the DIP Obligations and, as applicable, the Prepetition Obligations, in accordance with the DIP Documents, the Prepetition Loan Documents and this Interim Order until the DIP Obligations and the Prepetition Obligations, as applicable, are indefeasibly paid in full in cash.

32.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Secured Parties may have to bring or be heard on any matter brought before this Court.

33.    Sales.  The Debtors agree not to seek or support entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to any party unless (a) the Required DIP Lenders and the Required Prepetition Lenders consent and (b) the order approving such sale provides that the sale proceeds shall be distributed in accordance with the DIP Documents, the Prepetition Loan Documents and this Interim Order at the closing of such sale.  The Debtors agree

to adhere to the following milestones with respect to the sale of all or substantially all of their

assets (collectively, the "Milestones"):

| Timeline | Action/Deadline |
|---|---|
| One (1) business day following Petition Date | File sale motion and bidding procedures for sale of all of the assets of the Debtors |
| Twenty-eight (28) days following Petition Date | Deadline to obtain entry of order approving bidding procedures. |
| Forty-two (42) days following Petition Date | Deadline for interested parties to submit qualified bids for purchase of assets of the Debtors. |
| Forty-three (43) following Petition Date | Deadline for holding auction for purchase of assets of the Debtors (if there is more than one qualified bid). |
| Forty-five (45) days following the Petition Date | Deadline for hearing to approve the sale. |
| Forty-six (46) days following Petition Date | Deadline for Court approval of the sale. |
| Fifty (50) following Petition Date | Deadline to consummate sale(s) of substantially all of the Debtors' assets |

For the avoidance of doubt, failure to comply with the Milestones or the other provisions of this

paragraph 34 shall be a Termination Event for purposes of this Interim Order.

34.    Dismissal and Conversion.  If an order dismissing or converting any of these

Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing

a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time

entered, (a) the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the

Adequate Protection Superpriority Claim granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents and (b) to the fullest extent permitted by law, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim.

35.    <u>Limits on Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

36.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, the Requested Relief, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

37.    <u>No Third-Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

38.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order

(i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases to a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall continue in these Chapter 11 Cases, any such Successor Case(s) or after any such dismissal. Except as otherwise provided herein, the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Documents, and not be modified, altered or impaired in any way by any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases.

39.     <u>Scheduling of Final Hearing</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 and the Local Rules of this Court.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to any known party affected by the terms of this Interim Order or Final Order and any other party requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served by _____ _.m. (Eastern) on the following parties:  (a) proposed co-counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Gregg M. Galardi and Lindsay C. Barca, email: gregg.galardi@ropesgray.com and lindsay.barca@ropesgray.com); and Chipman Brown Cicero & Cole LLP, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Robert A. Weber and Mark L. Desgrosseilliers; email: weber@chipmanbrown.com and desgross@chipmanbrown.com); (b) counsel to the DIP Agent, DIP Lenders and Prepetition Lenders, (i) Jones Day, 250 Vesey Street, New York, New York 10281 , Attn:  Thomas M.

Wearsch and Genna Ghaul or by email at twearsch@jonesday.com and gghaul@jonesday.com and (ii) Jones Day, 100 High Street, Boston, MA 02110, Attn: John D. Casais or by email at jcasais@jonesday.com; (c) Delaware counsel to the DIP Agent, DIP Lenders and Prepetition Lenders, Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: Mark D. Collins and Zachary I. Shapiro or by email at collins@rlf.com and shapiro@rlf.com; (d) counsel to the Prepetition Agent, Chapman and Cutler LLP, 320 S. Canal Street, Chicago, IL 60606 (Attn: David T. Audley, email: audley@chapman.com); and (e) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Linda J. Casey or by email at linda.casey@usdoj.gov. The Court shall conduct a Final Hearing on the Requested Relief commencing on [_____], 2024 at _____ (Eastern).

40. <u>Immediate Binding Effect; Entry of Interim Order</u>. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

41. <u>Proofs of Claim</u>. Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be required to file proofs of claim in any of these Chapter 11 Cases or Successor Cases on account of the DIP Obligations, the Prepetition Obligations or any other claim provided for in this Interim Order. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement as it sees fit) a proof of claim and/or aggregate proofs of claim

in each of these Chapter 11 Cases or Successor Cases on account of the DIP Obligations, the Prepetition Obligations or any other claim provided for in this Interim Order.

42.    <u>Headings</u>.  The headings of the various paragraphs in this Interim Order are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

43.    <u>Retention of Jurisdiction</u>.    This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit A**

**Approved Budget**