# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No.  24-11605 (JKS) |
| Debtors. | (Jointly Administered) |

**ORDER (I) APPROVING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,
AND ENCUMBRANCES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO
AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE
AGREEMENT AND RELATED DOCUMENTS, (III) APPROVING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Debtors' Motion Pursuant to Sections 105,
363 and 365 of the Bankruptcy Code For Entry of an Order (I) Approving the Bidding
Procedures, Including the Debtors' Entry Into the Stalking Horse APA, the Sale Timeline, and
the Form and Manner of Notice Thereof; (II) Approving the Debtors' (A) Sale of All or
Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed
Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired
Leases to the Successful Bidder; and (III) Granting Related Relief* [Docket No. 35] (the "Sale
Motion"),[2] filed by the debtors (collectively, the "Debtors") in the above-captioned chapter 11

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number are:  Hardinge Ventures LLC (0586); Ohio Tool Works, LLC (7569); Kellenberger Swiss Grinding
Machines, LLC (N/A); Hardinge Inc. (0200); Hardinge Technology Systems, Inc. (6427); Forkardt Inc. (4671);
and Hardinge Grinding Group Inc. (6173).  The Debtors' service address is One Hardinge Drive, Elmira, NY
14902-1507.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the
Sale Motion, the [Stalking Horse APA / Successful APA], the Bidding Procedures, and the Bidding Procedures
Order (each, as defined herein), as applicable.

cases (the "Chapter 11 Cases"); and the Court having previously entered the *Order (I) Approving the Bidding Procedures, Including the Debtors' Entry Into the Stalking Horse APA, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) Approving the Debtors' (A) Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed Liabilities and (B) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; and (III) Granting Related Relief* [Docket No. 194] (the "Bidding Procedures Order" and the bidding procedures attached as Exhibit 1 to the Bidding Procedures Order, the "Bidding Procedures"); and [Workholding US Holdings, LLC, KB Machines US Holdings, LLC, [OTW US Holdings, LLC,] and Super Precision US Holdings, LLC] (collectively, the "Purchaser") having submitted the highest or best bid for the Purchased Assets (as defined in the [Stalking Horse APA / Successful APA]), as reflected in that certain *Asset Purchase Agreement*, dated as of [August 23, 2024], by and among the Purchaser and the Debtors (as amended, supplemented, or otherwise modified from time to time, the [including as modified pursuant to the terms of the Committee Resolution Term Sheet (as defined below), the "Stalking Horse APA" / "Successful APA"]),[2] a copy of which is attached hereto as **Exhibit 1**; and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on [September 13, 2024] (the "Sale Hearing"), at which time all objecting and interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered: (i) the Sale Motion; (ii) the Stalking Horse APA; (iii) the Bidding

---

[2] [Note: For simplicity, subsequent references in this draft order to the asset purchase agreement reflecting the Successful Bid are styled only as "Stalking Horse APA." For the avoidance of doubt, the Stalking Horse APA remains subject to higher or better bids, in accordance with the Bidding Procedures Order. To the extent a Qualified Bid is received prior to the Bid Deadline and a Qualified Bidder other than the Stalking Horse Bidder is the Successful Bidder at the Auction, a revised proposed form of this Order, updated to reflect the asset purchase agreement among the Debtors and the Successful Bidder will be filed as soon as practicable after the Auction.]

Procedures; (iv) the Bidding Procedures Order; (v) the *Declaration of Adam Dunayer in Support of Debtors' Motion to Obtain Postpetition Debtor in Possession Financing and the Debtors' Bidding Procedures Motion* [Docket No. 17] and the *Declaration of Adrian Frankum, Chief Restructuring Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18]; [(vi) all objections filed with the Court, including those at Docket Nos. 153, 238, 239, 274 and [•]282 (each, an "Objection" and, collectively with any informal objections received by the Debtors, including that received fromthose raised by the Committee, and which are resolved pursuant to the terms of the Committee Resolution Term Sheet (as defined below), collectively the "Objections")]; and (vii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion and approval of the Stalking Horse APA are in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[33]

A.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.  The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363, and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007, and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.  As evidenced with the certificates of service filed with the Court [Docket Nos. [•]298, 299 and 300], the Debtors have provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Bidding Procedures Order, the Auction, the Sale Hearing, the sale of the Purchased Assets pursuant to the Stalking Horse APA (the "<u>Transaction</u>") free and clear of any Interests (as defined below)

---

[33]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

(other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the [Stalking Horse APA / Successful APA] or this Order) within the meaning of section 363(f) of the Bankruptcy Code, the [*Notice of Winning Bid*]*Cancellation of Auction* [Docket No. [•]275], [the *Notice of Possible Assumption and Assignment with Respect to Executory Contracts and Unexpired Leases of the Debtors Assumption Notice* [Docket No. [•]233, Ex. B] (the "First Assumption Notice") and [any updated assumption notice] (together with the First the *Notice of Proposed Cure Amounts for Executory Contracts and Unexpired Leases* [Docket No. 279, Ex. B] (the "Supplemental Assumption Notice, the "Assumption Notice")],[4] and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to the Purchaser at Closing pursuant to this Order and the terms of the Stalking Horse APA (collectively, with the Seller Plans, the "Contracts"), in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007, and 9014, Local Rules 2002-1, 6004-1, and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Notice Parties and all other persons and entities as directed by the Court.  Such notice was good, sufficient, and appropriate under the circumstances including, but not limited to, providing each counterparty a full and fair opportunity to object to the assumption and assignment of its Contract and its proposed Cure Costs; and no other or further notice of any of the foregoing is required.  With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Sale Notice published in the national edition of USA Today on September 6, 2024 [Docket No. [•]298], was sufficient and reasonably calculated to provide

---

[4]    Pursuant to the Supplemental Assumption Notice, Counterparties to the Contracts listed on Schedule 1 thereto shall have until September 23, 2024 to file an Objection (as defined in the Supplemental Assumption Notice).

notice to such parties under the circumstances.  The Debtors published the Sale Motion, Bidding Procedures Order, the Bidding Procedures, the Stalking Horse APA (and all exhibits and schedules thereto), the Sale Notice, and certain other documents relevant to the Sale on the Case Website.

