**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Hardinge Inc., *et al.*,[1] | Case No. 24-11605 (JKS) |
| Debtors. | (Jointly Administered) |

---

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ENTRY OF
AN ORDER CONFIRMING THE THIRD AMENDED COMBINED DISCLOSURE
STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF HARDINGE INC.
AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

---

Dated: December 13, 2024
Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Robert A. Weber*
Robert A. Weber (No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
(302) 295-0196
weber@chipmanbrown.com
desgross@chipmanbrown.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (No. 2991)
Lindsay C. Barca (*admitted* pro hac vice)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
lindsay.barca@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are:  Hardinge Ventures LLC (0586); Ohio Tool Works, LLC (7569); Kellenberger Swiss Grinding Machines, LLC (N/A); Hardinge Inc. (0200); Hardinge Technology Systems, Inc. (6427); Forkardt Inc. (4671); and Hardinge Grinding Group Inc. (6173).  The Debtors' service address is One Hardinge Drive, Elmira, NY 14902-1507.

# TABLE OF CONTENTS

Contents
Preliminary Statement ................................................................................................... 2

Background ..................................................................................................................... 3

   A.  GENERAL BACKGROUND ......................................................................................... 3

   B.  THE COMBINED DISCLOSURE STATEMENT AND PLAN PROCESS ........................... 7

Argument ..................................................................................................................... 10

   A.  THE COMBINED DISCLOSURE STATEMENT AND PLAN MEETS THE BANKRUPTCY CODE'S
       REQUIREMENTS AND SHOULD BE APPROVED .................................................... 10

      (i)  The Disclosures and Solicitation Procedures Comply with the Bankruptcy Code and
           Bankruptcy Rules and Should be Approved ....................................................... 10

      (ii) Section 1129(a)(1): The Combined Disclosure Statement and Plan Complies with the
           Applicable Provisions of the Bankruptcy Code .................................................. 13

      (iii)Section 1122: The Combined Disclosure Statement and Plan Classifications Are
           Appropriate ....................................................................................................... 13

      (iv)Section 1123(a): The Combined Disclosure Statement and Plan's Content is
           Appropriate ....................................................................................................... 15

      (v) Section 1123(b): the Combined Disclosure Statement and Plan Contains Certain
           Permissible Provisions ...................................................................................... 15

      (vi)Section 1129(a)(2): The Combined Disclosure Statement and Plan Complies with the
           Bankruptcy Code .............................................................................................. 23

      (vii)   Section 1129(a)(3): The Combined Disclosure Statement and Plan Has Been
           Proposed in Good Faith .................................................................................... 24

      (viii)  Section 1129(a)(4): The Combined Disclosure Statement and Plan Provides for
           Approval of Certain Administrative Expenses .................................................... 25

      (ix)Section 1129(a)(5): The Combined Disclosure Statement and Plan Contains Proper
           Disclosures ........................................................................................................ 25

      (x) Section 1129(a)(6): No Governmental Regulatory Commission Has Jurisdiction over
           the Debtor .......................................................................................................... 26

      (xi)Section 1129(a)(7): The Combined Disclosure Statement and Plan is in the Best
           Interest of All Creditors .................................................................................... 26

      (xii)   Section 1129(a)(8): The Combined Disclosure Statement and Plan Has Been
           Accepted by an Impaired Voting Class ............................................................. 28

      (xiii)  Section 1129(a)(9): The Combined Disclosure Statement and Plan Provides for
           Payment in Full of Allowed Priority, Administrative, and Tax Claims .............. 28

(xiv)   Section 1129(a)(10): At Least One Class of Impaired Classes Has Accepted the Combined Disclosure Statement and Plan .......................................................... 28

(xv)   Section 1129(a)(11): The Combined Disclosure Statement and Plan is Feasible  29

(xvi)   Section 1129(a)(12): All Statutory Payment Obligations Have Been or Will be Paid ................................................................................................................... 30

(xvii)   Section 1129(a)(13) Through Section 1129(a)(16) Do Not Apply to the Combined Disclosure Statement and Plan................................................................. 30

(xviii)   Section 1129(b): The Combined Disclosure Statement and Plan Satisfies the "Cram Down Requirements" ................................................................................ 31

(xix)   Section 1129(c) through Section 1129(e) Have Been Satisfied.......................... 33

B.   A WAIVER OF ANY STAY OF CONFIRMATION IS APPROPRIATE ........................................... 33

Conclusion ...................................................................................................................... 34

## TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Bank of Am. Nat'l Trust & Savings Assoc. v. 203 N. LaSalle St. Partnership*,
526 U.S. 434 (1999) ................................................................................................. 23, 29

*Gillman v. Continental Airlines (In re Continental Airlines)*,
203 F.3d 203 (3d Cir. 2000) .............................................................................................. 19

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995) ................................................................................ 29

*In re Adelphia Commc'ns, Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................................ 24

*In re Armstrong World Indus.*,
320 B.R. 523 (D. Del. 2005) .............................................................................................. 29

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (Bankr. D. Del. 2006) ................................................................................... 12

*In re Avia Energy Dev., LLC*,
Case No. 05-39339 (BJH), 2007 WL 2238039 (Bankr. N.D. Tex. Aug. 2, 2007) ................. 13

*In re Bowles*,
48 B.R. 502 (Bankr. E.D. Va. 1985) ................................................................................... 29

*In re Brotby*,
303 B.R. 177 (B.A.P. 9th Cir. 2003) ................................................................................... 26

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ............................................................................ 18, 29

*In re Credentia Corp.*, Case,
No. 10-10926, 2010 WL 3313383 (Bankr. D. Del. May 26, 2010) ....................................... 27

*In re Crowthers McCall Pattern, Inc.*,
120 B.R. 279 (Bankr. S.D.N.Y. 1990) ................................................................................ 24

*In re Drexel Burnham Lambert Grp., Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ................................................................................ 20

*In re Emerge Energy Services LP*,
2019 Bankr. LEXIS 3717 (Bankr. D. Del. Dec. 5, 2019) .................................................... 19

*In re Ferretti*,
 128 B.R. 16 (Bankr. D.N.H. 1991) ............................................................................ 10

*In re Freymiller Trucking, Inc.*,
 190 B.R. 913 (Bankr. W.D. Okla. 1996) .................................................................... 29

*In re Indianapolis Downs, LLC*,
 486 B.R. 286 (Bankr. D. Del. 2013) ............................................................ 16, 18, 20

*In re Ionosphere Clubs, Inc.*,
 179 B.R. 24 (S.D.N.Y. 1995) ...................................................................................... 9

*In re Johns-Manville Corp.*,
 68 B.R. 618 (Bankr. S.D.N.Y. 1987) ........................................................................ 20

*In re Lakeside Global II, Ltd.*,
 116 B.R. 499 (Bankr. S.D. Tex. 1989) ..................................................................... 26

*In re Lason, Inc.*,
 300 B.R. 227 (Bankr. D. Del. 2003) ......................................................................... 24

*In re Lernout & Hauspie Speech Prods. N.V.*,
 308 B.R. 672 (D. Del. 2004) ..................................................................................... 21

*In re Lisanti Foods*,
 329 B.R. 491 (D.N.J. 2005) ...................................................................................... 22

*In re Master Mortgage Invest. Fund, Inc.*,
 168 B.R. 930 (Bankr. W.D. Mo. 1994) ..................................................................... 16

*In re NII Holdings, Inc.*,
 288 B.R. 356 (Bankr. D. Del. 2002) ......................................................................... 21