      E.    <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion.  The approval of and entry into the Transaction, the Stalking Horse APA, and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Transaction and the Stalking Horse APA include, without limitation, the following: (i) the Stalking Horse APA constitutes the highest or best offer received for the Purchased Assets; (ii) the Stalking Horse APA presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (iii) failure to consummate the Transaction expeditiously, as provided under the Stalking Horse APA, could materially diminish creditor recoveries; and (iv) the immediate consummation of the Transaction is necessary to maximize the value of the Debtors' estates.

      F.    <u>Marketing Process</u>.  As demonstrated by the testimony submitted at the Sale Hearing, the Debtors and their advisors thoroughly marketed the Debtors' assets (including the Purchased Assets) and conducted the marketing and sale process as set forth in and in accordance with the Sale Motion and Bidding Procedures Order.  Based upon the record of

these proceedings all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Debtors' assets (including the Purchased Assets).

G.    <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair sale process.  The sale process was non-collusive in all respects, and the Debtors (ia) afforded all interested parties a full, fair, and reasonable opportunity to qualify as a Qualified Bidder and make an offer to purchase the Purchased Assets, (b) provided Acceptable Bidders, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) appropriately considered all bids that were duly submitted in accordance with the Bidding Procedures.  The Debtors, the Purchaser, and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order.

H.    <u>Highest or Best Value</u>.  The Purchaser's Bid constitutes a "Qualified Bid" as defined in the Bidding Procedures.  The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties, that the Purchaser's Qualified Bid, as documented in the Stalking Horse APA, was the highest or otherwise best Qualified Bid for the Purchased Assets.  Consummating the Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

I.    <u>Fair Consideration</u>.    The consideration the Purchaser will pay under the Stalking Horse APA constitutes (i) fair and reasonable consideration for the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession

thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

J.    <u>Free and Clear Sale</u>.  The Debtors may sell the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Interests that objected to the Transaction or the Sale Motion and that have an Interest in the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Interest pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Interests on the Purchased Assets attach solely to the proceeds of the Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force, and effect that such Interests had prior to the consummation of the Transaction, subject to any rights, claims, or defenses of the Debtors and their estates.  Any Interest holders that did not object, or that withdrew their objections, to the Sale Motion or the Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Interests on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K.    <u>Purchaser's Reliance on Free and Clear Sale</u>.  The Purchaser would not have entered into the Stalking Horse APA and would not consummate the Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), or if the Purchaser would, or

in the future could, be liable for any such Interests. A sale of the Purchased Assets other than one free and clear of all Interests would adversely impact the Debtors, their estates, and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the Transaction. The total consideration to be provided under the Stalking Horse APA reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to, and possession of, the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) including, without limitation, any potential derivative, vicarious, transferee, or successor liability Interests.

L.      "Interests". As used in this Order, the term "Interest" includes, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any of the Purchased Assets: Liens, claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), Encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever, whether known or unknown, inchoate or not, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (i) mortgages, deeds of trust, pledges, charges, security interests, hypothecations,

Encumbrances, easements, servitudes, leases, subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, rights of use or possession, subleases, leases, conditional sale arrangements, or any similar rights, (ii) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise; (iii) all debts, liabilities, obligations, contractual or tort rights and claims, and labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA"), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupation disease, or unemployment or temporary disability claims including, without limitation, claims that might otherwise arise

under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the Worker Adjustment and Retraining Notification Act, as amended, together with any state or local "mass layoff" or "plant closing" Laws or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the assets or businesses of the Debtors prior to the Closing; (x) any unexpired and executory or non-executory contract or unexpired lease to which a Debtor is a party that is not an Assumed Contract; (xi) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. § 9601 et seq.) and any regulations promulgated

thereunder , and analogous state Laws ("CERCLA"), or any other environmental, health, and safety laws (xii) any other Retained Liabilities under the Stalking Horse APA; and (xiii) Interests arising under or in connection with any acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, including, but not limited to, Interests arising under any theory, law, or doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

  M. <u>No Successor or Other Derivative Liability</u>.  By consummating the Transaction pursuant to the Stalking Horse APA, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors or any of the Debtors' estates.  Neither the Purchaser nor any of its affiliates or their respective predecessors, successors, assigns, members, partners, principals, officers, directors, or direct or indirect shareholders (or the equivalent thereof) (collectively, the "<u>Purchaser Related Persons</u>") shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Stalking Horse APA .  The sale and transfer of the Purchased Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer, or sale to the Purchaser of any of the Contracts, shall not subject the Purchaser and the Purchaser Related Persons to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by

reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities.

N.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the Stalking Horse APA and each of the transactions contemplated thereby in good faith, without collusion, from arm's-length bargaining position, and substantively and procedurally fair to all entities.  The Purchaser is a good faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all of the protections afforded thereby.  The Debtors were free to deal with any other party interested in acquiring all or some of the Purchased Assets.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Transaction, the Stalking Horse APA, or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) of the Bankruptcy Code.  The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.  The Purchaser has not acted in a collusive manner with any person or entity.  All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the Stalking Horse APA in connection with the Transaction have been disclosed and are appropriate.  The Stalking Horse APA was not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors under laws of the United States, any state, territory, possession thereof or the District of Columbia, or any other applicable law.  Neither the Debtors nor the Purchaser have entered into the Stalking Horse APA or are consummating the Transaction with any fraudulent or otherwise improper purpose.

O.      No Collusion.  The Stalking Horse APA was not controlled by an agreement between potential bidders within the meaning of section 363(n) of the Bankruptcy Code.  The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the Stalking Horse APA or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.  Neither the Debtors nor the Purchaser has entered into the Stalking Horse APA or is consummating the Sale with any fraudulent or otherwise improper purpose.