*In re Nutritional Sourcing Corp.*,
 398 B.R. 816 (Bankr. D. Del. 2008) ......................................................................... 12

*In re Phoenix Petroleum Co.*,
 278 B.R. 385 (Bankr. E.D. Pa. 2001) ....................................................................... 11

*In re PPI Enterprises, Inc.*,
 228 B.R. 339 (Bankr. D. Del. 1998) ......................................................................... 21

*In re PWS Holding Corp.*,
 228 F.3d 224 (3d Cir. 2000) ............................................................................... 20, 21

iv

*In re Resorts Int'l, Inc.*,
  145 B.R. 412 (Bankr. D.N.J. 1990) .................................................................. 22

*In re Revco*,
  131 B.R. 615 (Bankr. N.D. Ohio 1990) .............................................................. 27

*In re Scioto Valley Mortgage Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988).................................................................. 11

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011) .................................................................. 17

*In re Tribune Co.*,
  476 B.R. 843 (Bankr. D. Del. 2012) .................................................................. 12

*In re W.R. Grace & Co.*,
  446 B.R. 96 (Bankr. D. Del. 2011) .................................................................... 20

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012) .......................................................................... 12, 20

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) .............................................................. 16, 20

*In re Washington Mut., Inc.*,
  461 B.R. 200 (Bankr. D. Del. 2011) .................................................................. 24

*In re Zenith Elecs. Corp.*,
  241 B.R. 92 (Bankr. D. Del. 1999) ......................................................... 9, 16, 17, 21

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
  987 F.2d 154 (3d Cir. 1993).......................................................................... 12

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988)...................................................................... 26, 29

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power, Corp.)*, 150 F.3d 503 (5th Cir. 1998) ...................................................... 10

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*,
  354 B.R. 1 (D. Conn. 2006) .......................................................................... 26

*Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*,
  913 F.2d 873 (11th Cir. 1990) ........................................................................ 13

*U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*,
426 B.R. 114 (Bankr. D. Del. 2010)   16, 18

## Statutes

11 U.S.C. § 507 ................................................................................................................ 27

11 U.S.C. § 1107 ............................................................................................................... 2

11 U.S.C. § 1108 ............................................................................................................... 2

11 U.S.C. § 1114 .............................................................................................................. 27

11 U.S.C. § 1122 ......................................................................................................... 12, 13

11 U.S.C. § 1123 .................................................................................................. 9, 13, 14, 16

11 U.S.C. § 1125 ................................................................................................ 9, 12, 20, 21

11 U.S.C. § 1129 ........................................... 9, 12, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30

28 U.S.C. § 1930 .............................................................................................................. 27

## Rules

Fed. R. Bankr. P. 3020(e) ................................................................................................ 31

## Other Authorities

H.R. Rep. No. 95-595 ...................................................................................................... 20

S. Rep. No. 95-989 ...................................................................................................... 10, 20

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this memorandum of law (this "**Memorandum**") in support of confirmation of the *Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Harding Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 565] (as subsequently revised or amended, the "**Combined Disclosure Statement and Plan**").  The Debtors respectfully request confirmation of the Combined Disclosure Statement and Plan pursuant to the proposed form of order filed contemporaneously herewith (the "**Confirmation Order**").  In support of the Combined Disclosure Statement and Plan, the Debtors rely upon and incorporate by reference (a) the *Declaration of Adrian Frankum, Chief Restructuring Officer of the Debtors, In Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 18] (the "**First Day Declaration**"); and the following additional declarations filed herewith: (b) the *Declaration of Alex Orchowski of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Harding Inc. and Its Affiliated Debtors and Debtors in Possession* (the "**Tabulation Declaration**"); (c) the *Declaration of Adrian Frankum, Chief Restructuring Officer of the Debtors, in Support of Confirmation of the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Harding Inc. and Its Affiliated Debtors and Debtors in Possession* (the "**Confirmation Declaration**"); and (d) the *Declaration of Tim Pohl in Support of Confirmation of the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Harding Inc. and Its Affiliated Debtors and Debtors in Possession* (the "**Pohl Declaration**").

## PRELIMINARY STATEMENT

The Debtors respectfully request final approval of the Combined Disclosure Statement and confirmation of the Plan. The Combined Disclosure Statement and Plan is a liquidating chapter 11 plan embodying heavily-negotiated settlements between and among the Debtors, the Official Committee of Unsecured Creditors (the **"Committee"**), the Debtors' prepetition and postpetition secured lenders, the Debtors' controlling shareholders and board members, and the Debtors' largest unsecured creditor, the Pension Benefit Guaranty Corporation (the "**PBGC**"). In summary, it provides that upon the effective date, the Debtors' remaining assets (the **"GUC Trust Assets"**) will be transferred to a liquidating trust (the **"GUC Trust"**) for ultimate distribution to the beneficiaries of the GUC Liquidating Trust as set forth herein. The Combined Disclosure Statement and Plan includes plan funding of at least $3 million – enough to provide an initial distribution to creditors, ensure the feasibility of the Plan, and provide initial funding to the GUC Trust. The GUC Trust Assets will be administered and distributed as soon as practicable pursuant to the terms of the Combined Disclosure Statement and Plan and the liquidating trust agreement (the **"GUC Trust Agreement"**). The Debtors believe that the Combined Disclosure Statement and Plan is the most efficient way to maximize value for all parties-in-interest and will allow for the efficient distribution of GUC Trust Assets, and the Committee supports confirmation of the Plan. Two of the three impaired consenting classes, Class 4 (Deficiency Claims) and Class 5 (PBGC Claims), have voted or are expected to vote in favor of confirmation, and there are no objections to final approval of the Combined Disclosure Statement and confirmation of the Plan. Accordingly, the Debtors request that the Court enter the proposed Confirmation Order.

## BACKGROUND

**A.    GENERAL BACKGROUND**

1.      On July 29, 2024 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code thereby commencing these cases (the "**Chapter 11 Cases**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

2.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.  On August 8, 2024, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Committee in the Chapter 11 Cases.

3.      As of the Petition Date, Hardinge Inc., together with the other Debtors and its non-debtor direct and indirect subsidiaries (the "**Company**"), was a global leader in the design, manufacture and distribution of precise, advanced metal-cutting machine tool solutions.  With locations spanning the globe, including the United States, England, France, Germany, Switzerland, China, and India, the Company was able to service customers worldwide.  Through the twelve brands operated under the Company's umbrella, including Kellenberger®, Hardinge®, Buck Chuck®, Forkardt® and Ohio Tool Works®, the Company engineers and supplies computer-controlled metalcutting turning machines, grinding machines, machining centers, collets, chucks, index fixtures, repair parts for machines, and other industrial products.  The Company also provided post-sale support services and maintenance training, in-field maintenance, and in-field repair.

4.      Additional factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of these Chapter 11 Cases, is set forth in the First Day Declaration, which is incorporated herein by reference.

### (a)      The DIP Facility

5.      Upon the bankruptcy filing, the Debtors required immediate access to incremental liquidity in the form of postpetition financing to preserve the value of the Debtors' Estates, undertake a sale process, and maximize recoveries for all stakeholders.  Accordingly, the Debtors sought authorization to enter into a debtor-in-possession financing facility (the **"DIP Facility"**) in an aggregate principal amount of up to $27,350,000, with up to $24,200,000 of such amount available upon interim approval.  The Bankruptcy Court entered a *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Debtor to Use Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 336].  The DIP Facility has been fully satisfied as a result of the successful credit bid submitted on behalf of the DIP lender and its affiliates described below.