P.      Insider Status.  Neither the Purchaser nor any of the Purchaser Related Persons (as defined below) is an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

Q.      Assumption and Assignment of Contracts.  The assumption and assignment of the Contracts are an integral part of the Transaction, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.  Specifically, the assumption and assignment of the Contracts (i) are necessary to sell the Purchased Assets to the Purchaser as contemplated by the Stalking Horse APA, (ii) allow the Debtors to sell the Purchased Assets to the Purchaser as a going concern, (iii) limit the losses suffered by counterparties to the Contracts, and (iv) maximize the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Contracts.  Any counterparty to any Contract that has not actually filed with the Court and served on the Notice Parties (as defined in the Bidding Procedures) an objection to the Debtors' assumption and assignment of such Contract, or to the applicable Cure Costs, as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the

Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Contract, and to the applicable Cure Costs. Such counterparty shall forever be barred and estopped from objecting to the Cure Cost as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist.[5]

R.     <u>Compliance with Section 365 of the Bankruptcy Code</u>. The Debtors have met all requirements of section 365(b) <u>and 365(f)</u> of the Bankruptcy Code with respect to the assumption and assignment of each of the Contracts. The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Contracts on or before the Closing Date. The Purchaser has demonstrated adequate assurance of future performance of and under the Contracts within the meaning of sections 365(b) and 365(f)(2) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Contracts or other restrictions prohibiting their assignment or transfer.

S.     <u>Modifications to Contracts</u>. Pursuant to section 2.1(b) of the Stalking Horse APA, the Purchaser may amend or revise the list of the Contracts after the date of this Order. Such modification rights include, but are not limited to, the right of the Purchaser to designate a Contract for assumption by the Debtors and assignment to the Purchaser, as well as for exclusion from the sale of the Purchased Assets as a Retained Contract. The Purchaser would

---

[5]   Pursuant to the Supplemental Assumption Notice, Counterparties to the Contracts listed on Schedule 1 thereto shall have until September 23, 2024 to file an Objection (as defined in the Supplemental Assumption Notice). In the absence of such an objection, this Order shall be binding on the Counterparties to the Contracts listed on Schedule 1 to the Supplemental Assumption Notice.

not have agreed to the Transaction without such modification rights. The notice and opportunity to object provided to counterparties to such Contracts and to other parties in interest, as set forth in the Bidding Procedures Order and in this Order, fairly and reasonably protect any rights that such counterparties and other parties in interest may have with respect to such Contracts.

T.    _Property of the Estates_.  The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

U.    _Validity of the Transaction_.  The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(k), 363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the Transaction.  As of the Closing, the sale and assignment of the Purchased Assets and the Contracts to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets and the Contracts, and will vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets and the Contracts free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order).  The Debtors have full corporate or other applicable authority to execute the Stalking Horse APA and all other documents contemplated thereby, and the Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other than any consents identified in the Stalking Horse APA, no consent or approval from any other person, entity, or legal authority is required to consummate the Transaction.

V.       As set forth in paragraph [——]D of the DIP Order and subject to the terms

therein, the Debtors have stipulated, among other things, to the DIP Secured Parties (as

defined in the DIP Order) valid, enforceable, and fully perfected first priority senior priming

liens over the DIP Collateral (as defined in the DIP Order) that secure the DIP Obligation.

W.       <u>No Sub Rosa Plan</u>.  Neither the Transaction nor the Stalking Horse APA

impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates

the terms of a liquidating plan of reorganization of the Debtors.  Neither the Transaction nor

the Stalking Horse APA constitutes a *sub rosa* or *de facto* plan of reorganization or

liquidation.

X.       <u>No Stay of Order</u>.  Time is of the essence to implement the Stalking Horse APA

and consummate the Transaction.  The Transaction must be approved and consummated

promptly in order to preserve the value of the Purchased Assets and to maximize the value to

the Debtors, their estates, their creditors, and all other parties in interest and to ensure the

Debtors' compliance with their obligations under their post-petition financing agreements.

The Debtors have demonstrated compelling circumstances and sound business justifications

for the immediate approval and consummation of the Transaction as contemplated by the

Stalking Horse APA.  Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d),

7062, or any applicable provisions of the Local Rules, this Order shall not be stayed and shall

be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

1.       <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the

extent not previously granted by the Court pursuant to the Bidding Procedures Order or

otherwise) are GRANTED and approved as set forth herein.

2.     <u>Objections Overruled</u>.  Unless otherwise provided for herein or in the Bidding Procedures Order, any Objections to or reservation of rights against the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled are hereby OVERRULED on the merits with prejudice [or resolved as set forth herein].  All persons and entities that failed to timely object thereto are deemed to consent to the relief sought therein. All objections to the entry of this Sale Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.     <u>Transaction Approved</u>.   The Stalking Horse APA and all transactions contemplated thereby, including the Transaction, are hereby APPROVED.  The Debtors are authorized to enter into the Stalking Horse APA (and all ancillary documents), all of the terms and conditions thereof, and all of the Transactions contemplated therein are approved in all respects including, without limitation, any amendment to Stalking Horse APA that the Debtors and the Purchaser determines is necessary or desirable in connection with the Transactions; *provided, however*, in no event shall the Purchaser amend or modify the Stalking Horse APA in a manner that is inconsistent with the terms of the Committee Resolution; *provided, further, however*, that any other amendment or modification to the Stalking Horse APA shall, to the extent reasonably practicable, be provided to the Committee at least one (1) business day prior the Debtors' and Purchaser's execution of the same, which notice period may be waived with the Committee's consent, not to be unreasonably withheld.   The consummation of the Transactions is hereby approved and authorized under sections 363(b) and 365 of the Bankruptcy Code.

4.      <u>Prior Findings of Fact and Conclusions of Law</u>.  The Court's findings of fact and conclusions of law in the Bidding Procedures Order and the findings of fact recited above are incorporated herein by reference.  In the event that the terms of this Order and the Bidding Procedures Order are in conflict, this Order will control.