### (b)      Sales of the Debtors' Assets

6.      On the Petition Date, the Debtors filed the *Debtors' Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for Entry of an Order (I) Approving the Bidding Procedures, Including the Debtors' Entry into the Stalking Horse APA, the Sale Timeline, and the Form and Manner of Notice Thereof; (II) Approving the Debtors' (A) Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed Liabilities and (B)*

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases to the Successful Bidder; and (III) Granting Related Relief* [Docket No. 35] (the "**Sale Motion**").

7.        On August 21, 2024, the Court entered the *Order (I)(A) Approving Certain Bidding Procedures and the Form and Manner of Notice Thereof, (B) Approving the Debtors' Entry Into the Stalking Horse APA, (C) Approving the Form and Manner of Notice of the Sale Hearing; and (II) Granting Related Relief* [Docket No. 194] (the "**Bidding Procedures Order**"), approving the procedures for the bidding and sale process for substantially all of the Debtors' assets.

8.        As detailed in the Sale Motion, prior to the Petition Date, the Debtors and Centre Lane Partners, LLC (the "**Stalking Horse Purchaser**") agreed on the principal terms of a stalking horse asset purchase agreement (the "**Stalking Horse APA**").  Pursuant to the Bidding Procedures Order and the Notice of Filing of Asset Purchase Agreement [Docket No. 217], on August 23, 2024, the Debtors entered into the Stalking Horse APA.

9.        The Stalking Horse APA provided, among other things, for Centre Lane to, through one or more affiliates or newly formed affiliate entities, purchase the secured debt, provide an incremental bridge facility immediately after closing the proposed debt sale, provide a debtor in possession financing facility in chapter 11, and to serve as the stalking horse bidder for substantially all of the Debtors' and their non-debtor subsidiaries businesses, except Weisser Gesellschaft mit beschränkter haftung and J.G. Weisser Söhne GmbH & Co. KG.

10.        Prior to the hearing to approve the Stalking Horse APA, however, the Committee raised informal objections to the Stalking Horse APA as well as to the proposed Final DIP Order. In addition, the Debtors received a bid from Ohio Tool Work, LLC with respect to the Debtors' assets related to the Debtors' Ohio Tool Works business, which were also covered by the Stalking Horse APA.  Working with the Committee, the Stalking Horse Purchaser and Ohio Tool Work,

LLC, the Committee's objections were resolved through the Committee Resolution Term Sheet and revised forms of proposed orders approving the Sale Transactions and approving the DIP Facility on a final basis.

11.     On September 17, 2024, the Court entered the *Order (I) Approving the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Their Obligations under the Asset Purchase Agreement and Related Documents, (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 337] (the "**Stalking Horse Sale Order**").

12.     On that same date, the Court entered the *Order (I) Approving the Sale of All or Substantially All of Debtor Ohio Tool Works, LLC's Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtor Ohio Tool Works, LLC to Enter into and Perform its Obligations under the Asset Purchase Agreement and Related Documents, (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (IV) Granting Related Relief* [Docket No. 338] (the "**OTW Sale Order**").

13.     On September 17, 2024, the Debtors closed on the sales authorized by the Stalking Horse Sale Order and the OTW Sale Order.  *See* Docket Nos. 343, 349.

14.     Pursuant to the Committee Resolution Term Sheet, agreed to on September 12, 2024, the Committee and Stalking Horse Purchaser, the Prepetition Lender, and the DIP Lender resolved the Committee's informal objections with respect to the proposed Stalking Horse Sale Order and the proposed Final DIP Order. A copy of the Committee Resolution Term Sheet is attached to the Combined Disclosure Statement and Plan as **Exhibit B** and was attached as Exhibit

2 to the Stalking Horse Sale Order. The Committee Resolution Term Sheet provided the groundwork for the additional settlements described below and in the Combined Disclosure Statement and Plan.

(c) <b>Claims Bar Date</b>

15. On September 25, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Establishing (A) Bar Date and Related Procedures for Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and (B) Initial Bar Date and Related Procedures for Assertion of Post-Petition Administrative Expense Claims, (II) Approving the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 356] (the "**Bar Date Motion**").

16. On October 10, 2024, the Court entered an order [Docket No. 413] (the "**Bar Date Order**"). Among other things, the Bar Date Order established November 13, 2024 at 5:00 p.m. (prevailing Eastern Time) as the date by which proofs of claim against the Debtors must be filed (the **"Bar Date"**) and January 27, 2025 at 5:00 p.m. as the governmental bar date (the **"Governmental Bar Date"**).

**B.    THE COMBINED DISCLOSURE STATEMENT AND PLAN PROCESS**

17. After extensive negotiations between the Debtors and the Committee, the original version of the Combined Disclosure Statement and Plan was filed on October 9, 2024 [Docket No. 411]. On October 9, 2024, the Debtors also filed the *Debtors' Motion for Order (I) Approving Adequacy of Disclosures in Combined Disclosure Statement and Plan on Interim Basis, (II) Scheduling Confirmation Hearing and Objection Deadline, (III) Establishing Procedures for Solicitation and Tabulation of Votes, (IV) Approving Form of Ballot and Solicitation Package, and (V) Approving Notice* [Docket No. 412] (the "**Interim Approval and Procedures Motion**"). The

Interim Approval and Procedures Motion sought approval of the Combined Disclosure Statement and Plan on an interim basis pursuant to and in accordance with Local Rule 3017-2.

18.    On October 30, 2024, the Debtors filed an amended version of the Combined Disclosure Statement and Plan [Docket No. 465].  The amended Combined Disclosure Statement and Plan resolved informal comments received primarily from the U.S. Trustee and the Committee.  On December 13, 2024, the Debtors filed the current version of the Combined Disclosure Statement and Plan [Docket No. 565], which version, among other things, updates the previous version to reflect the recently-negotiated plan settlements described in Article IV.B.7 of the Plan.[1]

19.    The Combined Disclosure Statement and Plan is a liquidating chapter 11 plan that contemplates the liquidation and ultimate distribution of the Debtors' remaining assets, including, without limitation, the GUC Estate Causes of Action and the Initial GUC Trust Funding Amount, which amounts will be the source of Distributions to Holders of Allowed Class 5 Claims and Class 6 Claims as defined in the Combined Disclosure Statement and Plan.  The Combined Disclosure Statement and Plan also contains various other usual and customary Chapter 11 provisions, including a mechanism for the payment of various estate administrative expenses.

20.    On October 30, 2024, the Bankruptcy Court entered an *Order (I) Conditionally Approving Combined Disclosure Statement and Plan for Solicitation Purposes Only, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Disclosure Statement and Plan, (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing Voting Record Date, (V) Fixing the Date, Time and Place for the Confirmation*

---

[1]    The Debtors are continuing to work with parties in interest to resolve objections to the Plan and finalize the terms of the Committee Plan Settlement (as defined therein).  The Plan remains subject to change and the Debtors intend to file a further revised version of the Plan in advance of the Confirmation Hearing.

*Hearing and the Deadline for Filing Objections Thereto, and (VI) Approving Related Shortened Notice Procedures* [Docket No. 464] (the **"Interim Approval and Procedures Order"**).  The Interim Approval and Procedures Order, among other things, set dates related to approval of the Combined Disclosure Statement and Plan, including the Combined Hearing to consider confirmation and approved various solicitation procedures (the **"Solicitation Procedures"**).  The deadline for receipt of votes was set as 4:00 p.m. (prevailing Eastern Time) on December 9, 2024 (the **"Voting Deadline"**), as well as objections to the Combined Disclosure Statement and Plan. As described in the updated Combined Disclosure Statement and Plan, the Debtors agreed to brief extensions for the Class 4 and Class 5 creditors as well as certain creditors in Class 6.