5.      <u>Adequate and Reasonable Notice.</u>  Notice of the Bidding Procedures, the Auction, the Transaction, the assumption and assignment of the Contracts pursuant to the Stalking Horse APA, the Cure Costs, the Sale Hearing, and all deadlines related thereto was good, sufficient, and appropriate under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

6.      <u>Entitled to Credit Bid</u>.  Each of the Prepetition Lenders (or the Prepetition Agent on their behalf) and Centre Lane Solutions Partners, LP (in its capacity as DIP Agent on behalf of the DIP Lenders), or its assignee or designee, including Workholding US Holdings, LLC, KB Machines US Holdings, LLC, [OTW US Holdings, LLC,] and Super Precision US Holdings, LLC, shall be entitled to credit bid all or any portion of each of the Prepetition Obligations and DIP Obligations, respectively, without further challenge from any other party in interest, it being found that (i) all of the Prepetition Obligations and DIP Obligations that constitute the Credit Bid Amount are legal, valid, and binding obligations of the Debtors, [(ii) the liens securing the Prepetition Obligations are not subject to any Challenges (as defined in the DIP Order) and any such Challenges by any party in interest shall be deemed forever waived, barred, and released, and (iii) the Challenge Period (as defined in the DIP Order) terminated as of the entry of this Order, and no party shall be permitted to assert any Challenge and all such Challenges shall be deemed forever waived, barred, and released].  Notwithstanding anything to the contrary herein: (i) other than the Credit Bid Amount, nothing in this Order shall impair,

-19-

release, modify, discharge, or otherwise affect any of the outstanding Prepetition Obligations, the DIP Obligations, or the adequate protections obligations set forth in the DIP Order; and (ii) the occurrence of the Closing Date will constitute the consummation of a sale of all or substantially all of the assets of the Debtors pursuant to Section 363(b) of the Bankruptcy Code. For the avoidance of doubt, the Purchaser will not consent to any transaction with Ohio Tool Work, LLC or another third-party with respect to the purchase of some portion of the Debtors' assets that impacts the economic or other terms of the Committee Resolution Term Sheet.

7.      Debtors' Performance Authorized.  The Debtors are hereby authorized to enter into and perform their obligations under the Stalking Horse APA , and to take such other actions as may be necessary or desirable to effectuate the terms of the Stalking Horse APA, including providing transition services, if needed, and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse APA, the Transaction, or this Order including, without limitation, deeds, assignments, stock powers, transfers of membership interests, and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Purchased Assets and the Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Stalking Horse APA and consummate the Transaction including, without limitation, providing transition services, without further order of the Court.

8.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases, and other documents with respect to the Purchased

Assets that are necessary or appropriate to effectuate the Stalking Horse APA , the Transaction, or this Order including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

9.      Valid Transfer and Assignment.  Effective as of the Closing Date, the sale and assignment of the Contracts and the Purchased Assets, including all rights, title, and interest of the Debtors and the Debtors' estates in and to the Avoidance Actions (as defined in the APA) other than the Excluded Causes of Action (as defined in the Committee Resolution Term Sheet (the "Purchased Avoidance Actions") and any and all rights to commence and prosecute such actions (collectively with the Purchased Avoidance Actions, the "Avoidance Action Assets"), by the Debtors to the Purchaser shall constitute a legal, valid, and effective transfer and assignment of the Contracts and the Purchased Assets, including the Avoidance Action Assets, notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title, and interest of the Debtors and their respective estates in and to the Contracts and the Purchased Assets, including the Avoidance Action Assets, free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), pursuant to section 363(f) of the Bankruptcy Code.

10.     Avoidance Actions.  Pursuant to this Order and the Stalking Horse APA, (a) the Purchaser is authorized to and shall purchase and acquire all of the Avoidance Action Assets, and (b) Purchaser, or any other person claiming by, through or on behalf of the Purchaser

(including by operation of law, sale, assignment, conveyance or otherwise) shall not pursue, prosecute, litigate, institute or commence an action based on, assert, sell, convey, assign or file any claim that relates to the Avoidance Action Assets.

11. ~~10.~~ Free and Clear Sale. Except to the extent specifically provided in the Stalking Horse APA, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b), 363(f), and 363(k) of the Bankruptcy Code, to sell and transfer to the Purchaser the Purchased Assets. The sale and transfer of the Purchased Assets to the Purchaser shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Purchased Assets free and clear of any and all Interests of any person or entity (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order), with all such Interests to attach to the net proceeds of the Transaction ultimately attributable to the sale of the property on which such holders have an Interest, in the same order of priority, and with the same validity, force and effect that such Interests had prior to the consummation of the Transaction, subject to any rights, claims or defenses of the Debtors or their estates. Following the Closing, no holder of any Interest on any of the Purchased Assets shall interfere with the Purchaser's use or enjoyment of any of the Purchased Assets based on or related to such Interest or any actions that the Debtors have taken or may take in their Chapter 11 Cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Transaction.

12. ~~11.~~ The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) shall be self-executing, and neither the Debtors nor the Purchaser shall be required to

execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate, or implement the provisions of this Order. For the avoidance of doubt, on or after the Closing Date, the Debtors and the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents, or other instruments in any jurisdiction to record the release, discharge, and termination of Interests on the Purchased Assets pursuant to the terms of this Order.

13. Nothing in this Order or the Stalking Horse APA releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner, lessee, or operator of real property after the date of entry of this Order. Nothing in this Order or the Stalking Horse APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, (e) certification, or (f) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order against a governmental unit. *Provided, however*, that the foregoing shall not limit, diminish or otherwise alter the Debtors' or the Purchaser's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.

14. ~~12.~~ Direction to Creditors. This Order shall be (a) effective as a determination that, as of the Closing Date, all Interests on the Purchased Assets (except as otherwise expressly assumed under, or expressly permitted by, the Stalking Horse APA ) shall be unconditionally released, discharged, and terminated as to the Purchaser and the Purchased Assets; and

(b) binding upon all persons and entities, including all the Debtors' creditors and any holder of an Interest on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Interests on the Purchased Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, *lis pendens* or other document, instrument, notice or agreement evidencing any Interest on the Purchased Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtors and the Purchaser are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity, and (y) file, register, or otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests on the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal, or foreign government agency, department, or office.