21.    Following entry of the Interim Approval and Procedures Order, the Debtors commenced solicitation of the Combined Disclosure Statement and Plan by sending solicitation packages (the "**Solicitation Packages**") to Holders of Claims in Classes 1, 4, 5 and 6 (the Prepetition Secured Claims, the Deficiency Claims, the PBGC Claims, and the General Unsecured Claims) (together, the "**Voting Classes**").  Pursuant to the Plan settlements, and as set forth in the Tabulation Declaration, two impaired consenting classes, Class 4 (Deficiency Claims) and Class 5 (PBGC Claims), have voted or are expected to vote in favor of confirmation.  By number, Class 6 (General Unsecured Claims) also voted in favor of confirmation, but the class voted to reject by dollar amount.[2]  No objections were filed to final approval of the Combined Disclosure Statement or confirmation of the Plan.

---

[2]    58  of the 73 voting creditors in Class 6 (79.45%) voted in favor of the Plan.  However, 15 voting creditors holding 64.13% in amount of the claims in the class voted to reject.

## **ARGUMENT**

**A.**    **THE COMBINED DISCLOSURE STATEMENT AND PLAN MEETS THE BANKRUPTCY CODE'S REQUIREMENTS AND SHOULD BE APPROVED**

22.    By this Memorandum, the Debtors submit that confirmation of the Combined Disclosure Statement and Plan is appropriate as it satisfies Bankruptcy Code sections 1123, 1125, and 1129.

**(i)**    **The Disclosures and Solicitation Procedures Comply with the Bankruptcy Code and Bankruptcy Rules and Should be Approved**

23.    Bankruptcy Code section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited . . ., unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Bankruptcy Code section 1125(a)(1) defines "adequate information" as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

26.    Therefore, as a whole, a debtor's disclosure statement must provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors and interest holders entitled to vote on the debtor's plan or reorganization. *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 99-100 (Bankr. D. Del. 1999); *In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29

(S.D.N.Y. 1995); *see also In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) (finding that a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

27.    Bankruptcy courts are afforded broad discretion in determining whether a disclosure statement contains adequate information. *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court . . . the information required will necessarily be governed by the circumstances of the case.'") (quoting S. Rep. No. 95-989, at 121 (1978)); *cert. denied*, 119 S. Ct. 2019 (1999).  Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of the relevant case. In that regard, courts generally examine whether a disclosure statement contains, if applicable, the following types of information:

     a.    the circumstances that gave rise to the filing of the bankruptcy petition;

     b.    a description of the available assets and their value;

     c.    the anticipated future of the debtor;

     d.    the sources of information provided in the disclosure statement;

     e.    the condition and performance of the debtor while in chapter 11;

     f.    information regarding claims against the estate;

     g.    a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

     h.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

     i.    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

j.      a summary of the chapter 11 plan;

k.      an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

l.      financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

m.      information relevant to the risks being taken by the creditors and interest holders;

n.      the tax consequences of the plan; and

o.      the relationship of the debtor with its affiliates.

*See, e.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988). This list is not meant to be exclusive, nor must a debtor include in its disclosure statement all of the information on the list. Rather, the court must decide what information is appropriate in each case. *See In re Phoenix Petroleum Co.,* 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of similar list but cautioning that "no one list of categories will apply in every case.").

28.      Here, the Combined Disclosure Statement and Plan contains adequate information as it includes, among other things: (a) the events precipitating the filing of these Chapter 11 Cases; (b) the Debtors' prepetition capital structure and assets; (c) a liquidation analysis; (d) the Combined Disclosure Statement and Plan's designation and treatment of Claims and Equity Interests; (e) a summary of the Combined Disclosure Statement and Plan's structure; (f) the conditions precedent for confirmation and effectiveness of the Combined Disclosure Statement and Plan; (g) provisions of the Combined Disclosure Statement and Plan governing releases, injunctions, and exculpations; (h) the voting and confirmation procedures; (i) certain risk factors; (j) tax consequences related to the Combined Disclosure Statement and Plan; and (k) a summary of the Bankruptcy Code and other requirements for confirmation. Moreover, as solicited, the Combined Disclosure Statement and Plan disclosed the Debtors' then-pending plan settlement

under negotiation with the Committee, *see* Docket No. 465 at 7, 21, and 24-27, and disclosed the

Debtors' pending efforts to settle potential litigation claims.  Now that those negotiations have

been successfully concluded, the current version of the Combined Disclosure Statement and Plan

discloses the complete terms of those agreed settlements in Article IV.B.7.

29.     Accordingly, the Debtors submit that the Combined Disclosure Statement and Plan

contains adequate information within the meaning of Bankruptcy Code section 1125.

> **(ii)     Section 1129(a)(1): The Combined Disclosure Statement and Plan Complies with the Applicable Provisions of the Bankruptcy Code**

30.     To achieve confirmation of the Combined Disclosure Statement and Plan, the

Debtors must demonstrate, by a preponderance of the evidence, that it complies with the applicable

provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(1); *see also In re Armstrong World

Indus., Inc.*, 348 B.R. 111, 120 (Bankr. D. Del. 2006); *In re Nutritional Sourcing Corp.*, 398 B.R.

816, 824 (Bankr. D. Del. 2008).  As set forth in this Memorandum, the Combined Disclosure

Statement and Plan satisfies all provisions of Bankruptcy Code section 1129 and complies with all

other applicable Bankruptcy Code sections, the Bankruptcy Rules, the Local Rules, and applicable

non-bankruptcy law.  *See In re W.R. Grace & Co.*, 475 B.R. 34, 173 (D. Del. 2012).

> **(iii)    Section 1122: The Combined Disclosure Statement and Plan Classifications Are Appropriate**

31.     Bankruptcy Code section 1122 provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
>
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  Bankruptcy Code section 1122 affords the proponent of a plan with significant

flexibility in the classification of claims and interests, so long as there is a reasonable basis for

such classification.  *See In re Tribune Co.*, 476 B.R. 843, 854 (Bankr. D. Del. 2012) (finding that

Section 1122(a) is permissive, in that "it does *not* provide that *all* similar claims must be placed in

the same class"); *see also In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,

987 F.2d 154, 158-59 (3d Cir. 1993); *Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re*

*Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Avia Energy Dev., LLC*, Case No. 05-

39339 (BJH), 2007 WL 2238039, at *2 (Bankr. N.D. Tex. Aug. 2, 2007).

32.     Here, the Combined Disclosure Statement and Plan designates the following

Classes:

| |
|---|
| Class 1 – Prepetition Secured Claims |
| Class 2 – Miscellaneous Secured Claims |
| Class 3 – Priority Claims |
| Class 4 – Deficiency Claims |
| Class 5 – PBGC Claims |
| Class 6 – General Unsecured Claims |
| Class 7 – Subordinated Claims |
| Class 8 – Equity Interests |

Such classifications comply with Bankruptcy Code section 1122.  All Claims and Equity Interests

within a Class are substantially similar.  Additionally, each Claim and Equity Interest differ from

Claims and Equity Interests in other Classes (if any) based upon such Claim or Equity Interest's

legal or factual nature.

33.     Thus, the Debtors submit that the classification scheme within the Combined

Disclosure Statement and Plan is consistent with Bankruptcy Code section 1122.