15.     ~~13.~~ Authorization of Recording Officers.  This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials, and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register, or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets, (collectively,

the "Recording Officers"). All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the Transaction or to record and reflect that the Purchaser is the owner of the Purchased Assets free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) and (b) strike all recorded Interests on the Purchased Assets from their records.

16. ~~14.~~ Direction to Surrender the Purchased Assets. All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Purchaser on the Closing Date.

17. ~~15.~~ No Successor Liability. The Purchaser and the Purchaser Related Persons are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, health, products liability, safety laws, or other law, doctrine rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation including, without limitation, under COBRA,

CERCLA, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, each as amended, the Americans with Disabilities Act of 1990 (as amended), the Federal Rehabilitation Act of 1973 (as amended), and the National Labor Relations Act, 29 U.S.C. § 151, et seq.; or (f) other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order, be liable for (i) any environmental liabilities, debts, claims, fines, penalties, or obligations arising from conditions, facts, or circumstances first existing or occurring prior to Closing (including, without limitation, the presence of or exposure to chemical, hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis and at any time, including, without limitation, any liabilities, debts, claims, fines, penalties, or obligations arising under CERCLA, or any other environmental, health, and safety laws, or (ii) any liabilities, debts, claims, fines, penalties, or obligations of or required to be paid by the Debtors (A) for any taxes of any kind for any period, (B) under any labor, employment, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or (C) under any products liability or intellectual property law or doctrine, or any other law or doctrine, with respect to the Debtors' liability under any law, rule, regulation, or doctrine.

18.    ~~16.~~ Except as expressly provided in the Stalking Horse APA or this Order with respect to the Assumed Liabilities, the Purchaser and the Purchaser Related Persons shall not (a) assume, nor be deemed to have assumed or in any way be responsible for (i) any liability or obligation (of any kind, character, or description, whether known or unknown, asserted or unasserted, matured or unmatured, liquidated or unliquidated, disputed or undisputed, accrued

or unaccrued, due or to become due, fixed, absolute, contingent or otherwise) of any of the Debtors or any of their estates or related to the Purchased Assets including, but not limited to, any Retained Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any related person of the Debtors, or any similar liability or obligation, (ii) any remaining claims (as defined in section 101(5) of the Bankruptcy Code) or Liens against the Debtors or any of their predecessors or affiliates, (iii) liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to Closing, or (b) have any liability whatsoever  with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or product lines or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, *de facto* merger or substantial continuity, labor and employment, infringement or products liability, whether known or unknown as of such Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities or obligations under the CERCLA or any other environmental, health, and safety laws, (ii) liabilities or obligations under ERISA, COBRA, or other similar state or local laws with respect to any pension plan, welfare plan, or other employee benefit plan, (iii) liabilities or obligations under any collective bargaining agreement or employment agreement, or (iv) any liabilities or obligations or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of such Purchaser's purchase of any Purchased Assets or assumption of the Assumed Liabilities or Permitted Liens.  The Sale Motion and

notices provided in accordance with the Bidding Procedures contain sufficient notice of such limitation in accordance with applicable law.  Except for the Purchaser's assumption of the Assumed Liabilities pursuant to the Stalking Horse APA and this Order and claims brought by the Debtors to enforce the express terms of the Stalking Horse APA and this Order, the transfer of the Purchased Assets and the Contracts to the Purchaser under the Stalking Horse APA will not result in (a) any Purchaser Related Person having any liability or obligation for any claim made against any of the Debtors (or their respective affiliates, together with their respective predecessors, successors, assigns, members, partners, officers, directors, principals or direct or indirect equityholders), including without limitation in respect of the Retained Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; (b) any Purchaser Related Person having any liability or obligation with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or otherwise, directly or indirectly, any Interests or Retained Liabilities, nor in any such liability or obligation attaching to the Purchased Assets; or (c) any Purchaser Related Person having any liability or obligation to any of the Debtors.

19.     17. For the avoidance of doubt, except as expressly provided in the Stalking Horse APA or this Order with respect to the Assumed Liabilities, nothing shall require the Purchaser or any Purchaser Related Person to (i) continue or maintain in effect, or assume any liability in respect of, any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor, including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment, (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the

funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including, but not limited to, pension plans), or the termination of any such plan, arrangement, or agreement, or (iii) hire any employees, or assume or maintain in effect, or assume any liability in respect of, any collective bargaining agreement, employment agreement, wage rate, compensation plan, or arrangement or any other terms and conditions of employment for any employees of the Debtors.

20.    ~~18.~~ Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the any Purchaser Related Person or their assets (including the Purchased Assets) with respect to any (a) Interest in the Purchased Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Interest; (iv) asserting any setoff, right of subrogation or recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets.

21.    ~~19.~~ Sale Proceeds; Payment of Certain Indebtedness.  On the Closing Date, the Debtors shall pay all of the accrued but unpaid reasonable and documented fees and expenses incurred by the DIP Secured Parties or the Prepetition Secured Parties as provided in the DIP

Order.  Nothing in this Order shall limit the rights of the Prepetition Secured Parties or the DIP Secured Parties under the DIP Order or the Committee's rights to enforce the terms of the Committee Resolution Term Sheet.

22.    [OTW Sale Proceeds.  The proposed sale of the of the Ohio Tool Works business and related assets and liabilities pursuant to the *Asset Purchase Agreement* dated as of [   ] between Ohio Tool Works, LLC and Ohio Tool Work, LLC, as set forth in [*Notice of OTW Sale*] [Docket No. [   ]] (the "OTW Sale") is expected to result in $[2,800,000] in net proceeds (the "OTW Sale Proceeds").  The OTW Sale Proceeds (i) to the extent received by the Debtors prior to Closing, shall be segregated by the Debtors in the account designated to hold the Wind-Down Amount or the Cash Shortfall, as applicable, and the Purchaser shall not be required to provide cash funding for the Wind-Down Amount or the Cash Shortfall, as applicable, up to the amount of the OTW Sale Proceeds; (ii) to the extent received at Closing, shall be utilized to fund the Wind-Down Amount or the Cash Shortfall; and (iii) to the extent received after Closing, shall be immediately turned over to, or paid directly to, Purchaser or to the entity designated by Purchaser. For the avoidance of doubt, the Purchaser will not consent to any transaction with Ohio Tool Work, LLC or another third-party with respect to the purchase of some portion of the Debtors' assets that impacts the economic or other terms of the Committee Resolution Term Sheet.