      **(iv)**    **Section 1123(a): The Combined Disclosure Statement and Plan's Content is Appropriate**

34.    Bankruptcy Code section 1123(a) sets forth certain requirements that a plan must contain. 11 U.S.C. § 1123(a). Here, each such requirement has been met:

    a.    As set forth above, the Combined Disclosure Statement and Plan designates Classes of Claims and Interests as required by Bankruptcy Code section 1123(a)(1). *See* Article V.

    b.    The Combined Disclosure Statement and Plan sets forth which Classes of Claims are impaired or unimpaired as required by Bankruptcy Code sections 1123(a)(2) and (a)(3). *See* Art. V.B.

    c.    The Combined Disclosure Statement and Plan provides for equal treatment within each Class as required by Bankruptcy Code section 1123(a)(4). *See* Article IV.D.

    d.    The Combined Disclosure Statement and Plan provides for adequate means for implementation including procedures for distributions to Holders of Allowed Claims and potentially Interests.  Together with the Plan Supplement, the Combined Disclosure Statement and Plan contains adequate means for implementation as required by Bankruptcy Code section 1123(a)(5). *See* Article VII *see also* Plan Supplement [Docket No. 537] (liquidating trust agreement).

    e.    The Combined Disclosure Statement and Plan provides for the dissolution of the Debtors. As such, Bankruptcy Code section 1123(a)(6) is not applicable.

    f.    The Combined Disclosure Statement and Plan and Plan Supplement provides for the selection of the liquidating trustee, as required by Bankruptcy Code section 1123(a)(7).

      **(v)**    **Section 1123(b): the Combined Disclosure Statement and Plan Contains Certain Permissible Provisions**

35.    Bankruptcy Code section 1123(b) sets forth permissive provisions that may be incorporated into a plan.  A plan may: impair or unimpair any class of claims; provide for the assumption or rejection of executory contracts and unexpired leases; provide for the settlement or retention of a debtor's claims; modify or leave unaffected the rights of holders of claims; and include any provision not inconsistent with the Bankruptcy Code. 11 U.S.C. § 1123(b).

36.     The Combined Disclosure Statement and Plan provides for the classification and impairment or unimpairment of certain Classes.  *See* Combined Disclosure Statement and Plan Article V.B. The Combined Disclosure Statement and Plan also contains procedures for the distributions and the allowance or disallowance of Claims.  *Id.* Article VII.E.

37.     Finally, the Combined Disclosure Statement and Plan provides for the settlement of certain of the Debtors' claims and related matters.  *Id.* Article IV.B.7.  Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a). Settlements likewise may be presented for court approval through a plan pursuant to Bankruptcy Code section 1123(b)(3)(A).

38.     Courts generally defer to the debtor or trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996). In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id*. at 393.  In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id*.  Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the Court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995). Moreover, settlements should be approved if they fall above the lowest point on the continuum of reasonableness.  "[The] responsibility of the bankruptcy judge is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*,

699 F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Tech. for Energy Corp.*, 56 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

39.     As explained in the Combined Disclosure Statement and Plan, in the Frankum and Pohl Declarations, and below, the Plan settlements, together with the settlement embodied in the Committee Resolution Term Sheet, provide significant value to the Debtors and their estates without litigation cost or expense and without collection risk. The settlements further provide for the payment of administrative and priority claims through a combination of (i) Centre Lane's assumption of numerous specific categories of such claims, as set forth in the Committee Resolution Term Sheet, and (ii) cash contributed by Privet sufficient to pay the remainder and provide initial funding to the GUC Trust. The Plan settlements are in the best interests of the Debtors, creditors and the Debtors' estates, are eminently reasonable, and are well above the lowest point in the range of reasonableness and should be approved.

   **(a)**  **The Combined Disclosure Statement and Plan's Release, Exculpation, and Injunction Provisions are Appropriate and Should be Approved**

40.     Consistent with Bankruptcy Code section 1123(b), the Combined Disclosure Statement and Plan also contains releases by the Debtors and their estates (the **"Debtor Releases"**) and provisions related to injunction and exculpation. *See* Article X. As detailed below, the aforementioned provisions are proper under the circumstances of these Chapter 11 Cases because

they are fair and equitable, given for reasonable consideration, and an integral part of the Combined Disclosure Statement and Plan.

### (1)    Debtors' Releases

41.    Article X.C of the Combined Disclosure Statement and Plan contains the Debtors' Releases.  The Debtors' Releases provide that on the Effective Date, the Debtors and their Estates will release potential estate claims and causes of action against the Released Parties.

42.    Released Parties under the Combined Disclosure Statement and Plan means, individually and collectively, in each case solely in their capacities as such, each and all of: (a) the Debtors; (b) the Debtors' Retained Professionals; (c) the Released Directors and Officers; (d) the Committee and members of the Committee in their capacity as members of the Committee; (e) the Committee's Retained Professionals; and (f) the CLP Parties.

43.    Released Settlement Parties under the Combined Disclosure Statement and Plan means, individually and collectively, in each case solely in their capacities as such, each and all of: (a) the Debtors; (b) the Debtors' Retained Professionals; (c) the Released Settlement Directors and Officers; (d) the Committee and members of the Committee in their capacity as members of the Committee; (e) the Committee's Retained Professionals; (f) Privet; (g) Hardinge Holdings, LLC; (h) Hardinge Property; (i) Elmira Landlord; and (j) any of the foregoing entities' respective officers, members, partners, directors, employees, agents, attorneys, advisors and other representatives.

44.    Pursuant to Bankruptcy Code section 1123(b)(3)(A), debtors may release claims "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable and in the best interests of the estate." *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010). When determining whether such debtor releases are appropriate, a court considers the "specific facts and equities of each case," which typically consider the factors

set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999). These factors look to:

1.    An identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;

2.    Substantial contribution by the non-debtor of assets to the reorganization;

3.    The essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

4.    An agreement by a substantial majority of creditors to support the injunction, specifically if the impaired class of classes "overwhelmingly" votes to accept the plan; and

5.    A provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013). *See also In re Master Mortgage Invest. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994). The court need not find all factors apply in a particular case. *In re Wash. Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011). Instead, these factors are "helpful in weighing the equities of the particular case after a fact-specific review." *In re Indianapolis Downs*, 486 B.R. at 303.

45.    Here, the Court should approve the Debtors' release of the Released Parties in the Combined Disclosure Statement and Plan as they are fair, reasonable, and in the best interests of the Debtors and their estates. First, each Released Party was instrumental in formulating the Combined Disclosure Statement and Plan. *See, e.g., In re Tribune Co.*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding that the debtors and their secured lenders "share[d] the common goal of confirming the [] Plan" and implementing the consummation thereof, thus, giving rise to an identity of interest between the parties).

19

46.     Second, each of the Released Parties have made substantial contributions to these Chapter 11 Cases, including, among other things, overseeing the sale process and negotiating the Combined Disclosure Statement and Plan.  The contributions of the Released Parties were essential to administering these Chapter 11 Cases and preserving value for the Debtors' creditors.

47.     Third, the Debtor releases contemplated by the Combined Disclosure Statement and Plan were an essential component of the Combined Disclosure Statement and Plan process and are required by the settlements set forth in the Combined Disclosure Statement and Plan.

48.     Fourth, as set forth in the Tabulation Declaration, the amount of Claims voting in support of confirmation of the Combined Disclosure Statement and Plan is substantial.

49.     Fifth, the Debtors believe that the distributions provided under the Combined Disclosure Statement and Plan present the maximum recovery for creditors in these Chapter 11 Cases.  As indicated by the Liquidation Analysis, creditors would receive less if these Chapter 11 Cases were converted to a case under chapter 7 of the Bankruptcy Code. *See, e.g.*, *In re Zenith*, 241 B.R. at 111 (explaining that the fifth factor was met because "the Plan does provide a distribution to creditors in exchange for the releases" and supporting that conclusion by explaining that creditors received more under the plan than they would have in a liquidation).