23.    20. Assumption and Assignment of Contracts.  Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transaction, the Debtors' assumption and assignment of the Contracts to the Purchaser free and clear of all Interests (other than any Permitted Liens and Assumed Liabilities expressly assumed under, or expressly permitted by, the Stalking Horse APA or this Order) pursuant to the terms

of the Stalking Horse APA , as modified by the terms of any amendments reached by the Purchaser and the respective counterparty, is hereby approved, and the Debtors are hereby authorized and directed to assume and assign the Contracts to the Purchaser in accordance with the Stalking Horse APA and this Order, and the requirements of sections 365(b) and 365(f)(2) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Any counterparty to a Contract that has not filed with the Court an objection to the assumption or assignment such Contract as of the date specified in the Bidding Procedures Order is deemed to have consented to such assumption and assignment.[6]

24.    ~~21.~~ Upon the Debtors' assumption and assignment of the Contracts to the Purchaser, and the Purchaser's payment of the Cure Costs, each applicable counterparty shall be forever barred, estopped, and permanently enjoined from (i) raising or asserting against the Debtors, the Purchaser, or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Contracts existing prior to or as of the Closing Date or arising by reason of the Closing, or (ii) taking any other action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the Contracts based on acts or occurrences existing prior to or as of the Closing Date or arising by reason of the Closing.  Each Counterparty hereby is also forever

---

[6]    Pursuant to the Supplemental Assumption Notice, Counterparties to the Contracts listed on Schedule 1 thereto shall have until September 23, 2024 to file an Objection (as defined in the Supplemental Assumption Notice). In the absence of such an objection, this Order shall be binding on the Counterparties to the Contracts listed on Schedule 1 to the Supplemental Assumption Notice.

barred, estopped, and permanently enjoined from (A) asserting against the Debtors or the Purchaser, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (B) imposing or charging against the Purchaser or the Purchaser Related Persons any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Contracts.

25.    22.  Upon the Debtors' assumption and assignment of the Contracts to the Purchaser, and the Purchaser's payment of the Cure Costs, the Purchaser shall be fully and irrevocably vested with all right, tile and interest of the Debtors in and to the Contracts and the Contracts shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms for the benefit of the Purchaser, notwithstanding any provision in any of the Contracts that prohibits, restricts, or conditions such assignment or transfer.  The Debtors' assumption and assignment of the Contracts to the Purchaser shall not constitute a default under or a termination of any Contract.

26.    23.  Cure Obligations.  Any defaults or other obligations under the Contracts shall be deemed cured by the Purchaser's payment or other satisfaction of the Cure Costs, if any, associated with the Contracts.

27.    24.  Cure Objections.  Except as provided herein, all objections to the Debtors' calculation of Cure Costs with respect to any of the Contracts (each such objection, a "Cure Objection") have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Cure Objections as to applicable Cure Costs that have not been resolved by the parties may be heard at a later date as set by the Court.  The pendency of a dispute relating to a particular Contract shall not prevent or delay the assumption or assignment of any other Contract or the closing of

the Transaction.  To the extent a counterparty to any of the Contracts fails to timely object to the Cure Costs for any Contract in accordance with the applicable motion to set cure amounts, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time.

28.    25. Adequate Assurance.  The Purchaser has provided adequate assurance of future performance under the Contracts within the meaning of sections 365(b) and 365(f)(2)(B) of the Bankruptcy Code.  Any objections related to the adequate assurance of future performance by the Purchaser that have not been withdrawn, waived or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the Contracts to the Purchaser have been satisfied.

29.    26. Anti-Assignment Provisions Unenforceable.  No section or provision of any Contract that purports to (a) prohibit, restrict or condition the assignment of a Contract, including, but not limited to, the conditioning of such assignment on the consent of any counterparty to such Contract; (b) authorize the termination, cancellation or modification of a Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the counterparty to a Contract, or modification of any term or condition upon the assignment of a contract or the occurrence of the conditions set forth in subsection (b) above, shall have any

force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) or 365(l), as applicable, of the Bankruptcy Code or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

30.    27. No Fees for Assumption and Assignment.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Contracts.

31.    28. Direction to Contract Counterparties.    All counterparties to Contracts assigned to the Purchaser in accordance with the terms of this Order and the Stalking Horse APA shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser, and shall not charge the Purchaser for any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Contracts to the Purchaser.

32.    29. Modification of Contracts List.  The rights of the Purchaser to modify the list of Contracts after the date of this Order as set forth in the Stalking Horse APA or herein is approved.   By written notice to the Debtors, the Purchaser may, in its sole and absolute discretion, amend or revise Schedule 2.1(a)(v) or Schedule 2.1(a)(xx) of the Stalking Horse APA ("Schedule 2.1(a)(v)" or "Schedule 2.1(a)(xx)): (i) no later than one (1) Business Day prior to the Closing Date, in order to add any Contract to such Schedule 2.1(a)(v) or Schedule 2.1(a)(xx) and it shall be automatically included as an Assumed Contract or Assumed Seller Plan, as applicable, for purposes of the Stalking Horse APA; (ii) no later than one (1) Business Day prior to the Closing Date, in order to remove any Contract from such Schedule 2.1(a)(v) or

Schedule 2.1(a)(xxx), and it shall be automatically deemed a Retained Contract or Retained Seller Plan, as applicable, for purposes of the Stalking Horse APA; or (iii) at any time prior to 60 days following the Closing Date to remove any Contract from such Schedule 2.1(a)(v) or Schedule 2.1(a)(xx) in the event that after the Closing Date, (A) the Court determines (or the parties otherwise agree) that the actual Cure Costs exceed the estimated Cure Costs listed on Schedule 2.1(a)(v), or (B) a timely filed objection to a Cure Cost or to Purchaser's assumption and assignment of a Contract is not resolved, and, in each case of the preceding clauses (A) or (B), such removed Contract shall be automatically deemed a Retained Contract for purposes of the Stalking Horse APA.