                    **(2)     Releases by Holders of Claims and Interests of Debtors**

50.     The Combined Disclosure Statement and Plan contains fully consensual opt-in releases by holders of claims and interests of Debtors.  Specifically, the Combined Disclosure Statement and Plan provides that "**Releasing Parties**" means, individually and collectively, (a) the Released Parties, and (b) each holder of a Claim that (i) votes to accept the Plan and opts into the releases contained in the Plan, (ii) votes to reject the Plan and opts into the releases contained in the Plan, provided, however, that the Entities identified in part (b) shall be Releasing Parties only to the extent the corresponding Entities in part (a) are legally entitled to bind such Entities in part

20

(b) to the releases contained in the Plan under applicable non-bankruptcy law.  Part (b) (the **"Third-Party Release"**) is consensual, consistent with established Third Circuit law, and integral to the Combined Disclosure Statement and Plan and therefore should be approved.

51.     Numerous courts have recognized that a chapter 11 plan may include a release of non-debtors by other non-debtors when such release is consensual. *See, e.g., Indianapolis Downs*, 486 B.R. at 305 (collecting cases); *Spansion*, 426 B.R. at 144 (stating that "a third-party release may be included in a plan if the release is consensual").  Consensual releases are permissible based on general principles of contract law. *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004).  While the Supreme Court recently held that the Bankruptcy Code does not allow for non-consensual third-party releases in a chapter 11 reorganization plan, the Court clarified that "[n]othing in the opinion should be construed to call into question *consensual* third-party releases . . ." *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071, 2074, 219 L. Ed. 2d 721 (2024) (emphasis added).

52.     Moreover, the law is clear that a release is consensual where parties have received sufficient notice of a plan's release provisions and have had an opportunity to object to or opt out of the release and failed to do so (including where such holder abstains from voting altogether). *See, e.g., In re Indianapolis Downs, LLC*, 486 B.R. at 306 ("As for those impaired creditors who abstained from voting on the Plan, or who voted to reject the Plan and did not otherwise opt out of the releases, the record reflects these parties were provided detailed instructions on how to opt out, and had the opportunity to do so by marking their ballots.  Under these circumstances, the Third-Party Releases may be properly characterized as consensual and will be approved."); *but see, In re Emerge Energy Services LP*, 2019 Bankr. LEXIS 3717 (Bankr. D. Del. Dec. 5, 2019) (holding that a opt out is nonconsensual for parties failing to return a ballot or opt-out form).

53.     Here, the Third-Party Release, as an opt-in release, is entirely consensual.  There is no risk of an inadvertent release where a creditor must affirmatively complete and return a ballot or opt-out form.  All parties in interest have had ample opportunity to evaluate and exercise their right to opt into the Third-Party Release.  The ballots distributed to Holders of Claims and Interests entitled to vote on the Combined Disclosure Statement and Plan quoted the entirety of the Third-Party Release provision and clearly informed such Holders of the steps they should take if they wanted to opt into the Third-Party Release.  Based on the foregoing, the Debtors have established that the Third-Party Release is consensual, and there is no need to consider the factors governing non-consensual third-party releases under Continental and its progeny. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 213-14 (3d Cir. 2000).

### (3)    Injunction and Exculpation Provisions

54.     <u>Injunction Provisions</u>.  Article X.A of the Combined Disclosure Statement and Plan contains certain injunction provisions related to the parties who have held, hold, or may hold Claims against the Debtors.  The injunction provisions are critical for the effectiveness of the Combined Disclosure Statement and Plan.  Without such injunction provisions, the Debtors' ability to fulfill their respective responsibilities under the Combined Disclosure Statement and Plan could be constrained or jeopardized.  The injunction provisions in the Combined Disclosure Statement and Plan are narrowly tailored and should be approved.

55.     <u>Exculpation Provisions</u>.  Article X.B of the Combined Disclosure Statement and Plan provides for limited exculpation of certain parties.  Exculpation provisions in a plan are appropriate when the protection is necessary and given in exchange for fair consideration. *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211-14 (3d Cir. 2000). *See also In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (holding that an exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability.").

Estate fiduciaries, lenders, and other parties participating in the plan process are frequently the subject of exculpation provisions. *See, e.g.*, *In re W.R. Grace & Co.*, 446 B.R. 96, 132-33 (Bankr. D. Del. 2011); *In re Wash Mut. Inc.*, 442 B.R. at 350-51; *In re Indianapolis Downs, LLC*, 486 B.R. at 306.  Without protection for these parties, key constituents would not participate in the plan process.

56.    For these reasons, the Debtors submit that the exculpation provisions in the Combined Disclosure Statement and Plan should be approved.

### (vi)    Section 1129(a)(2): The Combined Disclosure Statement and Plan Complies with the Bankruptcy Code

57.    Bankruptcy Code section 1129(a)(2) requires that the plan proponent "compl[y] with the allocable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The legislative history of Bankruptcy Code section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Bankruptcy Code sections 1125 and 1126. *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1987). *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R.141, 149 (Bankr. S.D.N.Y. 1984); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992). As set forth below, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including the provisions of Bankruptcy Code sections 1125 and 1126 regarding disclosure and plan solicitation.

58.    As discussed herein and in the Tabulation Declaration, the Combined Disclosure Statement and Plan satisfies the requirements of Bankruptcy Code sections 1125 and 1126.  The Debtors have complied with applicable Bankruptcy Code provisions, the Bankruptcy Rules, the

Local Rules, including Local Rule 3017-2, and other applicable law in the transmission of the Combined Disclosure Statement and Plan, the Ballots, and related documents and notices. Accordingly, the Debtors have complied with the provisions of Bankruptcy Code sections 1125 and 1126, and fulfilled the requirements of Bankruptcy Code section 1129(a)(2).

> **(vii)    Section 1129(a)(3): The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith**

59.     As required by Bankruptcy Code section 1129(a)(3), the Combined Disclosure Statement and Plan has been "proposed in good faith and not by any means forbidden by law." While the Bankruptcy Code does not define "good faith," the Third Circuit has addressed the good faith standard under Bankruptcy Code section 1129(a)(3), stating that "a determination of good faith associated with a Chapter 11 reorganization plan requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal." *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012).  Since this inquiry is fact-specific, bankruptcy courts are uniquely positioned to evaluate the good faith of parties' proposals and are thus afforded significant discretion in their assessment.  *Id.*

60.     Moreover, "[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point on inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3rd Cir. 2000); *see also In re Lernout & Hauspie Speech Prods. N.V.*, 308 B.R. 672, 675 (D. Del. 2004) (finding that good faith requires "that (1) the plan be consistent with the objectives of the Bankruptcy Code; (2) the plan be proposed with honesty and good intentions and with a basis for expecting that reorganization can be achieved; or (3) there was fundamental fairness in dealing with the creditors."); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002); *In re*

*Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999); *In re PPI Enterprises, Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998).

61.     The Combined Disclosure Statement and Plan is the result of arm's-length negotiations among the Debtors, the Committee, Centre Lane, Privet, and the PBGC.  The voting support demonstrates the fairness of the Combined Disclosure Statement and Plan.  The goal of the Combined Disclosure Statement and Plan is to maximize distributions to creditors, a legitimate and honest purpose.  Further, the Combined Disclosure Statement and Plan has been proposed in compliance with all applicable laws, rules, and regulations.  As such, the Combined Disclosure Statement and Plan complies with Bankruptcy Code section 1129(a)(3).