33.    30. Within one (1) business day of the Closing, the Debtors shall file a notice of the Closing, attaching the list of the Contracts assumed and assigned to the Purchaser effective as of the Closing Date.

34.    31. If it is discovered that a Contract should have been listed on Schedule 2.1(a)(v) but was omitted therefrom (an Omitted Contract as defined in the Stalking Horse APA), the Debtors shall, promptly following discovery thereof (but in no event later than three (3) Business Days after such discovery), (x) notify Purchaser in writing of such Omitted Contract and the corresponding estimated Cure Costs related thereto (if any) and (y) if requested by the Purchaser in writing (email to suffice), either file a supplemental contract assumption notice as set forth in the Bidding Procedures Order or file a motion with the Court on notice to the counterparties to such Omitted Contract seeking entry of an Order fixing the Cure Costs and approving the assumption and assignment of such Omitted Contract in accordance with Section 2.1 of the Stalking Horse APA (provided that no Omitted Contract shall be assumed by and assigned to Purchaser unless such Omitted Contract shall be accepted

at such time in writing (email to suffice) by Purchaser as an Assumed Contract). With respect to each Assumed Contract, Purchaser shall provide adequate assurance of the future performance of such Assumed Contract to the applicable counterparty to such Assumed Contract.

35.   ~~32.~~ Licenses and Permits.  To the extent provided in the Stalking Horse APA and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 363 and 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained (or, in the case of licenses or permits of Debtors of which the assignment to Purchaser is pending as of the Closing Date (whether pursuant to a notice period that has not expired as of the Closing Date or a required consent from an applicable governmental authority that has not been received as of the Closing Date), shall transfer to Purchaser upon the expiration of such notice period or the receipt of such consent).

36.   ~~33.~~ To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or

pendency of these Chapter 11 Cases or the consummation of the Transaction.

37.    *Committee Resolution.* Notwithstanding anything to the contrary in this Order or the Stalking Horse APA, in resolution of the Committee's informal objections to the Sale Order and the DIP Motion, the Purchaser and the Committee have entered into the Committee Resolution Term Sheet, a copy of which is attached hereto as **Exhibit 2**, and the terms of which are incorporated herein as if set forth in full, and which the Committee and the Purchaser agree the Committee is entitled to enforce against the Purchaser in all respects; *provided*, *however*, notwithstanding the incorporation of the terms of the Committee Resolution Term Sheet herein, nothing in this Order shall bind the Debtors with respect to the terms of the Committee Resolution Term Sheet.  The failure specifically to include or mention any particular provision of the Committee Resolution Term Sheet in this Order or the Stalking Horse APA shall not diminish or impair the effectiveness of such provision, it being the intent of the Committee and the Purchaser that the Committee Resolution Term Sheet be binding and enforceable in all respects upon entry of this Order.  In the event of a conflict between the provisions of this Order or the Stalking Horse APA, on the one hand, and the Committee Resolution Settlement Term Sheet, on the other hand, the terms of the Committee Resolution Term Sheet shall control solely with respect to the obligations among the Committee and the Purchaser.  For the avoidance of doubt, in no event shall any portion of the Professional Fee Escrow or the CLP Funding Amount be used to fund pre-closing operational expenses of the Debtors.  The Committee Resolution Term Sheet provides, among other things, the following:

a.    *Funding*.  The Purchaser and the DIP Lenders will fund $3,000,000 in the aggregate, inclusive of amounts budgeted for the Committee's professional in the budget filed with the Interim DIP Order  (the "CLP Funding Amount"),

-37-

which is intended to cover (i) $1,350,000 of allowed, unpaid professional fees and expenses of the Committee incurred in the period prior to and following the Closing, and (ii) $1,650,000 of wind down expenses (the "Wind-Down Amount"), including $500,000 to be segregated by the Debtors and, subject to further order of the Court, is to be utilized for the funding of a trust for the benefit of general unsecured creditors.

b.  *Specified Vendors*. For a period of sixty (60) days after the Closing Date, Purchaser will engage in good faith discussions with certain vendors to the Debtors to be specified by the Purchaser in consultation with the Committee (each, a "Specified Vendor" and collectively, the "Specified Vendors") to negotiate and enter into agreements with the Specified Vendors that set forth reasonable measures to assure Purchaser's supply chain has minimal disruptions. In connection with the foregoing, Purchaser will provide each Specified Vendor an opportunity for a period of sixty (60) days after Purchaser has entered into discussions with such Specified Vendor to provide quotes to supply Purchaser the products such Specified Vendor has provided to the Debtors so long as the Specified Vendor meets expected delivery times, quality of product and pricing that is competitive with other vendors in the industries and markets in which Purchaser operates as determined by Purchaser in good faith. In the event a Specified Vendor's delivery time, quality of product or price is not competitive as determined by Purchaser in good faith, Purchaser will notify such Specified Vendor and shall provide such Specified Vendor a reasonable opportunity to provide an additional quote regarding such Specified Vendor's services.

c.  *Causes of Action*.  The Purchaser will acquire all cause of actions and the proceeds thereof other than the following (the "Excluded Causes of Action"), which will remain with the Debtors' estates, and which shall include:

    i.  Avoidance Actions, commercial torts, and similar causes of action against Hardinge Holdings, LLC and Privet Fund Management, LLC and its affiliates (excluding, for the avoidance of doubt, the Debtors and the Debtors' non-debtor direct and indirect subsidiaries) (collectively, "Privet"), other than causes of action against Privet or its affiliates (1) in their capacity as landlord under the Elmira Lease and (2) in connection with the Promissory Note between Hardinge Property Company LLC and Hardinge Technology Systems, Inc.; and

    ii.  Causes of action against current and former officers and directors of the Debtors that are not Transferred Employees or independent contractors going forward with the Purchaser (collectively, the "Carved-Out Parties") and Purchaser shall provide the Debtors and the Committee a list of all Transferred Employees and independent contractors that are going forward with the Purchaser prior to Closing.