> **(viii)    Section 1129(a)(4): The Combined Disclosure Statement and Plan Provides for Approval of Certain Administrative Expenses**

62.     Bankruptcy Code section 1129(a)(4) requires that payments by a debtor "for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case," either be approved by the Court as reasonable or subject to approval of the Court as reasonable. *See* 11 U.S.C. § 1129(a)(4); *see also In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Lisanti Foods*, 329 B.R. 491, 503 (D.N.J. 2005).

63.     The Combined Disclosure Statement and Plan provides that any payments made or promised by the Debtors for services rendered in connection with these Chapter 11 Cases will be subject to review by the Court and other parties in interest.  These procedures satisfy Bankruptcy Code section 1129(a)(4).

> **(ix)    Section 1129(a)(5): The Combined Disclosure Statement and Plan Contains Proper Disclosures**

64.     Bankruptcy Code section 1129(a)(5) requires that a plan proponent disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor of the debtor under the plan." 11

U.S.C. § 1129(a)(5)(A)(i).   The identity of the trustee of the GUC Trust was disclosed in the Plan

Supplement, *see* Docket No. 537, and the Trust Oversight Board members are identified in the

Combined Disclosure Statement and Plan.   Accordingly, Section 1129(a)(5) is satisfied.

> **(x)      Section 1129(a)(6): No Governmental Regulatory Commission Has Jurisdiction over the Debtor**

65.      Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory

commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has

approved any rate change provided for in the plan, or such rate change is expressly conditioned on

such approval." 11 U.S.C. § 1129(a)(6).   Because the Combined Disclosure Statement and Plan

does not provide for any such rate changes, Section 1129(a)(6) is not applicable.

> **(xi)     Section 1129(a)(7): The Combined Disclosure Statement and Plan is in the Best Interest of All Creditors**

66.      Bankruptcy Code section 1129(a)(7) requires that a plan be in the best interests of

creditors and equity holders, commonly referred to as the "best interests" test.   The best interests

test requires that holders of impaired claims:

> (i)      have accepted the plan; or
>
> (ii)     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7)(A).

67.      The best interests test, thus, focuses on dissenting impaired holders of claims and

interests as individuals, rather than on entire classes of claims or interests. *See Bank of Am. Nat'l*

*Trust & Savings Assoc. v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 441 n.13 (1999) ("The

'best interests' test applies to individual creditors holding impaired claims, even if the class as a

whole votes to accept the plan."); *see also In re Adelphia Commc'ns, Corp.*, 368 B.R. 140, 251

(Bankr. S.D.N.Y. 2007) section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation.").  A plan may satisfy this requirement if the Court finds that each such nonconsenting member of an impaired class of claims would receive at least as much under the plan as it would under a chapter 7 liquidation.  *See, e.g., In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) Section 1129(a)(7)(A) requires a determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization."); *see also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

68.     The Debtors submit that, if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, the value of distributions to each impaired class of Claims or Interests would likely be less than the value of distributions under the Combined Disclosure Statement and Plan.  As detailed in the Liquidation Analysis, the value available for distributions under Chapter 7 would be less than the value provided under the Combined Disclosure Statement and Plan.  Several factors contribute to smaller distributions: (a) the Plan settlements (and the cash resulting from such settlements) would not exist, and the Debtors would incur costs, such as professional fees, in winding up Chapter 7 cases; (b) the Chapter 7 process could take substantially longer; and (c) a Chapter 7 trustee and professionals would necessarily incur material costs in becoming familiar with the Debtors' assets and operations, and likely would realize lesser value for such assets.

69.     For these reasons, the Debtors believe that the Combined Disclosure Statement and Plan is in the best interests of creditors.  Holders of Claims in the Voting Classes will receive at least as much, or more, under the Combined Disclosure Statement and Plan than under Chapter 7.

**(xii)    Section 1129(a)(8): The Combined Disclosure Statement and Plan Has Been Accepted by an Impaired Voting Class**

70.    Bankruptcy Code section 1129(a)(8) requires that each class of claims either vote to accept a plan or are not impaired under a plan. 11 U.S.C. § 1129(a)(8). As detailed in the Tabulation Declaration: (a) Holders of Claims in Classes 2 (Miscellaneous Secured Claims) and 3 (Priority Claims) are unimpaired and deemed to accept the Combined Disclosure Statement and Plan; and two impaired consenting classes, Class 4 (Deficiency Claims) and Class 5 (PBGC Claims), have voted or are expected to vote to accept the Combined Disclosure Statement and Plan.  Because one impaired consenting class (Class 6 General Unsecured Claims) technically voted against confirmation on dollar amount (but not numerosity grounds), the Debtors ask the Court to confirm the Combined Disclosure Statement and Plan pursuant to Bankruptcy Code section 1129(b).

**(xiii)   Section 1129(a)(9): The Combined Disclosure Statement and Plan Provides for Payment in Full of Allowed Priority, Administrative, and Tax Claims**

71.    Bankruptcy Code section 1129(a)(9) requires that certain types of priority claims must receive specific treatment, unless the holders of such claims agree to different treatment. 11 U.S.C. § 1129(a)(9).  The Combined Disclosure Statement and Plan provides for the payment of Allowed Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims. The Combined Disclosure Statement and Plan thus meets the requirements of Bankruptcy Code section 1129(a)(9).

**(xiv)   Section 1129(a)(10): At Least One Class of Impaired Classes Has Accepted the Combined Disclosure Statement and Plan**

72.    Bankruptcy Code section 1129(a)(10) requires affirmative acceptance of a plan by at least one class of impaired claims "determined without including any acceptance of the plan by any insider" if a class of claims is impaired by such plan. 11 U.S.C. § 1129(a)(10).  As set forth in

the Tabulation Declaration, and pursuant to the Plan settlements, two non-insider impaired

consenting classes, Class 4 (Deficiency Claims) and Class 5 (PBGC Claims), have voted or are

expected to vote in favor of confirmation.  Each of those Classes is impaired.  Thus, Bankruptcy

Code section 1129(a)(10) has been met.

**(xv)    Section 1129(a)(11): The Combined Disclosure Statement and Plan is Feasible**

73.    Bankruptcy Code section 1129(a)(11) requires that the Court find that

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  This is referred to as the "feasibility" standard and requires two

determinations: (a) the debtor's ability to consummate the provisions of the plan, and (b) the

debtor's ability to reorganize as a viable entity.  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636,

649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance

of success.  Success need not be guaranteed."); *Mercury Capital Corp. v. Milford Conn. Assocs.,*

*L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) ("A 'relatively low threshold of proof' will satisfy the

feasibility requirement.") (*quoting In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)); *In re*

*Lakeside Global II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (stating that the definition of

feasibility "has been slightly broadened and contemplates whether [a] debtor can realistically carry

out its Plan . . . and [b] whether the Plan offers a reasonable prospect of success and is workable").

74.    The Combined Disclosure Statement and Plan is a liquidating chapter 11 plan.  The

Combined Disclosure Statement and Plan provides that upon the Effective Date: (i) the Liquidating

Trust Assets will be transferred to the Liquidating Trust; and (ii) the Debtors will be dissolved in

accordance with applicable state law by the GUC Trustee, without the necessity for any other or

further actions to be taken by or on behalf of the Debtors or payments to be made in connection

29

therewith.  Thereafter, the Liquidating Trust Assets will be administered and distributed as soon as practicable pursuant to the terms of the Combined Disclosure Statement and Plan and the Liquidating Trust Agreement.  As a result, the Combined Disclosure Statement and Plan presents a workable scheme of liquidation.  *See In re Credentia Corp.*, Case No. 10-10926, 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ("The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code."); *see also In re Revco*, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that Section 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated").