Purchaser will not assume or be deemed to assume any liabilities related to the Excluded Causes of Action.

d.  *Committee Resolution Term Sheet Controls*.  Solely as between the Purchaser and the Committee, to the extent of any conflict or derogation between this paragraph 37 of this Order or the Committee Resolution Term Sheet, the Committee Resolution Term Sheet shall control.

e.    For the avoidance of doubt, the Debtors are not a party to the Committee Resolution Term Sheet and reserve all rights with respect to the Committee Resolution and the Committee Resolution Term Sheet.

38.    34. Return of ~~unused~~Unused Cash to Purchaser. Any (i) unused portion of the Cash Shortfall that is not utilized by the Debtors in accordance with the Cash Shortfall Budget and (ii) Utility Deposits, solely to the extent related to Contracts or, upon the conclusion of the Debtors' Chapter 11 Cases, any remaining Utility Deposits for go-forward utility providers that are not subject to a Contract, as provided in the Stalking Horse APA, shall be returned to the Purchaser without further order of the Court.

39.    35. Good-Faith Purchaser.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereby.  The Transaction and the Stalking Horse APA are undertaken and entered into by the Debtors and the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code.  As such, the reversal or modification on appeal of this Order approving the Transaction under subsection (b) or (c) of section 363 of the Bankruptcy Code shall not affect the validity of the Transaction, whether or not the Purchaser knew of the pendency of the appeal, unless this Order and the Transaction were duly and properly stayed pending appeal.

40.    36. Section 363(n) of the Bankruptcy Code.  The Transaction approved by this Sale Order is not subject to avoidance or any recovery of damages pursuant to section 363(n) of the Bankruptcy Code.

41.    37. No Avoidance.  Neither the Transaction nor the Stalking Horse APA is subject to avoidance, and no party is entitled to any damages or other recovery in connection

therewith under section 363(n) of the Bankruptcy Code or otherwise.

42.    ~~38.~~ Insider.    Neither the Purchaser nor any Purchaser Related Person is an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

43.    ~~39.~~ Bulk Sales.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Transaction.

44.    ~~40.~~ Amendments.  The Stalking Horse APA and any related agreements may be amended, supplemented, or otherwise modified by the parties thereto and in accordance with the terms thereof, without further action or order of the Court*; provided, however*, in no event shall the Purchaser amend or modify the Stalking Horse APA in a manner that is inconsistent with the terms of the Committee Resolution Term Sheet; *provided, that*, any such amendment, supplement, or modification shall require the prior written consent of the DIP Agent (not to be unreasonably withheld, conditioned or delayed) and shall not have a material adverse effect on the Debtors' estates~~.~~*; provided, further,* that any other amendment or modification to the Stalking Horse APA shall, to the extent reasonably practicable, be provided to the Committee at least one (1) business day prior the Debtors' and Purchaser's execution of the same, which notice period may be waived with the Committee's consent, not to be unreasonably withheld.

45.    ~~41.~~ Binding Order.  This Order and the Stalking Horse APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all counterparties to any Contracts and all Recording

Officers.  Neither the Transaction nor the Stalking Horse APA shall be subject to rejection or avoidance under any circumstances.  This Order and the Stalking Horse APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.  Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such chapter 11 plan, or any order approving wind-down or dismissal of the Chapter 11 Cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of Stalking Horse APA (including any related agreements), or this Order, and to the extent of any conflict or derogation between this Order or the Stalking Horse APA and such future plan or order, the terms of this Order and the Stalking Horse APA , including any related agreements, shall control.

46.   42. Failure to Specify Provisions; Conflicts.  The failure specifically to include or mention any particular provision of the Stalking Horse APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Purchaser that the Stalking Horse APA be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

47.   43. Further Assurances.  From time to time, as and when requested, all parties to the Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Purchaser its right, title and interest in and to the Purchased Assets and the

Contracts.

48. ~~44.~~ Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Stalking Horse APA and to take any and all actions permitted or required under the Stalking Horse APA in accordance with the terms and conditions thereof.

49. ~~45.~~ No Stay of Order.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing. Time is of the essence in implementing the Stalking Horse APA s and closing the Transaction.

50. ~~46.~~ Governing Terms.  To the extent there is any inconsistency between the terms of this Order and the terms of the Stalking Horse APA, the terms of this Order shall govern.

51. ~~47.~~ Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction to (a) interpret, implement, and enforce the terms and provisions of this Order and the Stalking Horse APA , including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning or related to this Order, the Stalking Horse APA , or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets and the Contracts; *provided that* notwithstanding anything to the contrary contained in this Order, nothing herein alters or impacts any party-in-interest's rights with respect to which judicial forum is the appropriate judicial forum for a lawsuit or proceeding arising under the Prepetition

Credit Agreement or DIP Agreement (each as defined in the DIP Order).

52.    48. Other Provisions.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

53.    49. The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 and Local Rule 9013-1 have been satisfied or otherwise deemed waived.

54.    50. Any and all payments or proceeds remitted to the DIP Agent, the DIP Lenders, or any DIP Secured Parties (as defined in the DIP Order) pursuant to the DIP Documents (as defined in the DIP Order), including in connection with this Order shall be irrevocable, non-refundable, and without any rights to clawback, received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code whether asserted or assessed by through or on behalf of the Debtors or any other party.


Dated: _____,2024

## **Exhibit 1**

Stalking Horse APA

**Exhibit 2**

Committee Resolution Term Sheet

| **Summary report:** **Litera Compare for Word 11.3.1.3 Document comparison done on** **9/12/2024 6:31:47 PM** | |
|---|---|
| **Style name:** RG_Default_Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** ACTIVE_147217551_4_Hardinge - Sale Order [RG draft 9.6.24].docx | |
| **Modified DMS:** iw://RGDMS/Active/147217551/11 | |
| **Changes:** | |
| Add | 108 |
| Delete | 84 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 192 |