75.     Furthermore, as set forth in the Frankum Declaration and as the evidence will show at the confirmation hearing, the Plan settlements ensure sufficient cash on hand to satisfy allowed administrative and priority claims.  Accordingly, Section 1129(a)(11) has been met.

### (xvi)  Section 1129(a)(12): All Statutory Payment Obligations Have Been or Will be Paid

76.     Bankruptcy Code section 1129(a)(12) requires that a plan provide for the payment of fees payable under 28 U.S.C. § 1930. 11 U.S.C. § 1129(a)(12).  Bankruptcy Code section 507 provides that such fees are afforded priority as administrative expenses. 11 U.S.C. § 507(a)(2).

77.     The Combined Disclosure Statement and Plan provides that all statutory fees will be paid by the Debtors on or before the Effective Date.  *See* Combined Disclosure Statement and Plan Article V.A.5.  Therefore, Bankruptcy Code section 1129(a)(12) has been met.

### (xvii)  Section 1129(a)(13) Through Section 1129(a)(16) Do Not Apply to the Combined Disclosure Statement and Plan

78.     Bankruptcy Code section 1129(a)(13) requires that a plan provide for the continuation of all retiree benefits as defined by Bankruptcy Code section 1114. 11 U.S.C. 1129(a)(13).  Because the Debtors do not provide such retiree benefits, Bankruptcy Code section 1129(a)(13) is inapplicable.

79.     Bankruptcy Code section 1129(a)(14) relates to the payment of domestic support obligations. 11 U.S.C. § 1129(a)(14). The Debtors are not subject to any domestic support obligations; therefore, this provision is not applicable.

80.     Bankruptcy Code section 1129(a)(15) only applies to cases where the debtor is an individual. 11 U.S.C. § 1129(a)(15). Therefore, this provision does not apply to the Combined Disclosure Statement and Plan.

81.     Bankruptcy Code section 1129(a)(16) applies to transfers of property by a corporation or trust that is not money, business, or commercial corporation or trust. 11 U.S.C. § 1129(a)(16). The Debtors were a business or commercial corporation.  Therefore, Bankruptcy Code section 1129(a)(16) does not apply.

### (xviii) Section 1129(b): The Combined Disclosure Statement and Plan Satisfies the "Cram Down Requirements"

82.     Bankruptcy Code section 1129(b) provides a mechanism to confirm a plan when not all of the requirements of Bankruptcy Code section 1129(a) have been met.  This mechanism is commonly referred to as the "cram down."

83.     In relevant part, Bankruptcy Code section 1129(b) provides:

> [I]f all of the applicable requirements of Bankruptcy Code section 1129(a)] other than Bankruptcy Code section 1129(a)(8)] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).  Therefore, a court may "cram down" a plan over rejection by impaired classes of claims or equity interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes. *Kane v. Johns-Manville Corp.*, 843 F.2d at 650.

84.    To determine whether "unfair discrimination" exists, courts look to the facts and circumstances of the particular case. *See In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"). A plan unfairly discriminates when it treats similarly situated classes materially differently without a compelling justification. *In re Coram Healthcare Corp.*, 315 B.R. 321, 349 (Bankr. D. Del. 2004) (collecting cases).

85.    A plan is fair and equitable with respect to an impaired class of unsecured claims or interests that rejects a plan if it follows the absolute priority rule. *See* 11 U.S.C. § 1129(b)(2)(B)(ii) and (C)(ii); *see also In re Armstrong World Indus.,* 320 B.R. 523, 532 (D. Del. 2005) (finding the fair and equitable requirement to be rooted in the absolute priority rule).

86.    The Combined Disclosure Statement and Plan is fair and equitable with respect to Classes 1, 4, 5 and 6 and satisfies the absolute priority rule, as no junior Holder of a Claim or Equity Interest will receive any distribution unless the Holders of higher priority Claims receive the full value of their Claims, or the Holders of such higher priority Claims have consented to such treatment. The two classes of impaired unsecured claims, Class 5 (PBGC Claims) and 6 (General Unsecured Claims) were separately classified because the PBGC holds certain statutory claims and rights under ERISA, including control group liability claims against non-debtor parties, that

are not shared by other members of the unsecured creditor body.  However, both Classes 5 and 6 receive the same treatment.  Indeed, had the two Classes been combined, the Class would have accepted the Plan.[3] In addition, Class 4 is expected to vote in favor of the Plan.  The Debtors therefore submit that, to the extent applicable, the cram down requirements of Bankruptcy Code section 1129(b) have been satisfied because the Combined Disclosure Statement and Plan is fair and equitable and does not unfairly discriminate.

### (xix)   Section 1129(c) through Section 1129(e) Have Been Satisfied

87.     Bankruptcy Code section 1129(c) requires the Court confirm only one plan. *See* 11 U.S.C. § 1129(c).  The Combined Disclosure Statement and Plan is the only plan being confirmed in these Chapter 11 Cases, thus satisfying Bankruptcy Code section 1129(c).

88.     The principal purpose of the Combined Disclosure Statement and Plan is not the avoidance of taxes or the application of section 5 of the Security Act of 1933. Therefore, Bankruptcy Code section 1129(d) is satisfied.

89.     Bankruptcy Code section 1129(e) is not applicable as none of these Chapter 11 Cases are "small business cases."

### B.     A WAIVER OF ANY STAY OF CONFIRMATION IS APPROPRIATE

90.     The Debtors request that the Confirmation Order be effective immediately upon its entry, notwithstanding the 14-day stay otherwise imposed by Bankruptcy Rule 3020.  The purpose of Bankruptcy Rule 3020(e) is to allow parties in interest with time to appeal a confirmation order before such appeal is moot.  *See* Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.

---

[3]    As set forth in the Tabulation Declaration, Class 6 (General Unsecured Claims) voted in favor of the Plan on a numerosity basis, with 79.45% of the class voting in favor.  However, the class is deemed to reject the Plan because 64.31% in dollar amount of the class voted to reject.  If the PBGC's approximately $21 million claim were classified in Class 6 rather than separately classified in Class 5, Class 6 would have voted for the Plan by an overwhelming margin on both numerosity and amount.

33

91.    Here, such waiver is appropriate because immediate consummation of the Combined Disclosure Statement and Plan will not prejudice any party in interest, and creditors whose distributions are to be made upon the Effective Date will benefit from such an immediate consummation.  Therefore, the Debtors submit that good cause exists to waive the requirements of Bankruptcy Rule 3020(e).

## CONCLUSION

For all of the foregoing reasons, the Debtors respectfully submit that the Combined Disclosure Statement and Plan satisfies all applicable requirements under the Bankruptcy Code and should be confirmed.

Dated:  December 13, 2024
       Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

*/s/ Robert A. Weber*
Robert A. Weber (No. 4013)
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 N. Market Street, Suite 5400
Wilmington, DE 19801
(302) 295-0196
weber@chipmanbrown.com
desgross@chipmanbrown.com

-and-

**ROPES & GRAY LLP**
Gregg M. Galardi (No. 2991)
Lindsay C. Barca (*admitted* pro hac vice)
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
gregg.galardi@ropesgray.com
lindsay.barca@ropesgray.com

*Counsel to the Debtors and Debtors in Possession*